FILED

2016 AUG -5 PM 2:29

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RONNIE PAUL SANDOVAL and ANA SANDOVAL, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, a Public Entity; SAN DIEGO COUNTY JAIL, a Public Entity; and DOES 1-100,<br><br>Defendants. | Case No.: 16cv1004-BEN(RBB)<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Docket No. 5] |

Pending before the Court are Defendants Romeo De Guzman, Maria Llamado, and Dana Harris's motion to dismiss Plaintiffs' First Amended Complaint ("FAC"). Defendants argue that Plaintiffs' claims fail to state a claim upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6) and are time barred under California Government Code § 945.6. Defendants also contend that Plaintiffs have failed to put the individual nurses on notice. For the following reasons, the Court denies the motion to dismiss.

# BACKGROUND[1]

On February 22, 2014 Ronnie Paul Sandoval was arrested for possession of a controlled substance and violating his parole. (FAC ¶ 15). He was then taken into police custody and transferred to the San Diego Central Jail. (FAC ¶¶ 16, 18). As Mr. Sandoval was being processed, Plaintiffs allege he was observed "shaking," "sweating profusely," and being "disoriented." (FAC ¶ 16).[2] Approximately an hour later a prison official, Deputy Chavez, observed he "was still sweating a lot and appeared to be very tired and disoriented." (FAC ¶ 20). Plaintiffs allege that it was around this time a fellow inmate also alerted prison deputies to Mr. Sandoval's poor condition--that he was "shaking violently and was losing pallor." (FAC ¶ 20). The prison deputies proceeded to take Mr. Sandoval to the Medical Obervation Unit for "further medical examination" around 4:47 p.m. (FAC ¶ 21).

Upon being admitted to the Medical Obervaiton Unit Plaintiffs allege that one of the defendants, nurse DeGuzman, was explicitly informed that Mr. Sandoval was "diabetic, sweating profusely, and disoriented." (Pls.' Opp'n at 3). Despite possessing this information about Mr. Sandoval's medical condition, Plaintiffs allege that Mr. Sandoval was not given any medical attention, or even checked on, for the next eight

---

[1] The Court is not making any findings of fact. Rather, the Court includes the following summary of the allegations of the FAC which must be accepted as true at this stage.
[2] It appears many of the allegations may be drawn from investigative reports, however, the exhibits referenced in the FAC and presumably attached to it were not attached to the County's notice of removal.

2

hours. (FAC ¶ 22). "Literally no one entered the threshold of his door until nearly 1:00 a.m. on February 23, 2014." (FAC ¶ 22). Plaintiffs also allege that in addition to receiving no medical treatment for his symptoms during this time, Mr. Sandoval was provided neither food nor water. (FAC ¶ 29).

At 12:32 a.m. a deputy approached the medical cell, got no response from Mr. Sandoval, and took no action. (FAC ¶ 23). It was not until approximately 12:52 a.m. on February 23, 2014 that Mr. Sandoval was provided any medical care. (FAC ¶ 25).

Plaintiffs additionally allege deficiencies in the care that was eventually provided. (FAC ¶ 25). It took Defendants ten miniutes to call an EMT after witnessing Mr. Sandoval have a seizure. (FAC ¶ 27). Plaintiffs allege, in addition to waiting ten minutes, calling an EMT rather then paramedics violated the County's "Code Blue" policy. (FAC ¶ 27). Defendants also waited thirty minutes to advise a supervisor of Mr. Sandoval's condition and after being ordered by the supervisor to call paramedics because EMTs were inadequate, Defendants still refused to call paramedics. (FAC ¶ 27). During this time Plaintiffs also allege that Defendants got into an argument with Deputy Andrade over the need to call paramedics. (Pls.' Opp'n at 4). Deputy Andrade was a trained EMT and understood that given Mr. Sandoval's unresponsive state, EMTs would be unable to transport him. (Pls.' Opp'n at 4). Plaintiffs allege that despite the Deputy imploring the nurses to call the paramedics they still refused. (Pls.' Opp'n at 4). When EMTs arrived they informed the nurses that they could not transport Mr. Sandoval and that paramedics were needed. (FAC ¶ 27). The paramedics did not arrive until around 1:42 a.m, which

was approximately an hour after Mr. Sandoval's seizure. (FAC ¶ 27). When paramedics were trying to transfer Mr. Sandoval to the gurney, Mr. Sandoval went into respiratory arrest. (FAC ¶ 27). He was declared dead at 2:11 a.m. (FAC ¶ 27).

## DISCUSSION

To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "construe the facts from Plaintiffs' complaint, which we must deem to be true, in the light most favorable to them." *Marceau v. Blackfeet Hous.* Authority, 540 F.3d 916, 919 (9th Cir. 2008). The Court may not dismiss a complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### I. Sufficiency of Allegations

Defendants assert that the Plaintiffs have failed to plead "deliberate indifference." "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). A determination of deliberate indifference involves an examination of two elements:

> "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

*Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment'." *Jett*, 439 F.3d at 1096 (quoting *Hutchinson v. United States*, 838 F.2d 390, 392 (9th Cir. 1988)). However, "an accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain" sufficient to demonstrate deliberate indifference. *Estelle*, 429 U.S. at 105. A defendant must purposefully ignore or fail to respond to a prisoner's early pain or possible medical need in order for deliberate indifference to be established. *McGukin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1986) (overruled on other grounds by *WMX Tech. Inc. v. Miller*, 104 F.3d 133 (9th Cir. 1997); *see also Tyler v. Smith*, 458 Fed. Appx. 597 (9th Cir. 2011) (finding that a prisoner who had undergone knee surgery stated a claim against the prison official for deliberate indifference under the Eighth Amendment by alleging that the prison official had delayed referral to an orthopedist despite knowing of the prionser's knee pain).

Plaintiffs have pleaded facts that if true, could satisfy the "deliberate indifference" standard. In their FAC, Plaintiffs alleged that the deputies were notified as to the gravity of Mr. Sandoval's condition, sweating substantially, "shaking violently and was losing

pallor." By the time Mr. Sandoval reached the Medical Waiting Room Defendant DeGuzman was fully informed that Mr. Sandoval was "feeling ill, sweating profusely, disoriented and diabetic." Nevertheless, Plaintiffs allege that Mr. Sandoval went unseen for the next eight hours despite being transferred for medical care and showing signs he needed medical care. It is also alleged that Defendants Llamado and Harris ignored a deputy's direction that he needed skilled paramedics rather than less skilled EMTs. (FAC ¶ 27). Plaintiffs have sufficiently alleged Mr. Sandoval's medical need was serious and Defendants "den[ied], delay[ed], or intentionally interfere[ed] with medical treatment." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). Consequently, Plaintiffs have set out enough facts to state a plausible claim for relief.

## II. Sufficiency of Notice

Defendants argue that since the FAC did not reference the nurses specifically "by name" this renders the "general allegations" made against them in the FAC "insufficient to place any of these individuals on notice."[3] (Defs.' Mot. to Dismiss at 3). The Court does not find that Defendants' right to notice has been abridged.

The Federal Rules of Civil Procedure provide that they "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1). However, "they do not

---

[3] The concept of notice is critical to the integrity of legal proceedings. "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citing *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)).

provide for retroactive application to the procedural aspects of a case that occurred in state court prior to removal to federal court." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014); *see also Pac. Emp'rs. Ins. v. Sav-a-Lot of Winchester*, 291 F.3d 392, 400-401 (6th Cir. 2002) (holding that "as long as the matter remained in the Kentucky court, it was the Kentucky Rules that applied. The Federal Rules applied only after removal."); *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 682 (9th Cir. 1980) (holding that "the question whether the amended complaint stated a cause of action, including whether it was time-barred, is governed by the law of California because the relevant amendments and service of process preceded removal to federal court").

The California Code of Civil Procedure § 474 states that "when the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint… and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly." "Even a person whose identity was known to the plaintiff when the action was filed may be brought in under section 474 as a "Doe" defendant if the plaintiff was initially unaware of that persons true relationship to the injuries upon which the action was based." *Miller v. Thomas*, 121 Cal. App. 3d 440, 444-45 (2nd Dist. 1981). Plaintiffs stated in the original complaint that they were "ignorant as to the true names and capacities of the defendants." (Defs.' Mot. to Dismiss at 5). When Plaintiffs ascertained the true names of the DOE Defendants they amended their complaint accordingly and specifically identified the causes of action brought against each individual DOE

defendant named, thereby putting each of the three DOE defendants on notice of the specific allegations made against them. (Defs.' Mot. to Dismiss at 17).

### III. Statute of Limitations

Defendants contend that the state law claims against nurses Llamado and Harris are time barred. Defendants are right that under California law in order to sustain "a cause of action for which a claim is required to be presented" against a public entity it must be commenced within six months of receipt of notice. *See* Cal. Gov't Code § 945.6. However, "presentation of a claim against a public employee or former public employee for injury resulting from an act or omission in the scope of his public employment is not a prerequisite to the maintenance of an action against the employee, but presentation of a claim against the employing public entity is a prerequisite to bringing such an action." *Julian v. City of San Diego*, 183 Cal. App. 3d 169, 175 (4th Dist. 1986) (citing Cal. Gov't Code §§ 911.2, 945.4, 950, 950.2). Plaintiffs are not required to provide the individual nurses written notice of their state claims within the six-month time frame required for public entities pursuant to § 945.6. Plaintiffs adhered to all requirements mandated by California law so as to bring their state claims against nurses Llamado and Harris and are not time barred. *See Julian*, 183 Cal. App. 3d at 169.

Defendants Llamado and Harris additionally argue that the federal and state claims are time barred because: (1) 42 U.S.C. § 1983 actions "must be brought within the time specified by the forum state's statute of limitations for personal injury torts," which is two years, and (2) California law prevents relation back unless the plaintiff is "genuinely

ignorant of the identity of the new defendant[s] when the action was commenced." *Del Percio v. Thornsley*, 877 F.2d 785 (9th Cir. 1989) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)); *Miller v. Thomas*, 121 Cal. App. 3d at 445-46; *see* Cal. Code Civ. Proc. § 335.1. Defendants argue that since "both Llamado and Harris are described in the reports made available to Plaintiffs before their claim was filed" they were not genuinely ignorant of their identities, thereby precluding the relation back of the amendment adding the new defendants. (Defs.' Mot. to Dismiss at 6). The Court disagrees. The words "ignorant of the name of a defendant" in § 474 are construed broadly to include other kinds of ignorance which explain the failure to name a person as a defendant until sometime later. *Miller*, 121 Cal. App. 3d at 444-45. Although Plaintiffs did possess the investigation report which identified Defendants as being present the night Mr. Sandoval died, Plaintiffs contend it "did not lay out facts supporting liability." (Pls.' Opp'n at 19). Plaintiffs were genuinely ignorant of Defendants identities for "even a person whose identity was known to the plaintiff when the action was filed may be brought in under section 474 as a "Doe" defendant if the plaintiff was initially unaware of that persons true relationship to the injuries upon which the action was based." *Miller*, 121 Cal.App.3d at 444-45.[4]

---

[4] The Court also recognizes the potential harm in naming every person identified in a report, including these defendants whose conduct may not be actionable. By being careful in this regard defendants can be saved the stress and anxiety that comes with being named in a lawsuit as well as any harm to their reputation. (Pls.' Opp'n at 16).

Under California law "when a defendant is brought in by amendment substituting his name for a Doe defendant, he "is considered a party to the action from its commencement for purposes of the statute of limitations." *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986) (quoting *Barrows v. Am. Motors Corp.*, 144 Cal. App. 3d 1, 7 (2nd Dist. 1983)); *see* Cal. Civ. Proc. Code § 474. Additionally, the Ninth Circuit has held that strict compliance with § 474 is not required when determining if an amendment to a complaint with Doe defendants "relates back" to the original complaint. *Lindley*, 780 F.2d at 801 (citing *Barnes v. Wilson*, 40 Cal. App. 3d 199, 203 (4th Dist. 1974)). The court in *Lindley v. General Elec. Co.* found that "California policy in favor of litigating cases on their merits requires that the fictitious name statute be liberally construed." *Id.* (citing *Barnes*, 40 Cal. App. 3d at 203); *see also Carlino v. L.A. Cnty. Flood Control Dist.*, 10 Cal. App. 4th 1526, 1536 (2nd Dist. 1992) (permitting plaintiff to add the County Flood Control District as a Doe defendant under Cal. Code Civ. Pro. § 474 after the statute of limitations had expired because of the plaintiff's good faith ignorance of the true identity of the defendant).

## CONCLUSION

For these reasons, the Court **DENIES** the motion to dismiss. Defendants shall file an answer within 21 days of the filing of this order.

**IT IS SO ORDERED.**

DATED: August 5, 2016

Hon. Roger T. Benitez
United States District Court