THOMAS E. MONTGOMERY, County Counsel (State Bar No. 109654)
County of San Diego
By JAMES M. CHAPIN, Senior Deputy (State Bar No. 118530)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-5244;  Fax: (619) 531-6005
E-mail: james.chapin@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Romeo De Guzman, Dana Harris and Maria Llamado

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RONNIE PAUL SANDOVAL and ANA SANDOVAL, an individual,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>COUNTY OF SAN DIEGO, a Public Entity; SAN DIEGO COUNTY JAIL, a Public Entity; and DOES 1-100,<br><br>　　　　　Defendants. | No. 16cv1004-BEN(AGS)<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  July 10, 2017<br>Time: 10:30 a.m.<br>Dept.:  5A - Courtroom of the Honorable Roger T. Benitez<br>Pre-Trial Conference Date: Sept. 18, 2017 |

　　　Defendants submit this reply to Plaintiffs' response to separate statement of undisputed material facts, together with references to supporting evidence, in support of their motion for summary judgment.

///
///
///
///
///
///

| Defendants' Undisputed Material Facts and Supporting Evidence | Opposing Party's Response and Supporting Evidence | Defendants' Reply to Plaintiffs' Response |
|---|---|---|
| ALL CAUSES OF ACTION ||| 
| 1. Ronnie Sandoval was booked into San Diego Central Jail at about 2:43 p.m. on February 22, 2014. He did not appear to be under the influence of drugs or in medical distress at that time.<br><br>**Evidence:** Ex. A - Dec. of Henry Castro; Ex. B - Dec. of Deborah Bell. | 1. Undisputed. | 1. Plaintiffs do not dispute. |
| 2. No member of the jail staff knew that Ronnie Sandoval was in need of immediate medical care until Sgt. Shawcroft observed him slumping on the bench in medical observation cell #1 at 12:55 a.m. on February 23, 2014.<br><br>**Evidence:** Ex. C - Dec. of Matthew Chavez; Ex. D - Dec. of Cesar Costa; Ex. E - Dec. of Michael Bryan; Ex. F - Dec. of Lavinia Martinez; Ex. G - Dec. of Graham Wilkinson; Ex. H - Dec. of Romeo De Guzman; Ex. M - Dec. of Richard Geller, ¶¶ 4-9; Ex. P - Depo. of Dana Harris, 67:22-68:18. | 2. Disputed –<br><br>Deputy Chavez contacted Ronnie because he observed Ronnie was sweating profusely and appeared disoriented and lethargic. (Exh. 2, Chavez Depo., 25:7-15; Chavez, 28:4-10.)<br><br>Deputy Bryan told Deputy Chavez to notify the intake nurse to check his blood sugar. (Exh. 2, Chavez Depo., 28:24-29:2.)<br><br>Approximately an hour later, Deputy Chavez noticed Ronnie was still "sweating a lot and appeared to be very tired and disoriented." (Exh. 3, Chavez Report.)<br><br>When Chavez contacted Ronnie, Ronnie said, "I'm very cold and not feeling well." (Exh. 2, Chavez Depo., 39:15-20.)<br><br>Deputy Chavez thought this was odd given Ronnie was sweating profusely. (Exh. 2, Chavez Depo., 40:2-10.) | 2. Plaintiffs have distorted Deputy Chavez' testimony. When describing his encounter with Mr. Sandoval, Deputy Chavez specifically says "he looked a little bit disoriented" and "he looked a little bit ill" and "nothing out of the ordinary." Plaintiffs' Ex. 2 - Chavez Depo. at 25:7-15. This does not show that the jail staff knew Mr. Sandoval was in need of immediate medical care. |

| | | |
|---|---|---|
| 1 | Deputy Chavez reported his observations to Corporal Martinez. Corporal Martinez told Deputy Chavez to escort Ronnie to the "second floor to have him more thoroughly evaluated," expecting medical to do a "full assessment." (Exh. 2, Chavez Depo., 32:17-25; 33:5-10.) | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | Deputy Chavez explicitly told Defendant DeGuzman "that he had been cleared by the medical staff downstairs, but there is still something going on so you need to look at him more thoroughly." (Exh. 2, Chavez Depo., 33:24-34:2; 42:21-25.) | The representation made by Plaintiffs at page 3, lines 1-4 of their Response is not supported by the evidence they cite and should be disregarded. |
| 9 | | |
| 10 | | |
| 11 | | Deputy Chavez testified: |
| 12 | | "Q.  At any time did you express to Nurse de Guzman that you thought that Sandoval was a potential – had a potential drug problem? |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | A.  No. |
| 17 | | Q.  You never made that correlation, right? |
| 18 | | A.  Right.  Sandoval doesn't appear to be at first glance what you would typically picture as someone who has a drug problem. |
| 19 | | |
| 20 | | |
| 21 | | Q.  Especially not a meth problem? |
| 22 | | |
| 23 | | A.  Exactly." |
| 24 | | Ex. R – transcript of the deposition of Deputy Chavez, at 40:17 - 41:1. |
| 25 | | |
| 26 | Approximately thirty minutes later, Deputy Rodriguez told DeGuzman that Sandoval was "shaking mildly … [and] appeared to | The representation made by Plaintiffs at page 3, lines 5-7 of their Response is not supported by the evidence they cite and should be |
| 27 | | |
| 28 | | |

- 3 -

16cv1004-BEN(RBB)

| | | | |
|---|---|---|---|
| 1<br>2 | | be having withdrawals from drugs." (Exh. 5, Rodriguez Report.) | disregarded. And the report is hearsay and lacks foundation. |
| 3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | 3. Before 12:55 a.m. Sandoval did not exhibit any of the clinical signs and symptoms of acute methamphetamine intoxication or the need for immediate medical care.<br><br>**Evidence:** Ex. M - Dec. of Richard Geller, ¶4. Ex. N - Dec. of Alicia Minns, ¶5; Ex. A - Dec. of Henry Castro; Ex. B - Dec. of Deborah Bell; Ex. C - Dec. of Matthew Chavez; Ex. D - Dec. of Cesar Costa; Ex. E - Dec. of Michael Bryan; Ex. F - Dec. of Lavinia Martinez; Ex. G - Dec. of Graham Wilkinson; Ex. H - Dec of Romeo De Guzman. | 3. Disputed –<br><br>Deputy Chavez contacted Ronnie because he observed Ronnie was sweating profusely and appeared disoriented and lethargic. (Exh. 2, Chavez Depo., 25:7-15; 28:4-10.)<br><br>Deputy Rodriguez noticed Sandoval was "shaking mildly … appeared to be having withdrawals from drugs." (Exh. 5, Rodriguez Report.) | 3. Plaintiffs have distorted Deputy Chavez' testimony. He specifically says "he looked a little bit disoriented" and "he looked a little bit ill" and "nothing out of the ordinary" when describing his encounter with Mr. Sandoval. Plaintiffs' Ex. 2 - Chavez Depo. at 25:7-15. This does not show that the jail staff knew Mr. Sandoval was exhibiting clinical signs and symptoms of acute methamphetamine intoxication and of the need for immediate medical care. The report of Deputy Rodriguez is inadmissible. |
| 14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23 | | Further, Plaintiffs' emergency room expert, Dr. Falgiani, opined, "The first breach in the standard of care was the failure of the San Diego Central Jail to provide a proper and thorough medical screening exam, for a person who exhibited signs of acute toxicity being diaphoresis and disorientation. At this point, Mr. Sandoval should have been taken to the nearest emergency department for a thorough medical evaluation to ensure that he was safe from a medical standpoint." (Exh. 16, Falgiani Report.) | Defendants object: Plaintiffs Exhibit 16, a letter from Dr. Falgiani, is hearsay, lacks foundation, and is not relevant. Plaintiffs have failed to offer a declaration or testimony to support this claim. This letter does not address the facts testified to by Deputy. Chavez, that Mr. Sandoval "looked a little bit disoriented" and "he looked a little bit ill" and "nothing out of the ordinary." Plaintiffs' Ex. 2 - Chavez Depo. at 25:7-15. |
| 24<br>25<br>26<br>27<br>28 | | Plaintiffs' correctional nurse expert, Gwendolyn Vontoure, opined, "Suspected methamphetamine overdose is a life-threatening emergency." She further describes some of the symptoms of | Defendants object: Plaintiffs Exhibit 24, a report from Nurse Vontoure, is hearsay, lacks foundation, and is not relevant. Plaintiffs have failed to offer a declaration or testimony to support this claim. This report assumes that a life-threatening |

| | | |
|---|---|---|
| | methamphetamine overdose, including: agitation, diaphoresis and incoherence. Lastly, she states "chances for recovery are dependent upon how quickly the patient receives medical attention." (Exh. 24, Gwen Report, pg. 30.) | methamphetamine overdose was suspected at the time, and does not address the facts testified to by Deputy Chavez, that Mr. Sandoval "looked a little bit disoriented" and "he looked a little bit ill" and "nothing out of the ordinary." Plaintiffs' Ex. 2 - Chavez Depo. at 25:7-15. This report does not address the Undisputed Fact Number 3. |
| 4. Sandoval had been placed in an observation cell in the nurses' station which had a full window facing the nurses so that he could be seen at all times.<br><br>**Evidence:** Ex. I - Depo. of Maria Llamado, 58:13-59:19, 60:14-61:7, 49:4-12; Ex. O - Depo. of Romeo De Guzman, 64:10-20; Ex. P - Depo. of Dana Harris 67:9-71:11. | 4. Disputed –<br><br>Whether the cell is an "observation cell" or a "holding cell" is in dispute. It is agreed among all those deposed the cell is a multi-purpose cell. (Exh. 4, DeGuzman Depo., 148:21-149:11.)<br><br>According to Supervisor Estolano, it is a holding cell if deputies are using it and it is a medical cell if medical staff is using it. (Exh. 23, Estolano Depo., 135:6-135:7.)<br><br>It is also disputed as to why Ronnie was placed in that cell. DeGuzman asked Chavez to place Ronnie in the cell, but then claims he was never told to monitor him. (Exh. 4, DeGuzman Depo., 72:24-73:21; 76:8-19; 99:7-20.)<br><br>Further, despite the cell being within the nursing bay and having a half window, Ronnie was not "seen at all times." Defendant DeGuzman admits, after the second blood sugar test he never checked on Ronnie again. (Exh. 4, DeGuzman Depo., 99:7-20.) | 4. The name of the cell is not material. Whether it is an observation cell or a holding cell, the point is that it had a full window so the staff could observe Mr. Sandoval and see if he was exhibiting signs of medical distress. The collapse of Mr. Sandoval did not go undetected for even a minute. This was not a situation where Mr. Sandoval was not observed frequently enough and was left unattended while exhibiting distress. Because Mr. Sandoval was in cell with windows near the nursing station, he was observed repeatedly by several nearby staff members. His 12:55 a.m. collapse was witnessed, as it happened, by Sergeant Shawcroft. Ex. K – Declaration of Sergeant Shawcroft at ¶¶ 2-3.<br><br>Further, Nurse De Guzman testified:<br><br>  "Q. Your screening station is about 20 feet away from that holding cell?<br><br>  A. That's right. |

- 5 -

16cv1004-BEN(RBB)

| | | |
|---|---|---|
| | Nurse Allan was the other second floor nurse on duty between 3:00 p.m. and 11:00 p.m. Nurse Allan's statement indicates she was not aware of Ronnie's presence in the cell. (Exh. 25, Marylene Allen Statement.)<br><br>Defendant Llamado testified the first time she noticed Ronnie is when Defendant Harris yelled out "man down." (Exh. 12, Llamado Depo., 53:8-13.)<br><br>Lastly, Defendant Harris testified she does not have a recollection of checking, scanning, or looking at Ronnie prior to the man down. (Exh. 13, Harris Depo., 71:12-16.) | Q. While you were doing your work, you could see him back in that holding cell the whole time? The whole eight hours, he's right there in front of you?<br><br>  A. Yeah."<br><br>Ex. Q. De Guzman depo, at pp. 99-100. |
| 5.  When Sgt. Shawcroft saw Sandoval slumping on the bench, he immediately summoned Nurse Harris.  Nurse Harris and Nurse Llamado responded and began assessment and treatment.  Nurses checked blood pressure, oxygen level, pupil reaction and all vital signs were stable.  Sandoval did not appear to be having a seizure and EMT response was immediately requested.  When his condition deteriorated, paramedics were called at 1:20 a.m.<br><br>**Evidence:** Ex. K - Dec. of Robert Shawcroft; Ex. I - Depo. of Maria Llamado, 39:22-40:8, 53:8-17, 126:3-8, 75:10-76:13, 78:11-79:19; 115:21-116:13; Ex. P | 5. Disputed –<br><br>Defendant Harris admitted Ronnie presented with a rate of 20 BPM, which she admitted was "kind of fast." (Exh. 13, Harris Depo., 163:15-25.)<br><br>She noted his oxygen level was 94%, which she admitted was "a little low." (Exh. 13, Harris Depo., 166:10-16.)<br><br>She also noted Ronnie's blood glucose level was 151, which she admitted was "slightly high." (Exh. 13, Harris Depo., 168:9-13.)<br><br>Thus, Ronnie's vital were not stable. Further, according to Sergeant Shawcroft, when he | 5. Plaintiffs use of testimony showing vital signs were "slightly high" or "a little low" does not change the fact that the vital signs were considered by the nurse to be stable. Nurse Harris' testimony is:<br><br>  "Q. Okay.  And at the time you called for EMTs, why did you make the decision to call for EMTs and not paramedics?"<br><br>  A.  My patient was stable. He was responsive. His vital signs were stable. There was nothing going on with my patient which would warrant calling a paramedic."<br><br>Ex. P – Harris Depo., at 96:13-19. |

- 6 -

16cv1004-BEN(RBB)

| | | |
|---|---|---|
| - Depo. of Dana Harris, 62:4-64:2, 66:3-69:12, 75:2-81:19, 85:4-25, 91:22-24, 96:9-19, 103:23-105:2, 111:7-112:4, 188:18-24, Exh. 7. | entered the cell, Ronnie was on the ground seizing. (Exh. 7, Shawcroft Depo., 76:12-77:10; Exh. 8, Shawcroft Report.) | |
| | Deputy Edge testified Ronnie was "unresponsive," "clammy" and "seizing." (Exh. 10, Edge Depo., 55:2-18.) | Plaintiffs attempt to use Deputy Edge and Sgt. Shawcroft as medical experts is objected to: Foundation, Relevance. |
| | Defendant Llamado testified Ronnie was unresponsive, snoring and seizing. (Exh. 11, Llamado Statement; Exh. 12, Llamado Depo., 114:16-19.) | |
| | Bautista testified that when she received the initial call from Llamado, Llamado told her Ronnie had been seizing for 10 minutes. (Exh. 22, Bautista Depo., 70:3-11.) | |
| | In fact, Defendant Llamado testified Ronnie had a "prolonged seizure." The paramedics report indicates Ronnie had "tremor like shakes for approx 15mins." (Exh. 15, Paramedics Report.) | |
| | EMTs were not requested until 10 minutes into Ronnie's seizure. (Exh. 6, Follow-Up Investigation Report.) | Ex. 6, Follow up investigation report is objected to. Hearsay, Relevance. Calling EMTs ten minutes after Mr. Sandoval collapsed does not show deliberate indifference. Nurse Harris requested EMTs to be called after 3 minutes. |
| | According to the paramedics report, 911 was not dispatched until 1:30 a.m. (Exh. 15, Paramedic Report) | Ex. 15, a Paramedic Report, is objected to: Hearsay. |

- 7 -

16cv1004-BEN(RBB)

| | | |
|---|---|---|
| 6. Emergency Medical Technicians and Paramedics responded and continued resuscitative efforts. Sandoval died from acute methamphetamine intoxication. He could not have been revived even if he had been in the emergency room when he collapsed.<br><br>**Evidence:** Ex. K - Dec. of Robert Shawcroft; Ex. M - Dec. of Richard Geller; Ex. N - Dec. of Alicia Minns | 6. Disputed –<br><br>According to Plaintiffs' emergency room expert, Dr. Falgiani, "If Mr. Sandoval had been taken to an emergency department at any time during the time he was in Central *up to the time that he lost his pulse and went into cardiac arrest*, more likely than not his life would have been able to be saved by appropriate medical interventions." (Exh. 16, Falgiani Report.)<br><br>According to Plaintiffs' correctional nurse expert, Gwendolyn Vontoure, "chances of recovery [from symptoms of overdose] are dependent upon how quickly the patient receives medical attention." (Exh. 24, Gwen Report, pg 30.) | Defendants object: Plaintiffs Exhibit 16, a letter from Dr. Falgiani, is hearsay, lacks foundation, and is not relevant. Plaintiffs have failed to offer a declaration or testimony to support this claim.<br><br>Defendants object: Plaintiffs Exhibit 24, a report from Nurse Vontoure, is hearsay, lacks foundation, and is not relevant. Plaintiffs have failed to offer a declaration or testimony to support this claim. This report vaguely asserts that chances for recovery from symptoms of an overdose depend on how quickly the drug user receives medical care. This does not address the specific facts of Mr. Sandoval's ingestion of a massive quantity of meth and his repeated denials of having any drugs in his system. |
| 7. This is only time there has been a death of anyone in this observation cell.<br><br>**Evidence:** Ex. O - Depo. of Romeo De Guzman, 121:8-13. | Plaintiffs are not aware of any facts that would support or oppose the contention stated. In an interview given by Defendant DeGuzman he ambiguously stated inmates will continue to die if the policy associated with Ronnie's cell is not changed. | 8. Plaintiffs do not dispute. |

| 8. The actions of each of the nurses met the standard of care.<br><br>**Evidence:** Ex. N - Dec. of Alicia Minns | 7. [sic] Disputed –<br><br>According to Plaintiffs' experts each nurse fell below the standard of care. (Exh. 16, Falgiani Report, pg 5-6; Exh. 24, Vontoure Report, pg 5-6.)<br><br>Nurse Supervisor Carlos Estolano testified Defendant Harris fell below the standard of care by not calling 911 in a life threatening situation and by refusing to comply with a supervisor's order. (Exh. 23, Estolano Depo., 29:4-30:10; 113:24-114:20; 118:10-17.)<br><br>Supervisor Carlos Estolano also testified Defendant Llamado fell below the standard of care by forming the opinion Ronnie needed 911 yet refusing to summon it. (Exh. 23, Estolano Depo., 124:20-125:9-20.) | 8. Defendants object: Plaintiffs Exhibit 16, a letter from Dr. Falgiani, is hearsay, lacks foundation, and is not relevant. Plaintiffs have failed to offer a declaration or testimony to support this claim.<br><br>Defendants object: Plaintiffs Exhibit 24, a report from Nurse Vontoure, is hearsay, lacks foundation, and is not relevant. Plaintiffs have failed to offer a declaration or testimony to support this claim.<br><br>Plaintiffs distort the testimony of Nurse Estolano. He did not testify about the standard of care. He testified:<br><br>   "Q. My question is, in a given scenario where a nurse has her own thoughts but she gets a director from her supervisor, can she ignore that directive?<br><br>   A. A nurse should follow the chain of command."<br><br>Plaintiffs Ex 23, Estolano Depo., at 118:14-17. |

DATED: June 30, 2017        THOMAS E. MONTGOMERY, County Counsel

By: */s/ James M. Chapin*
         JAMES M. CHAPIN, Senior Deputy
Attorneys for Defendants County of San Diego, Romeo De Guzman, Dana Harris and Maria Llamado
E-mail: james.chapin@sdcounty.ca.gov