UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA SANDOVAL, et al.,<br><br>                                         Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                                         Defendants. | Case No.: 3:16-cv-01004-BEN-AGS<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SEPARATE TRIALS**<br><br>**[ECF No. 64]** |

## INTRODUCTION

Plaintiffs Ana Sandoval, individually and as successor in interest to Ronnie Sandoval, along with Ronnie Sandoval, Jr., and Josiah Sandoval (collectively "Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 following the in-custody death of Ronnie Sandoval ("Sandoval") while he was detained at the San Diego Central Jail. Plaintiffs allege that during Sandoval's confinement, County of San Diego ("County") and employees Romeo de Guzman, Dana Harris, and Maria Llamado (collectively, "individual Defendants") were deliberately indifferent to Sandoval's serious medical needs and liable for his wrongful death.

County and individual Defendants now move for separate trials: one for the individual Defendants, and a subsequent and separate trial for the County Defendant.

ECF No. 64. Plaintiffs oppose Defendants' motion. ECF No. 68. For the reasons set forth below, Defendants' motion is **DENIED**.

## BACKGROUND

The facts of this case have been reiterated in previous orders by this Court and will not be extensively repeated here.[1] Plaintiffs have four claims remaining for trial: (1) Section 1983 Deliberate Indifference to a Serious Medical Need against individual Defendants; (2) Section 1983 Policy/Custom Relating to MOC1 against County; (3) Medical Malpractice against individual Defendants; and (4) Wrongful Death against all Defendants. The parties agreed to bifurcate the punitive damages portion of the litigation.

Defendants bring the instant motion requesting the claims against the County be separated and tried in the second phase of trial concerning punitive damages. This Court has considered the proposed pre-trial order submitted by the parties regarding their intended witnesses, evidence, and estimated trial length.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) permits the Court to order a separate trial of claims or issues for convenience, judicial economy or to avoid prejudice. Courts have broad, discretionary authority to bifurcate claims or issues. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). "Bifurcation is an inherently case-specific inquiry that requires a court to compare the plaintiff's claims against an individual [defendant] to her claims against the municipality as well as the evidence that plaintiff intends to support each claim." *Motley v. City of Fresno, C.A.*, No. 15-cv-00905-DAD-BAM, 2020 WL 3642502 at *2 (E.D. Cal. July 6, 2020). The moving party has the burden to show that bifurcation is appropriate. *Clark v. I.R.S.*, 722 F. Supp. 2d 1265, 1269 (D. Haw. 2009).

---

[1] *See* Order Granting in Part Defendants' Motion for Summary Judgment, ECF No. 39.

**ANALYSIS**

Defendants make two main arguments in favor of bifurcation. They argue bifurcation will serve judicial economy and will not prejudice Plaintiffs. Second, they argue bifurcation is necessary to avoid prejudice and jury confusion regarding liability of individual Defendants. Plaintiffs respond that bifurcation will not serve judicial economy because of the overlapping nature of the evidence and their theory of liability. Plaintiffs also argue the evidence regarding County liability is unlikely to lead to jury confusion or prejudice, and any prejudice or confusion that may result would be minimal and easily cured by a limiting instruction. These arguments are addressed in turn.

**A. Bifurcation Will Not Serve Judicial Economy**

Defendants argue bifurcation will serve judicial economy because liability for the Plaintiffs' claims against the County are necessarily predicated on the jury finding that the individual Defendants violated Sandoval's constitutional rights. Therefore, they argue, trial regarding the claims against the County can be potentially avoided all together by trying the individual Defendants first. Defendants cite *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986) (per curiam) and *Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) in support of this proposition.

The rule laid out in *Heller* and *Quintanilla* does not apply to every liability theory possible under § 1983 claims. As Plaintiffs points out, the Ninth Circuit and Supreme Court have recognized a municipality's liability for constitutional deprivations regardless of liability of individual employees. *See City of Canton v. Harris*, 489 U.S. 378, 109 S. Ct. 1197 (1989) (city liability could be pursued for failure to train officers when City and officials are sole defendants); *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) (City could be liable for constitutional deprivation "not suffered as a result of actions of individual officers but as a result of the collective inaction of the Long Beach Police Department."); *Castro v. Cty of Los Angeles*, 833 F.3d 1060, 1073-74 (9th Cir. 2016) (plaintiff brought suit after attack by a cellmate while in jail, and Court found inadequate

1  surveillance of sobering cell was a basis for County liability—not actions of individual
2  officers).
3      The Ninth Circuit has acknowledged this separate liability theory in the opinion
4  remanding proceedings back to this Court, stating "[u]nder *Monell v. Department of*
5  *Social Services*, the County can be liable under § 1983 if it's 'policy or custom' caused
6  Sandoval's injuries through deliberate indifference to his constitutional right to medical
7  care." *Sandoval*, 985 F.3d 657, 681 (9th Cir. 2021) (citation omitted).  Although this is
8  ultimately a question for the jury, it is possible the jury could find the County's policy or
9  custom caused Sandoval a constitutional deprivation regardless of the outcome for the
10 individual Defendants.
11     It is worth noting that even if the County's liability was directly predicated on a
12 finding that the individual Defendants violated Sandoval's constitutional rights, it does
13 not necessarily follow that bifurcation is automatically warranted.  Bifurcation is a fact-
14 specific inquiry that involves comparison of the claims and examination of the evidence
15 to determine separability of issues, convenience or prejudice.  *Motley*, No. 15-cv-00905-
16 DAD-BAM, 2020 WL 3642502 at *2.  With that in mind, this Court turns to the exhibits
17 and witnesses that the parties list in their proposed pre-trial order.
18     One inquiry when determining whether bifurcation would serve judicial economy
19 is to examine whether a plaintiff's claims are easily separable—whether they require
20 distinct bodies of evidence.  For example, in *Estate of Lopez v. Suhr*, the Court bifurcated
21 the plaintiff's claims against individual officers from his *Monell* claims for ratification
22 and failure to train because the latter involved only pre-incident or post-incident facts,
23 whereas the former was based on evidence regarding the incident itself.  No. 15-cv-
24 01846-HSG, 2016 WL 1639547 at *7 (N.D. Cal. Apr. 26, 2016).  The Court came to a
25 similar decision in *Figueroa v. Gates*, reasoning that plaintiff's *Monell* claims, which
26 involved multiple votes by Los Angeles City Council to adopt a policy which
27 indemnified police officers against punitive damages, relied on evidence almost entirely
28 separate from the shooting incident involving the plaintiff and individual officers.  207 F.

Supp. 2d 1085, 1102 (C.D. Cal. 2002). Using the same framework, the Court in *Estate of Avila v. City of Long Beach* denied bifurcation, noting that the City's *Monell* liability was based on failure to train officers, which would be proven through testimony of the officers themselves, and not through other incidents unrelated to the plaintiff's claims. No. 17-cv-05607-AB-JPRx, 2018 WL 7501260 at *2 (C.D. Cal. Dec. 18, 2018).

      Here, the Court is satisfied that Plaintiffs' claims and theory of the case are conducive to a single trial. Plaintiffs explain that they will rely on the testimony of individual Defendants and other witnesses present the night of Sandoval's death to establish the customs and policies relating to County Defendant's liability. Liability for all of Defendants will be established through much of the same body of evidence and testimony from the same witnesses. A review of the parties proposed pre-trial order bears out this interpretation.

      Plaintiffs list seventeen non-expert witnesses, and all but five are people who interacted with Sandoval the night of his death. All twenty-two of Plaintiffs' reserve witnesses were at the jail the night of Sandoval's death, and fifteen of those were on-duty employees of the County. Including those in reserve, Plaintiffs list a total of 152 exhibits, two-thirds of which are reports, transcripts, photos and video related to the night of Sandoval's death.

      A survey of Defendants' witness and exhibit list shows a similar pattern. Of the Defendants' twenty-five listed witnesses, only two are described as testifying specifically regarding County policies and procedures. All eighteen reserve witnesses were on duty and/or involved in the incident surrounding Sandoval's death, with the sole exception of Detective Pete Carrillo, who conducted the death investigation. Including exhibits in reserve, Defendants intend to introduce 100 exhibits, with just above a quarter of that total being County policies, procedures and trainings. However, it must be noted that not all evidence regarding policies is related solely to County's liability. A key and hotly contested component of liability for individual Defendants Llamado and Harris is the

policy outlining when it is appropriate to call for EMT assistance versus paramedic assistance.

Defendants argue that Plaintiffs will necessarily have a large body of "separate and distinct" evidence regarding County liability that is easily separable from evidence regarding individual Defendant liability. The above review of proposed exhibits and witnesses makes the basis for this assertion unclear, and Defendants do not point the Court to any specifics. Defendants further argue that their right to put on a full defense for claims against the County will require voluminous evidence and could consume days of trial all on its own. This Court is not convinced that two designated witnesses and twenty-eight exhibits would necessarily be considered voluminous. Additionally, in the proposed pre-trial order, parties estimate only eight days for trial, which this Court assumes includes the Plaintiffs' claims against the County as well as Defendants' defense of these claims.

Due to the significant evidentiary overlap noted above, this Court determines that bifurcation would not serve judicial economy.

**B. Defendants Lack Factual Foundation That Evidence of County's Liability Will Be Prejudicial To Individual Defendants**

Defendants argue Plaintiffs will need to introduce evidence against the County that will "necessarily include multiple years' worth of evidence related to County's custom and practice." Defendants argue this evidence will be highly prejudicial, confusing to the jury and completely unrelated to individual Defendants. If Defendants could point to a factual foundation for their argument, this Court might be inclined to agree. However, they do not. This Court notes Defendants' brief is completely devoid of citation to any specific exhibits or witnesses listed by Plaintiffs in the pre-trial order that would fit this description. The Court's own review of the exhibits and witnesses similarly did not locate such.

Instead, Defendants' brief speaks in terms of what evidence is "typically" or "likely" required for similar claims. Curiously, Defendants suggest the Court should

1  disbelieve Plaintiffs' offers of proof in their opposition regarding listed evidence in the
2  pre-trial order, which the parties drafted *together* and provided to this Court prior to the
3  pre-trial conference on May 23, 2022.  If there exists any prejudicial evidence of past
4  incidents Plaintiffs intend to submit, the Defendants had ample opportunity to cite it
5  directly in their Motion and explain the potentially prejudicial effect.  As the *Avila* court
6  noted, "defendants' motion appears to be premised on a *Monell* theory that Plaintiffs do
7  not intend to pursue."  No. 17-cv-05607-AB-JPRx, 2018 WL 7501260 at *2.  This Court
8  is similarly unconvinced by hypothetical arguments.

9   In addition to lacking factual support, the cases Defendants cite in support of their
10 assertion that Plaintiffs' *Monell* evidence will be highly prejudicial are equally
11 unpersuasive.  Almost all cases cited by Defendants involved excessive force claims
12 involving police officers, police dogs, or jail staff.  Courts have typically bifurcated
13 *Monell* claims in excessive force cases because evidence of similar conduct tends to be
14 graphic, emotionally charged and highly prejudicial.  *See Quintanilla*, 84 F.3d at 356
15 (bifurcation warranted because *Monell* evidence involving graphic depictions of more
16 severe police dog bites had high certainty of prejudice to individual officers); *Williams v.*
17 *Long Beach*, No. 19-cv-05929-ODW-AFMx, 2020 WL 4429356 at *1-2 (C.D. Cal. July
18 31, 2020) (excessive force claim bifurcated from *Monell* claims as plaintiff intended to
19 introduce evidence of similar acts by same officers); *Hwang v. City & Cty of San*
20 *Francisco*, 2008 WL 4447708 at *2 (bifurcation ordered as *Monell* claim involved
21 multiple other incidents of excessive force by same officer); and *White v. Baca*, No.
22 CV13-3401-JFW-SSx, 2014 WL 12700946 at *4 (C.D. Cal. Feb. 6, 2014) (excessive
23 force claim against prison guards bifurcated because *Monell* evidence included other
24 alleged uses of excessive force in the jail).

25  This Court notes the only fact-based citation in the Defendants' brief on this issue
26 is to an email thread attached as an exhibit which points to Plaintiffs' refusal to agree to a
27 stipulation that "Plaintiff will not argue…or make any reference to any other injury or
28 death in jail."  Plaintiffs provide context for this refusal in their Opposition, indicating

during a post-incident interview, Defendant DeGuzman stated that "the lack of protocols related to MOC1 caused major confusion among the nursing staff", and referenced a prior incident in MOC1 which added to this belief, although he could not recall any facts or specifics of the incident.

A reference to a single prior incident, completely devoid of specifics or details, is not likely to cause prejudice to individual Defendants. Beyond this sole reference, Plaintiffs stated a willingness to stipulate to not introduce independent reports or elicit testimony relating to prior injuries or deaths in MOC1.

Finally, Defendants argue because the parties have already agreed to bifurcate punitive damages from the rest of the trial, it would not prejudice Plaintiffs to simply move the issue of County liability into this second phase. Although prejudice to Plaintiffs as its own inquiry is unclear, the proper inquiry is not merely would bifurcation *not prejudice* a party, but whether bifurcation would *avoid prejudice* to a party. There must be an active judicial goal in mind of avoiding prejudice or achieving convenience and economy.

## CONCLUSION

This Court finds that the evidence likely to be presented regarding the individual Defendants' and County's liability is significantly overlapping and would burden judicial resources to duplicate through further bifurcation. Additionally, this Court did not find evidence regarding potentially prejudicial deaths or injuries in the San Diego County jail listed in the parties' proposed pre-trial order, nor did Defendants cite to any in their motion.

For the foregoing reasons, the Defendants' motion for separate trials is hereby DENIED.

**IT IS SO ORDERED.**

DATED: October 28, 2022

_____
HON. ROGER T. BENITEZ
United States District Judge