UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA SANDOVAL, et al., | Case No.: 3:16-cv-01004-BEN-AGS |
| Plaintiffs, | **ORDER ON MOTIONS IN LIMINE** |
| v. | |
| COUNTY OF SAN DIEGO, et al., | |
| Defendants. | **[ECF Nos. 80-93]** |

Plaintiff Ana Sandoval, individually and as successor in interest to Ronnie Sandoval, along with Ronnie Sandoval, Jr., and Josiah Sandoval (collectively "Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 following the in-custody death of Ronnie Sandoval ("Sandoval") while he was detained at the San Diego Central Jail. ECF No. 1. Plaintiffs allege that during Sandoval's confinement, County of San Diego ("County") and employees Romeo de Guzman, Dana Harris, and Maria Llamado (collectively, "Nurse Defendants") were deliberately indifferent to Sandoval's serious medical needs and liable for his wrongful death. *Id*.

On July 24, 2023, Plaintiffs and Defendants submitted a total of fourteen motions in limine. *See* ECF Nos. 80-93. Both parties submitted responses and replies. ECF Nos. 96-124. The briefing was submitted on the papers without oral argument pursuant to

Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.  ECF No. 125.  The Court's determination for each motion is listed below.

## I. BACKGROUND

The facts of this case have been reiterated in previous orders by this Court and will not be extensively repeated here.[1]  To the extent that factual information is required to dispose of the parties' motions, such facts will be referenced in the discussion of the relevant motion.

## II. LEGAL STANDARD

Rulings on motions in limine fall entirely within this Court's discretion.  *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)).  Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose.  *Mathis v. Milgard Manufacturing, Inc.*, Case No. 16-cv-2914-BEN-JLB, 2019 WL 482490 at *1 (S.D. Cal. Feb. 7, 2019).  If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context.  *Bensimon*, 172 F.3d at 1127 (when ruling on a motion in limine, a trial court lacks access to all the facts from trial testimony).  Especially relevant here, denial of a motion in limine does not mean that the evidence contemplated by the motion will be admitted at trial.  *Id.*  Instead, denial means that the court cannot, or should not, determine whether the evidence in question should be excluded before trial.  *Id.*; *see also McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (rulings on motions in limine are subject to change when trial unfolds).

The parties have also made various challenges to each other expert witnesses.  Regarding experts, Federal Rule of Evidence 702 provides:

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

---

[1] *See* Order Granting in Part Defendants' Motion for Summary Judgment, ECF No. 39.

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.  The Ninth Circuit has interpreted Rule 702 to require that "expert testimony…be both relevant and reliable."  *U.S. v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001).  Relevancy requires "the evidence…logically advance a material aspect of the party's case."  *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).  Included in the relevancy requirement is "whether [the expert's testimony] is helpful to the jury, which is the 'central concern' of Rule 702."  *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 f.n.7 (9th Cir. 2002), *amended by* 319 F.3d 1073 (9th Cir. 2003), *overruled on other grounds by U.S. v. Bacon*, 979 F.3d 766 (9th Cir. 2020).

"As to reliability, the district court must determine whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Crowley v. EpiCept Corp.*, 09-cv-0641-MJL-BGS, 2015 WL 13827908 at *1 (S.D. Cal. March 11, 2015) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 148-49 (1999)).  "The focus, of course, must be solely on principles and methodology, not the conclusions that they generate."  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Expert testimony is liberally admitted under the Federal Rules.  *Daubert*, 509 U.S. at 588.

### III. DEFENDANTS' MOTIONS IN LIMINE

A. Defendants' MIL # 1 (ECF No. 80).  Defendants' first motion in limine seeks to preclude Deputy Matthew Andrade ("Andrade") from testifying regarding: (1) the difference between EMTs and paramedics; (2) the diagnosis of methamphetamine overdose and/or poisoning or any other medical opinions; (3) that calling paramedics instead of EMTs would have been better for Sandoval and/or that it was frustrating that paramedics were not called; and (4) whether an EMT is able to transport an unresponsive patient.  ECF No. 80.  Relevant to this motion is the fact that Andrade was trained as an

EMT prior to working as a Correctional Deputy.  *Id*. at 2.  Specifically, Andrade worked as an EMT for about a year, an ER trauma technician for about two years, and worked as an EMT/Firefighter for six years.  *Id*.  Andrade further began, but did not complete, schooling to become a paramedic.  *Id*.  Andrade was among the deputies summoned to MOC1 to assist when Sandoval was discovered to be in medical distress.  ECF No. 108 at 2.  Andrade also urged Defendant Nurse Harris multiple times to call for paramedics instead of EMTs.  *Id*. at 3.

Defendants argue the identified testimony would be improper lay or expert opinion, and further would be irrelevant and prejudicial.  ECF No. 80 at 4-7.  Plaintiffs agree that Andrade should not be allowed to offer "any medical diagnosis, medical cause of death, or other medical opinion."  ECF No. 108 at 3.  However, Plaintiffs argue that the Defendants' other requested constraints on Andrade's testimony are unwarranted because the testimony will "rest firmly on Deputy Andrade's personal observations."  *Id*. at 5-6.  Plaintiffs cite to *U.S. v. Gadson*[2] and *In re Google AdWords Litigation*[3] to support the argument that Deputy Andrade may permissibly testify regarding specialized knowledge if it is sufficiently within the realm of his personal experience.  The Court does not find either authority quite on point.  In *Gadson*, the Ninth Circuit discussed the contours and policy choices behind Federal Rule of Evidence ("Rule") 701.  763 F.3d at 1206-1208.  The issue identified in *Gadson* was whether an officer could testify regarding the meaning of coded language used in taped phone calls.  *Id*.  The Court concluded that if the witness used information gained or learned through the course of the investigation to offer this testimony, it fell outside the prohibitions of Rule 701.  *Id*. at 1210.  The Court also considered testimony regarding the meaning of "drug jargon" because the officer partially relied on training he had received and not merely his observations during the scope of the investigation at hand.  *Id*. at 1212-1213.  However,

---

[2] 763 F.3d 1189, 1206-1213 (9th Cir. 2014).
[3] 08-cv-3369-EJD, 2012 WL 28068 at *4-5 (N.D. Cal. 2012).

the Court ultimately found because the officer only relied on his training to define a single word, this testimony did not run afoul of Rule 701.  *Id*. at 1213.

The *In re Google AdWords Litigation* Court explained lay opinion testimony should "not provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events[,]" with the caveat that "the rules of evidence have long permitted a person to testify to opinions about their own business based on their personal knowledge of their business. . . ."  2012 WL 28068 at *4.  The business knowledge exception certainly does not apply in this instance.

Andrade will certainly be allowed to testify to his observations of the scene, and his conversations with Nurse Harris.  The Court is not persuaded by Defendants' urging that Andrade's lack of knowledge of the policies of a particular private ambulance company necessarily means Andrade lacks basis for this testimony.  The Court concludes this issue will be best resolved in the context of trial because the line between percipient observations and specialized training is not clear and would benefit from the full context that trial provides.  Accordingly, the Defendants' first motion in limine is **DENIED**.

B. Defendants' MIL # 2 (ECF No. 81).  Defendants' second motion in limine seeks to exclude "any post-event changes to the jail's policies" to MOC1, the cell where Sandoval was held.  ECF No. 81.  Defendants specifically identify Plaintiffs' Proposed Trial Exhibit No. 509, a photograph of door placards associated with changes to MOC1 policy after Sandoval's death.  *Id*.  Defendants argue such evidence would fall under Rule 407, which generally prohibits introduction of evidence of subsequent remedial measures to prove negligence or culpable conduct.  Plaintiffs argue this evidence would be introduced for the permissible reason of showing "feasibility" of alternative measures.  ECF No. 102.  Plaintiffs argue Defendants' contention that MOC1 "offered constant monitoring" and "was [] the best place" for Sandoval is a dispute as to the feasibility of additional precautionary measures.  ECF No. 102.  Defendants do not respond to this contention, and instead argue that Plaintiffs have not adequately explained how the evidence is relevant.  ECF No. 112.

Rule 407 explicitly allows evidence of subsequent remedial measures if used to prove several listed factors, including "the feasibility of precautionary measures." Fed. R. Evid. 407. However, the disputed factor must be *disputed* for the evidence to be admissible. *Id*. *See also Jones v. Nat'l Railroad Passenger Corp*., No. 15-cv-02726-TSH, 2022 WL 2869845 at *2 (N.D. Cal. Jul. 21, 2022). The Court is not persuaded the Defendants' contention that MOC1 "offered constant monitoring" is a dispute regarding the *feasibility* of additional precautionary measures. Should Defendants' raise such dispute at trial, the exceptions to Rule 407 would apply and such evidence could be admissible. Accordingly, the Defendants' second motion in limine is **GRANTED**.

C. Defendants' MIL # 3 (ECF No. 82). Defendants' third motion in limine seeks to exclude any reference to the post-incident investigations by both Internal Affairs of the prison and the Registered Nursing Board, or to "any of the individual Defendants' personnel records." ECF No. 82. Defendants argue such evidence is irrelevant and prejudicial, and further would also be considered inadmissible as evidence of subsequent remedial measures under Rule 407. *Id*. Plaintiffs argue this motion is overbroad and does not sufficiently explain how evidence of an investigation would necessarily lead to an inference of wrongdoing in the jury's mind. ECF No. 109, 110. Further, Plaintiffs argue investigations are considered an initial step towards remediation and are not prohibited by Rule 407. *Id*. Neither party makes any substantive argument or reference to the personnel records.

"A defendant's internal investigations and reviews might constitute the initial step towards identifying the need for particular remedial action, but they are not themselves excluded under Rule 407." *Estate of Nunez v. Cnty of San Diego*, 381 F.Supp.3d 1251, 1255 (S.D. Cal. 2019) (quoting *Aranda v. City of McMinnville*, 942 F.Supp.2d 1096, 1103 (D. Or. 2013) (cleaned up). In reply, Defendants request the Court defer ruling on this motion "to allow questions of admissibility to be resolved in context." ECF No. 113. As denial of a motion in limine does not represent an ultimate ruling of admissibility, but rather a determination that the evidence is not "clearly inadmissible," Defendants' request

is inherent in the Court's denial of the motion. Accordingly, the Defendants' third motion in limine is **DENIED**.

D. Defendants' MIL # 4 (ECF No. 83). Defendants' fourth motion in limine seeks to preclude both of Plaintiffs' expert witnesses (Dr. Falgiani and Nurse Vontoure) from testifying "as to the issue of causation"[4] as well as "testifying beyond the scope of [their] expertise." ECF No. 83. Defendants make several arguments supporting this request.

*Differential Diagnosis*. Defendants argue that any causation opinions offered by Dr. Falgiani and Nurse Vontoure should be excluded because neither expert performed a "proper differential diagnosis." *Id*. Citing *Clausen v. M/V New Carissa*, Defendants argue that a differential diagnosis is required by any medical expert testifying on the issue of causation.[5] 399 F.3d 1049, 1057 (9th Cir. 2003). *Clausen* addressed the issue of differential diagnosis in a case where expert testimony was used to determine the cause of gill lesions on oysters. *Id*. at 1257-60. The Ninth Circuit in *Clausen* noted that a medical expert conducting a differential diagnosis was often sufficient for *Daubert* purposes, however this does not mean it is necessary. *Id*. at 1057 n.4. Given the facts of the present case, *Clausen* is not on point.

Next, Defendants argue Dr. Falgiani and Nurse Vontoure are not sufficiently qualified to offer opinions on causation.

*Dr. Falgiani.* Dr. Falgiani is a board-certified Emergency Medicine physician who had thirteen years of experience at the time he made his report in 2017. ECF No. 83 at 15. Dr. Falgiani underwent residency training at University of Florida—Shands

---

[4] Because the cause of Sandoval's death is undisputed, when the parties discuss the "issue of causation" in their motions, they are referring to whether medical intervention would have potentially saved Sandoval's life.

[5] This argument is somewhat peculiar in this instance, given that differential diagnosis is a tool used to "identify[] the cause of a medical problem[,]" but in this case, the medical problem (death) and its cause (acute methamphetamine toxicity) is undisputed. *Clausen*, 399 F.3d at 1057 n.4.

Jacksonville.  *Id*.  Dr. Falgiani received training on the diagnosis and management of acute toxicological emergencies, which included "in depth study of toxidromes and management of acute ingestions."  *Id*.  Defendants object to Dr. Falgiani's opinions regarding: (1) the standard of care related to patients with possible substance or toxin ingestion, and Defendants' breach of that care; and (2) whether timely medical intervention would have been successful in preventing Sandoval's death.  ECF Nos. 83 at 4; 114 at 3.  Defendants argue Dr. Falgiani lacks qualifications to be considered an "expert in toxicology," and further Dr. Falgiani's opinions lack testable theories nor were they supported by peer-reviewed literature.  ECF No. 83.  Additionally, Defendants argue "[t]he clinical symptoms referenced by Dr. Falgiani…do not remotely match the signs and symptoms of acute methamphetamine toxicity…"  ECF No. 83.  The two symptoms Dr. Falgiani specifically identified in his report are "diaphoresis" (commonly referred to as cold sweats) and "disorientation."  Both symptoms are listed in the textbook excerpt provided by Defendants in their brief.  *See* ECF No. 83 at 7.  The Court acknowledges that Defendants' expert opines the lack of additional expected symptoms made Sandoval's presentation of acute methamphetamine intoxication atypical.  *See* ECF No. 88 at 27.  It does not follow the symptoms that were observed in Sandoval "do not remotely match" the list cited by Defendants.  Further, Defendants do not adequately explain why only a toxicology expert could opine on the treatment avenues and outcomes of patients experiencing methamphetamine toxicity, and whether such treatment could have been effectively deployed to save Sandoval's life in this case.

The Court ultimately concludes Dr. Falgiani's combination of education and experience are sufficient to find his testimony both reliable and helpful.  Both Dr. Falgiani and Defendants' expert Dr. Geller have experience as emergency room physicians and will testify regarding treatment and outcomes for patients experiencing drug overdoses and toxicity.  The alleged deficiencies Defendants identify are matters for cross examination, not exclusion.  *See Primiano*, 598 F.3d at 564 ("Shaky but admissible

evidence is to be attacked by cross-examination, contrary evidence, and attention to the burden of proof, not exclusion.").

*Nurse Vontoure*.  Ms. Gwendolyn Vontoure ("Nurse Vontoure") is a Registered Nurse with eighteen years of experience (as of 2017).  ECF No. 83 at 56.  Nurse Vontoure has previously worked as a correctional nurse and became certified as a Legal Nurse Consultant in 2009.  *Id*.  Defendants seek to exclude the testimony of Nurse Vontoure regarding causation.  ECF No. 83.  Defendants do not identify any particular opinions by Nurse Vontoure they find objectionable; however, Plaintiffs point to a single statement at the end of Nurse Vontoure's report which concludes that the various breaches in the standard of care "ultimately led to [Sandoval's] untimely demise."  ECF No. 103 at 9.  Plaintiffs concede this opinion should be excluded but argue Nurse Vontoure's other opinions regarding the standard of care are relevant and reliable.  *Id*.  In reply, Defendants argue "the instant motion…did not seek to exclude this one specific statement, but rather all opinions by Nurse Vontoure relating to issues of causation."  ECF No. 114 at 2.  Defendants still do not identify any of Nurse Vontoure's opinions that would fall into this category, nor do they make any cognizable challenges to Nurse Vontoure's opinions regarding standards of care.

As Plaintiffs agree, Nurse Vontoure's testimony should not include the single conclusion that the breaches in standards of care "ultimately led to [Sandoval's] untimely demise."  Otherwise, Nurse Vontoure's opinions are effectively unchallenged.  The Court finds Dr. Falgiani's opinions on causation relevant and reliable for the purposes of *Daubert*.  Accordingly, Defendants' fourth motion in limine is **DENIED-IN-PART**.

E. Defendants' MIL # 5 (ECF No. 84).  Defendants' fifth motion in limine seeks to exclude all evidence, argument, or reference to any alleged failure to train or inadequate/insufficient training by jail staff.  ECF No. 84.  Defendants argue because Plaintiffs abandoned their failure to train claim, this evidence is irrelevant and prejudicial.  *Id*.  Plaintiffs respond that they will not "elicit testimony regarding a *failure* to train[,]" however Plaintiffs will need to elicit testimony regarding the training and policies related

to MOC1 and medical events in general.  ECF No. 107.  In reply, Defendants argue that evidence of training associated with MOC1 is not required to establish Plaintiffs' *Monell* claim, and further, evidence that the Defendant Nurses did not comply with various jail policies is insufficient to prove a constitutional violation.  ECF No. 115 (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009)).  Defendants essentially argue that any reference to trainings are only ever relevant to a failure to train claim.  ECF No. 115 at 3.

The arguments of the parties stray from Defendants' original request.  While the motion seeks to exclude only references to inadequate training or failure to train, the Plaintiffs' response and the Defendants' reply appear to argue whether any evidence of training associated with MOC1, adequate or otherwise, is relevant or admissible.  Next, neither Defendants nor Plaintiffs identify or discuss any specific training materials in the listed trial exhibits to support their arguments.  Still, the Court will briefly address the parties' arguments below.

First, Defendants argue, without citing legal authority, that any evidence related to trainings can only be relevant to a failure to train claim.  The Court cannot agree with this broad proposition.  Second, Defendants argue that training evidence is completely irrelevant to the liability of Nurse Defendants.  ECF No. 115.  To support this argument, Defendants cite to *Cotton v. County of Santa Barbara,*[6] stating, "the court in *Cotton* excluded the evidence of the internal policies and procedures as irrelevant to the claims against the individual defendants."  *Id*.  This is a misrepresentation (or misreading) of the ruling in *Cotton,* which not only declined to rule the policies were irrelevant but explicitly rejected a similar argument made by defendants in that case.[7]  The Court here

---

[6] No. CV 03-7652-PSG-RZ, 2010 WL 11508619 at *2 (C.D. Cal. Apr. 19, 2010).

[7] This is what the *Cotton* court said: "Defendants suggest in their opening brief, without any qualification, that 'internal policies and procedures are irrelevant when determining whether a constitutional violation has occurred.  <u>This is not an accurate characterization of the law</u>, as Defendants were forced to acknowledge in their reply.  Although the Ninth Circuit in *Henrich* did hold that the internal policies in that case were irrelevant to the

cannot grant Defendants' motion when the arguments are thus confused (failure to train evidence vs. all evidence of trainings), the parties do not identify any applicable evidence, and the argument is supported by mischaracterized legal authority. Accordingly, the Defendants' fifth motion in limine is **DENIED.**

F. Defendants' MIL # 6 (ECF No. 85).  Defendants' sixth motion in limine seeks to exclude any reference to any other death, injury, or medical treatment that occurred in the jail other than the incident involving Sandoval.  ECF No. 85.  Plaintiffs indicate agreement with Defendants' motion, with a single caveat regarding Nurse de Guzman. ECF No. 104.  Nurse de Guzman testified at his deposition that the policies related to MOC1 "created major confusion among the nursing staff."  *Id*.  When asked to elaborate, Nurse de Guzman referenced a single prior incident but was unable to recall any specific details.  *Id*.

The Court stands by its previous observation that "[a] reference to a single prior incident, completely devoid of specifics or details, in not likely to cause prejudice to [] Defendants." ECF No. 67 at 6-8.  The prejudice that would normally flow from evidence of past incidents, such as emotional details and gory photographs, simply do not exist in the contemplated testimony.  *Cf. Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996) (in police dog bite case, bifurcation warranted due to graphic depictions of more severe dog bites).  The parties appear to agree that evidence of prior deaths or medical incidents in the jail will not be introduced, with the sole exception of the reference made by Nurse de Guzman requested by Plaintiffs.  The Court is inclined to

---

plaintiff's excessive force claim, the court specified that internal guidelines can be relevant 'when one of their purposes is to protect the individual against whom force is used.' . . . Because Plaintiffs have failed to establish whether the internal policies fall within the *Henrich* exception, this Court cannot determine at this time whether evidence of internal policies or practices are relevant to Plaintiffs' claims." 2010 WL 11508619 at *2. (internal quotations and citations omitted) (emphasis added).

3:16-cv-01004-BEN-AGS

allow this reference.  Accordingly, Defendants' sixth motion in limine is **GRATNED-IN-PART**.

G. Defendants' MIL # 7 (ECF No. 86).  Defendants' seventh motion in limine seeks to exclude various policies related to sobering and medical cells in the jail.  ECF No. 86.  Defendants argue because Sandoval was never held in these cells, polices related to them are irrelevant and would be prejudicial to Defendants.  *Id*.  In response, Plaintiffs argue evidence relating to policies for other medical and safety cells represents "circumstantial evidence of the County's knowledge that the policies and protocols associated with MOC1 was substantially certain to violate inmates' constitutional rights." ECF No. 105 at 2 (citing *Sandoval v. Cnty of San Diego*, 985 F.3d 657, 682-84 (9th Cir. 2021).

Relevance is a broad category, defined as whether the evidence "has any tendency to make a fact more or less probable" and "is of consequence in determining the action." Fed. R. Evid. 401.  The Court cannot agree that evidence of other safety and sobering cell policies are irrelevant in this case.  Such evidence establishes the universe of policy options available to the County, which is relevant to determining whether the County was deliberately indifferent when it adopted and maintained the verbal pass down policy associated with MOC1.  Accordingly, Defendants' seventh motion in limine is **DENIED**.

H. Defendants' MIL # 8 (ECF No. 87).  Defendants' eighth and final motion in limine seeks to exclude any and all bloody, gruesome, or gory photographs depicting Sandoval's corpse.  ECF No. 87.  Defendants anticipate these photographs would show Sandoval's body after resuscitation efforts had failed, as well as photographs from the coroner's office before and during the autopsy.  *Id*.  Defendants argue that these photographs would be unduly prejudicial to Defendants and would merely inflame passions of the jury while providing little evidentiary benefit.  *Id*.  Plaintiffs respond that they seek to admit "only one or two photographs to support Mr. Sandoval's non-economic damages claim of pain and suffering[,]" and these photographs would be "carefully selected" to aid the jury in quantifying such damages.  ECF No. 106.  Neither

party submitted exemplar photographs.  Notwithstanding the Plaintiffs' assurance that they will "exercise great care in the presentation of these photos[,]" the Court concludes it cannot appropriately rule on this motion without first viewing the selected photographs. Accordingly, the Defendants' eighth motion in limine is **DENIED**.  The Court further **ORDERS** Plaintiffs to bring the selected photographs to the Court's attention prior to introduction to the jury, so the Court may revisit this ruling.

## IV. PLAINTIFFS' MOTIONS IN LIMINE

A. Plaintiffs' MIL # 1 (ECF No. 88).  Plaintiffs' first motion in limine seeks to exclude certain opinions of Defendants' expert witness Dr. Geller.  ECF No. 88. Specifically, Plaintiffs seek to exclude Dr. Gellers' opinions that: (1) characterize the dose of methamphetamine ingested by Mr. Sandoval as "fatal"; (2) Sandoval would have died even with timely medical intervention (referred to by Plaintiffs as "dead man walking theory"); (3) the Deputies and Nurses did not have sufficient information to conclude Sandoval required medical treatment; and (4) testimony regarding the difference between smoking and ingesting methamphetamine.  *Id*.  Plaintiffs argue such testimony is speculative, irrelevant, inflammatory, and overly prejudicial.  *Id*.

Dr. Geller is a board-certified physician with over twenty-seven years of experience in both internal practice and emergency medicine.  ECF No. 88 at 22.  Dr. Geller is also certified by the American Board of Medical Toxicology in the subspeciality of medical toxicology.  *Id*.  Additionally, Dr. Geller serves as the director of the Fresno/Madera Division of the California Poison Control system, a role he has held since 1987.  *Id*.

*1. Characterization of Methamphetamine Dose as "Fatal."*  Plaintiffs argue Dr. Geller should be precluded from characterizing that the amount of methamphetamine Mr. Sandoval ingested was "fatal."  Plaintiffs argue this opinion is overwhelmingly prejudicial and would "misdirect the jury" by changing the focal point of the proceedings away from the deliberate indifference standard.  ECF No. 88.  Defendants argue causation is a required element of Plaintiffs' claims, which Plaintiffs cannot simply brush

aside to focus on the wrong-doing aspect of the deliberate indifference standard.  ECF No. 96.  Plaintiffs reply that "[i]t should be up to the jury whether the amount was fatal and whether Mr. Sandoval could have been saved by timely medical intervention."  ECF No. 119.  The Court agrees that the jury will ultimately need to consider whether they believe Mr. Sandoval could have been saved by timely medical intervention.  However, the Court does not find Dr. Geller's characterization of the methamphetamine dose ingested by Mr. Sandoval as "ultimately fatal" to be unduly prejudicial. Additionally, "[i]t is well-established…that expert testimony concerning an ultimate issue is not per se improper."  *Handgarter v. Provident Life and Accident Ins*., 373 F.3d 998, 1016 (9th Cir. 2004).

　　　*2. "Dead-Man Walking Theory" Testimony*.  Plaintiffs argue the opinion that Sandoval would have died even with timely medical intervention is speculative and highly prejudicial.  Specifically, Plaintiffs argue this should be excluded because it is not based on a "reasonable degree of medical certainty[,]" and that Dr. Geller does not sufficiently explain the basis for his opinion.  ECF No. 88 at 10-11.  Plaintiffs further argue that this opinion is so highly prejudicial that it cannot be mitigated by curative instructions and is ultimately irrelevant given Sandoval's cause of death is undisputed. *Id*. at 12.  The Court is unpersuaded by the relevance argument, given it would also logically render irrelevant the anticipated testimony of Plaintiffs' expert Dr. Falgiani.

　　　Dr. Geller's initial report reads, in pertinent part, "During those 14 hours [in custody], various pathologic cellular and metabolic processes were occurring which had Mr. Sandoval moving towards death.  At some point prior to death, these cellular and metabolic processes become unstoppable. . .." ECF No. 88 at 29 (Report of Dr. Geller). While Dr. Geller does not explain what these processes are in his initial report, Dr. Geller does offer explanation in his rebuttal report.  ECF No. 96 at 11-12 (Rebuttal Report of Dr. Geller) ("Metabolic changes including acidosis and electrolyte abnormalities occur. Energy stores of glucose and ATP are depleted.  The liver, kidney and brain are severely stressed.  Subcellular organelle damage, especially to critical mitochondria, occurs.  The

body has been dying for hours in stages.  Because of these injuries, advanced cardiac life support is very unlikely to be successful. . .").  The Court finds this a sufficient explanation to support Dr. Geller's conclusion that timely medical intervention would not have saved Sandoval's life.  The Court also concludes that this opinion is within Dr. Geller's expertise and experience as an emergency room physician and toxicologist.  The Court cannot say that a refutation of an opinion by one of Plaintiffs' experts equates to inflammatory prejudice.  Plaintiffs may test the strength of Dr. Geller's conclusions in cross-examination.

*3. Opinion regarding Deputies' & Nurses' Knowledge*.  Plaintiffs take issue with Dr. Geller's opinions regarding whether the jail staff had enough information to conclude Sandoval required immediate medical attention.  ECF No. 88 at 13, 17.  Plaintiffs argue the Deputies' conduct is not at issue, making any opinions regarding the deputies irrelevant.  *Id*.  Plaintiffs further argue that these opinions are contradicted by the evidence in the record (i.e., multiple Deputies and Nurse Llamado expressing concerns about Sandoval) and would ultimately confuse the jury.  *Id*. at 16.

The Court agrees it would not be helpful for an expert to opine on the ability of the Deputies and Nurses to draw certain conclusions, especially when those same people will be in court testifying to their own observations and conclusions for the jury to hear.  *Cf. Aya Healthcare Servs. Inc., v. AMN Healthcare, Inc.*, 613 F.Supp.3d 1308, 1322 (S.D. Cal. 2020) (citations omitted).  However, Dr. Geller may certainly testify, based on his professional experience and review of the evidence, whether he would have concluded Sandoval required treatment.  The jury can infer, and the Defendants can certainly argue, the logical extension of that opinion.

*4. Modality of Methamphetamine Consumption*.  Finally, Plaintiffs argue Dr. Geller's opinion regarding whether Mr. Sandoval smoked or ingested methamphetamine prior to his death is irrelevant and highly prejudicial.  ECF No. 88 at 19.  Plaintiffs argue that evidence regarding the modality of Mr. Sandoval's methamphetamine consumption has no bearing on any of the claims of the case and would simply paint a picture that Mr.

Sandoval was "a bad man not worth living because he smoked a 'fatal' amount of methamphetamine." ECF No. 119 at 7. Defendants respond that the method of consumption directly relates to the time it takes for the drug to absorb in the users' system, which in turn is relevant to the timing of peak blood quantity of the drug in Sandoval's system. ECF No. 96 at 8.

The Court would tend to agree with Defendants on this point, if this difference factored into Dr. Geller's conclusions. Although Dr. Geller notes peak blood quantities theoretically occur at different times based on modality of consumption, this does not appear to have any further bearing on his analysis. ECF No. 88 at 24-25. Dr. Geller estimates Sandoval's peak blood quantity of methamphetamine by noting that, "[one] elimination half-life occurred between cessation of methamphetamine consumption (assumed to be before his arrest) and the time of Mr. Sandoval's death (14 hours 22 minutes between arrest and death). . ." *Id*. at 25. The difference between smoking and ingesting the methamphetamine was not factored in this calculation. Nor does Dr. Geller reference this potential impact when discussing his observations of Sandoval's behavior on jail surveillance video, or when he discusses various cellular processes. *Id*. at 26-29. The Court agrees that this testimony is ultimately more prejudicial than probative, especially given Dr. Geller's reference to evidence found during Sandoval's arrest.

In summary, the Court does not find Dr. Geller's opinions regarding characterization of methamphetamine dose as "fatal" or his opinion that Mr. Sandoval would have died even with timely medical intervention warrant exclusion. However, the Court does agree Dr. Geller's opinions regarding the jail staff's ability to form conclusions, and the modality of Sandoval's consumption of methamphetamine, should be excluded and limited as referenced above. Accordingly, the Plaintiff's first motion in limine is **GRANTED-IN-PART**.

B. Plaintiffs' MIL # 2 (ECF No. 89). Plaintiffs' second motion in limine seeks to exclude certain opinions of Defendants' expert witness Dr. Minns. ECF No. 89. Dr. Minns is a physician licensed by the State of California. *Id*. at 12. Dr. Minns completed

1   a Toxicology Fellowship at University of California San Diego, where she served as the

2   Director for the Medical Toxicology Fellowship at the time of her report. *Id*.

3   Additionally, Dr. Minns also had thirteen years of experience as an Emergency Physician

4   at the time of her report. *Id*.

5        Reprising certain arguments from their first motion, Plaintiffs seek to exclude Dr.

6   Minns' opinions that: (1) Sandoval would have died despite timely medical intervention;

7   and (2) testimony regarding certain symptoms of methamphetamine toxicity. *Id*. at 2.

8   Plaintiffs argue such evidence is irrelevant and prejudicial. For the reasons discussed

9   above, the Court finds Plaintiffs' argument on the first opinion unpersuasive. *See* section

10  IV.A.2, *supra*. On the second point, Defendants respond that while Sandoval did not

11  exhibit symptoms of excited delirium, this is precisely the point Defendants wish to

12  make—Sandoval did not exhibit many of the symptoms a medical provider might expect

13  to see in a patient experiencing a massive methamphetamine overdose. ECF 97 at 6-7.

14  Accordingly, symptoms that Sandoval did not experience, but which a medical provider

15  might have expected to see, should be discussed. *Id*. The Court is persuaded by

16  Defendants' reasoning. The Court also concludes this testimony would not be unduly

17  prejudicial. Accordingly, Plaintiffs' second motion in limine is **DENIED**.

18        <u>C. Plaintiffs' MIL # 3 (ECF No. 90)</u>. Plaintiffs' third motion in limine seeks to

19  exclude certain opinions of Defendants' expert Kathryn Wild. ECF No. 90. Ms. Wild is

20  a Registered Nurse in the State of California with over thirty years' experience in the

21  correctional healthcare field. *Id*. at 11. Ms. Wild's testimony will concern whether

22  Defendant Nurses breached the applicable standards of care with respect to Sandoval. *Id*.

23  at 21.

24        Plaintiffs take issue with Ms. Wild's opinions regarding: (1) characterization of the

25  amount of methamphetamine consumed by Sandoval as "fatal"; (2) the County's intake

26  screening policies and corresponding standard of care; and (3) that Nurse Costa acted in

27  accordance with the standard of care. *Id*. at 2. Again, the Court is unpersuaded by the

28  first argument for reasons discussed above. *See* section IV.A.1, *supra*. Second, as

Defendants' point out, Nurse Wild does not offer any opinion that Sandoval would have died even with timely medical intervention.  ECF No. 98 at 4-5.

Regarding Ms. Wild's opinions on the County's screening process and Nurse Costa, Plaintiffs argue such testimony is irrelevant because Plaintiffs do not allege any wrongdoing at the screening stage of the booking process or by Nurse Costa.  ECF No. 90 at 4.  Defendants argue such evidence is relevant to the issue of causation—that Sandoval was properly screened by a nurse upon booking and had several opportunities to inform the jail that he had consumed methamphetamine.  ECF No. 98 at 5.  The Court concludes Ms. Wild's opinions on this point relevant, especially given Nurse Defendants' contributory fault defense to Plaintiffs' medical malpractice claim.  ECF No. 126 at 6. The Court does not agree that Ms. Wild's opinion regarding Nurse Costa or the booking process will confuse the jury to the point they believe "Plaintiffs are suing the County, and its employees, for anything and everything."  ECF No. 121 at 5.   Accordingly, Plaintiffs' third motion in limine is **DENIED**.

D. Plaintiffs' MIL # 4 (ECF No. 91).  Plaintiffs' fourth motion in limine seeks to exclude testimony, evidence and argument regarding Sandoval's criminal history and a gunshot wound apparently sustained by Sandoval approximately twenty years prior to his death.  ECF No. 91.  Plaintiffs specifically identify Defendants' trial exhibit T (a "lengthy rap sheet" with arrests and convictions dating back to 1980s) and exhibit B (146 pages of arrest records).  *Id*.  Plaintiffs argue that such evidence is improper character evidence, as well as irrelevant and prejudicial.  *Id*.  Defendants respond that such evidence is directly related to Plaintiffs' wrongful death damages, as Sandoval's criminal history (including multiple years-long periods of confinement) are relevant to the amount of financial support and companionship he would have provided.  ECF No. 99.  Plaintiffs concede that "…periods of confinement during which Sandoval was not physically present with Plaintiffs is relevant to Plaintiffs' wrongful death damages[.]" ECF No. 122.  However, Plaintiffs argue that the specifics of Sandoval's crimes, and specifically his "rap sheet" are still prejudicial and inadmissible as improper character evidence.  *Id*.  Plaintiffs

18

request that should the Court contemplate allowing such evidence, that the trial be bifurcated into a liability and damages phase. *Id*.

In *Estate of Diaz v. City of Anaheim*, the Ninth Circuit ruled it was an abuse of discretion for a district court to deny the plaintiff's motion to bifurcate given the inflammatory evidence of decedent's gang membership and drug use the day he was killed by police. 840 F.3d 592, 601-604 (9th Cir. 2016). Relevant here, the Ninth Circuit made the following observation, "[i]t is hard to see how most of this testimony was relevant even to damages, absent testimony—of which there was none—that [decedent's mother] knew of the photographs, gang signs, and drug use on the day of the offense, and that knowledge undermined the emotional impact of her son's death." *Estate of Diaz*, 840 F.3d at 601-02 (emphasis added). The Ninth Circuit went on to comment, "even if evidence of Diaz's drug use were relevant to damages…[i]t would have been far more relevant to damages for an expert to testify simply to the presence of drugs in Diaz's body and to the effects of drugs use on relationships." *Id*. at 602. This careful approach to potentially prejudicial details about decedents in civil rights cases has been followed by several district courts. *See Castro v. Cnty of Los Angeles*, No. 13-cv-06621-CAS-SS, 2015 WL 4694070 at *3-4 (C.D. Cal. Aug. 3, 2015) (citing *Peraza v. Dalmeter*, 722 F.2d 1455, 1457 (9th Cir. 1984) (while periods of prior incarceration were relevant to noneconomic damages, the nature and details of the prior convictions were irrelevant and prejudicial); *Lopez v. Aitken*, No. 07-cv-2028-JLS-WMC, 2011 WL 672798 at *4 (S.D. Cal. Feb. 18, 2011) (same).

The Court finds Defendants' authority distinguishable on the ground that the criminal history admitted in those cases were instances of criminal behavior between decedent and the surviving plaintiffs. *See Mahach-Watkins v. Depee*, No. C-05-1143-SI, 2007 WL 3238691 at *1-2 (N.D. Cal. Oct. 31, 2007) (evidence of threats of domestic violence by decedent against surviving plaintiff relevant to damages). Defendants also cite to *Cobige v. City of Chicago, Ill*., however the Court notes this Seventh Circuit opinion has not been cited favorably by the Ninth Circuit or district courts in California.

651 F.3d 780, 784 (7th Cir. 2011).  Given *Cobige* appears to contrast with the careful approach evidenced by *Estate of Diaz*, the Court does not find *Cobige* persuasive.

The Court ultimately concludes that the details and convictions evidenced in Sandoval's criminal history are unduly prejudicial.  The relevant information, Sandoval's time away from his family, can certainly be presented without the inflammatory details regarding the nature of his convictions.  Similarly, the Court does not find evidence that Sandoval sustained a gunshot wound twenty years prior to his death relevant, and even if it were, it is more prejudicial than probative.  Evidence of decedent's criminal history, including his rap sheet or reference to specific convictions, shall be excluded.  Parties may reference Sandoval's periods of confinement in an agreed-upon, neutral fashion; further, any criminal interactions that occurred directly between family members, such as those contemplated in *Mahach-Watkins*, would be admissible.  Accordingly, the Plaintiffs' fourth motion in limine is **GRANTED-IN-PART**.

E. Plaintiffs' MIL # 5 (ECF No. 92).  Plaintiffs' fifth motion in limine seeks to exclude any evidence or reference to prior bad acts by Plaintiffs, including "law enforcement contacts and drug/alcohol usage."  ECF No. 92.  Plaintiffs note that while Plaintiffs' relationship with Sandoval is relevant, evidence of Plaintiffs' prior bad acts which do not involve Sandoval are irrelevant and highly prejudicial.  *Id*.  Defendants respond such evidence is again relevant to Plaintiffs' wrongful death damages and would be used to show "Plaintiffs' knowledge of the extent of decedent's drug abuse and criminal history, to show their own motivation for using drugs or engaging in criminal conduct, and to disprove the wrongful death damages[.]"  ECF No. 100.

During her deposition, Plaintiff Anna Sandoval testified she was never involved in drug use with Sandoval, but she recalled having two "under the influence" arrests prior to becoming romantically involved with Sandoval.  ECF No. 92.  Defendants state they "do not intend to offer any evidence of these two arrests and any discussion regarding Ana Sandoval's law enforcement contacts and drug or alcohol use will be limited to interactions she had with the decedent."  ECF No. 100 at 3.  Similarly, Plaintiff Ronnie

1 | Sandoval III confirmed he had smoked marijuana and abused alcohol in the house where
2 | he and Sandoval lived, but the two were never involved in drug use together. *Id*.
3 | Defendants argue that evidence of Plaintiff Ronnie Sandoval III's drug use and arrest for
4 | DUI are relevant "when evaluating the relationship between the decedent and Mr.
5 | Sandoval, III[,]" because it is probative of his "motivation to follow in his father's
6 | footsteps[.]" ECF No. 100 at 5.

7 | The Court agrees with Plaintiffs on this point. Such evidence is not relevant to
8 | understand the relationship between Plaintiffs and Sandoval, given that Sandoval was not
9 | involved in any of the incidents described. Defendants are free to question events in
10 | which directly involve Plaintiffs and Sandoval together. Accordingly, Plaintiffs' fifth
11 | motion in limine is **GRANTED**.

12 | F. Plaintiffs' MIL # 6 (ECF No. 93). Plaintiffs' sixth and final motion in limine
13 | seeks to exclude any testimony, evidence, or argument regarding "unnoticed expert
14 | opinions by lay witnesses" regarding the amount of methamphetamine ingested by Mr.
15 | Sandoval prior to his death or the factors causing his death. ECF No. 93. Plaintiffs
16 | specifically point to Detective Peter Carillo's opinion in his investigative report on the
17 | incident that Mr. Sandoval ingested "twenty times the amount of methamphetamine it
18 | would take to kill a human being[.]" *Id*. Plaintiffs also identify Mr. Carillo's opinion
19 | that Mr. Sandoval's failure to inform jail staff of his methamphetamine ingestions
20 | contributed to his death. *Id*. Defendants respond that they "agree this [issue] can be left
21 | to the experts." ECF No. 101 at 3. Defendants do not contest (or reference) Plaintiffs'
22 | second request. Accordingly, the Plaintiff's sixth motion in limine is **GRANTED**.

## IV. CONCLUSION

23 | For the foregoing reasons, the Court **ORDERS** as follows:
24 | 
25 | 1. Defendants' First Motion in Limine is **DENIED**. ECF 80.
26 | 2. Defendants' Second Motion in Limine is **GRANTED**. ECF 81.
27 | 3. Defendants' Third Motion in Limine is **DENIED**. ECF 82.
28 | 4. Defendants' Fourth Motion in Limine is **DENIED-IN-PART**. ECF 83.

5. Defendants' Fifth Motion in Limine is **DENIED**. ECF 84.

6. Defendants' Sixth Motion in Limine is **GRANTED-IN-PART**. ECF 85.

7. Defendants' Seventh Motion in Limine is **DENIED**. ECF 86.

8. Defendants' Eighth Motion in Limine is **DENIED**. ECF 87.

9. Plaintiffs' First Motion in Limine is **GRANTED-IN-PART**. ECF No. 88.

10. Plaintiffs' Second Motion in Limine is **DENIED**. ECF No. 89.

11. Plaintiffs' Third Motion in Limine is **DENIED**. ECF No. 90.

12. Plaintiffs' Fourth Motion in Limine is **GRANTED-IN-PART**. ECF No. 91.

13. Plaintiffs' Fifth Motion in Limine is **GRANTED**. ECF No. 92.

14. Plaintiffs' Sixth Motion in Limine is **GRANTED**. ECF No. 93.

**IT IS SO ORDERED.**

DATED: November 9, 2023

HON. ROGER T. BENITEZ
United States District Judge