1
2
3
4
5
6               UNITED STATES DISTRICT COURT
7              SOUTHERN DISTRICT OF CALIFORNIA
8    ANA SANDOVAL, et al.,                    Case No.:  3:16-cv-01004-BEN-AGS
9                              Plaintiffs,
                                              **ORDER DENYING DEFENDANTS'**
10   v.                                       **MOTION FOR JUDGMENT AS A**
                                              **MATTER OF LAW**
11   COUNTY OF SAN DIEGO, et al.,
12                             Defendants.
                                              **[ECF No. 174, 194, 195]**
13

14        Before the Court is Defendants' motion for judgment as a matter of law.  ECF No.
15   194 ("Mot.").[1]  The motion is fully briefed.  ECF Nos. 198 ("Oppo."), 199 ("Reply").
16   For the reasons set forth below, Defendants' motion is **DENIED**.

                            **I. BACKGROUND**

18        *Facts*.  The facts of this case have been set forth in previous orders and will not be
19   extensively repeated here.[2]  This Order assumes familiarity with the facts of the case.

---

[1] Defendants also filed a separate motion under Rule 50(b) which memorializes the
separate nature of their qualified immunity argument.  See ECF No. 195.  However, this
document does not contain any discussion, but directs the Court to the applicable
discussion in the Defendants' Rule 50(a) motion.  *Compare* ECF No. 195 (50b motion)
with 194 (50a motion).  Accordingly, ECF No. 194 is considered the operative motion for
the purposes of this Order.

[2] *See* Order Granting in Part Defendants' Motion for Summary Judgment, ECF No. 39.

*Procedural History*.  Prior to trial, the parties jointly moved to dismiss Plaintiff's wrongful death and medical negligence claims.  *See* ECF No. 145.   These were the last claims connected to Plaintiffs Ana Sandoval, Ronnie Sandoval Jr. and Josiah Sandoval.  *Id*.  Accordingly, this left the Estate of Ronnie Sandoval as the sole remaining Plaintiff, bringing two claims for trial: (1) Section 1983 Deliberate Indifference to Serious Medical Need against Nurse Defendants Harris, DeGuzman and Llamado; and (2) Section 1983 Policy/Custom Relating to MOC1 against County of San Diego.  *Id*.

Trial commenced on April 15, 2024.  ECF No. 153.  Defendants made an oral motion for judgment as a matter of law at the close of Plaintiff's case on April 22, 2024.  *See* ECF No. 174 (Docket Entry for Oral Motion); ECF No. 177, 4/22 AM Trial Trans. at 906:1-5.  The motion was immediately taken under submission and Defendants presented their case in chief.  4/22 AM Trial Trans. at 906:4-5.  Accordingly, the briefing currently before the Court is argument related to Defendants' initial, oral motion for judgment.  ECF No. 193, 4/25 PM Trial Trans. at 1448:24-25 to 1449:1-19.[3]

On April 25, 2024, the jury returned a verdict in favor of Plaintiff on its deliberate indifference claim against Nurse Defendants Romeo DeGuzman and Dana Harris.  ECF No. 189 (Verdict).  The jury did not find Nurse Llamado or the County liable.  *Id*.

## II. LEGAL STANDARD

Rule 50 requires a court to render judgment as a matter of law when a party has been fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000).  Thus, the court must review all the evidence in the record, *cf.*, *e.g.*, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence, *e.g., Lytle v. Household Mfg., Inc.,*

---

[3] Accordingly, while Plaintiff argues Defendants' motion is procedurally improper, Oppo. at 7-9, the Court cannot agree.

494 U.S. 545, 554–555 (1990).  The latter functions are for the jury, not the court. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.  *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010).

"[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves* at 151. Taking a motion under submission and ruling on it after the jury returns a verdict is proper practice.  *See* Fed.R.Civ.P. 50(b) advisory committee's note.  However, the court "may not substitute its view of the evidence for that of the jury."  *Winarto v. Toshiba Am. Elecs. Components, Inc.,* 274 F.3d 1276, 1283 (9th Cir. 2001) (quoting *Johnson v. Paradise Valley Unified Sch. Dist.,* 251 F.3d 1222, 1227 (9th Cir. 2001)).

### III. ANALYSIS

#### A. Overview of Ninth Circuit Opinion

In 2021, the Ninth Circuit vacated this Court's grant of summary judgment, in part due to an intervening clarification of standards applied to Fourteenth Amendment claims for denial of needed medical care.  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668-669 (9th Cir. 2021).  Accordingly, jail officials fail to provide constitutionally adequate medical care when they: (1) make an intentional decision with respect to medical treatment; (2) which put plaintiff at substantial risk of suffering serious harm; (3) they did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved— making the consequences of their conduct obvious; and (4) by not taking such measures, the defendant caused plaintiff's injuries.  *Sandoval*, 985 F.3d at 669. (citation omitted). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable' which requires a showing of 'more than negligence but less

than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)).

When analyzing this case, the Ninth Circuit determined the Nurse Defendants were not entitled to summary judgment. *Id.* at 670-71. The Ninth Circuit further determined the Nurse Defendants were not entitled to qualified immunity because a reasonable jury could find their actions were deliberately indifferent under the objectively unreasonable standard and Sandoval's rights were clearly established at the time. *Id.* at 678-81. The parties contest the impact of this ruling on the current motion.

**B. Substantive Arguments**

Defendants make four main arguments in their motion: (1) Plaintiff failed to establish the third element because it did not present evidence concerning the standard of care; (2) Plaintiff failed to establish causation because its expert's opinions were speculative; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff's loss of life damages are entirely speculative. These arguments are addressed in turn below.

1. Standard of Care & Expert Testimony

Defendants argue Plaintiff was required to present evidence establishing the standard of care for jail nurses. Mot. at 8-15. Essentially, Defendants argue that without establishing the standard of care, the jury has insufficient evidence to conclude how a reasonable correctional nurse would have acted and what alternative measures were reasonably available to them. Mot. at 8. Defendants further argue the standard of care must be established by expert testimony. *Id.* at 9-10.

Plaintiff responds that mandating the standard of care be established via expert testimony is an evidentiary requirement under California state law, specifically related to medical malpractice claims. Oppo. at 15-18. As such, Plaintiff argues this is not a bright line requirement applicable to Fourteenth Amendment claims. *Id.*

Defendants cite *Hutchinson v. U.S.*, 838 F.2d 390 (9th Cir. 1988).[4]  The plaintiff in *Hutchinson* was a prisoner in San Diego experiencing lower back pain.  *Hutchinson,* 838 F.2d at 392.  The plaintiff in *Hutchinson* was seen twice by jail staff, who determined her symptoms were consistent with a urinary tract infection or kidney stone and prescribed antibiotics.  *Id*. at 392.  After her release, the plaintiff underwent surgery for removal of a kidney stone.  *Id*.  She then filed suit, bringing medical negligence, Eighth and Fifth Amendment claims regarding the medical treatment she received in prison.  *Id*.  The Ninth Circuit upheld the district court's grant of summary judgment in favor of the defendants.  *Id*. at 395.  When discussing the plaintiff's state law claim, the Ninth Circuit reasoned: "This standard of care, which is the basic issue in malpractice actions, can only be proven by expert testimony."  *Id*. at 392.  However, the portion of *Hutchinson* discussing the plaintiff's Eighth Amendment claim does not discuss expert testimony or the standard of care.  *Id*. at 394.[5]

Post *Hutchinson*, some district courts in the Ninth Circuit have concluded expert testimony is not necessary to establish deliberate indifference, specifically distinguishing *Hutchinson* on this point.  *See Herrera-Cubias v. Fox*, No. 08-cv-0517-TUC-AWT, 2012 WL 12539503 at *7 (D. Ariz. Sept. 10, 2012) ("Reliance on *Hutchinson* is misplaced, however, because the case deals with the evaluation of the standard of care in medical malpractices suits pursuant to California state law.  Further, *Hutchinson* states that expert evidence is not required when the type of conduct required by the circumstances is within common knowledge."); *Gonzalez v. Ahmed*, 67 F.Supp.3d 1145, 1156 (N.D. Cal. 2014)

---

[4] All but one of Defendants' other citations supporting this argument are California appellate decisions, discussing state law medical malpractice or negligence claims.  *See* Mot. at 8-9.

[5] Whether this is because the Court considered the discussion duplicative, the Eighth Amendment analysis contains a subjective element, or the Court did not find expert testimony necessary for the constitutional claim, is unclear.

("[E]xpert evidence is not required to show deliberate indifference."); *Ball v. Kootenai Cnty.*, No. 14-cv-00246-EJL-CWD, 2016 WL 4974949 at *5 (D. Idaho Sept. 16, 2016) ("...Defendants' argument that expert testimony is required to prove the deliberate indifference element of Ball's constitutional claims...is not supported by Ninth Circuit law—no such requirement exists."); *cf. Estate of Wilson by and through Jackson v. Cnty. of San Diego*, No. 20-cv-00457-RBM-DEB, 2023 WL 8360011 at *3 (S.D. Cal. Dec. 1, 2023).

Given the above precedent, the Court concludes there is no bright line rule that expert testimony on the standard of care is required to establish deliberate indifference. However, these decisions suggest that whether such expert testimony is necessary depends on the specific facts and circumstances of the case.  Relying on the "obvious to laymen" exception noted by *Hutchinson*, district courts have found under certain circumstances, "probing, complex questions concerning medical diagnosis and judgment[,]" are unnecessary.  *See Reidhead v. Arizona*, 2014 WL 2861046 at *5 (D. Az. Jun. 24, 20214) (quoting *Ledford v. Sullivan*, 105 F.3d 354, 359 (9th Cir. 1997)); *see also Sanders v. York*, 446 Fed. Appx. 40, 43 (9th Cir. 2011).

For example, in *Herrera-Cubias*, the district court concluded the plaintiff did not need expert testimony to prove his Fourteenth Amendment claim because "[i]t is within the common knowledge of laymen that an individual complaining of debilitating eyesight should see an eye specialist."  2012 WL 12539503 at *7.  The district court in *Gonzalez* reached a similar conclusion because, "[u]nder Plaintiff's version of the facts, Dr. Ahmed flatly refused to examine him because Dr. Ahmed was tired at the end of the day..."  67 F.Supp.3d at 1156-57.

However, in a case involving differences of medical opinion outside of common knowledge or experience, at least one district court found expert testimony *was* required to establish deliberate indifference.  *See Hesse v. Cnty. of Sacramento*, No. 21-cv-1931-WBS-KJN, 2024 WL 494007 at *7 (E.D. Cal. Feb. 8, 2024) ("The appropriate treatment

for the injury to plaintiff's right finger is not something within a layperson's common knowledge.").[6]

Accordingly, whether Plaintiff was required to provide expert testimony regarding the standard of care involves an examination of the particular circumstances faced by each Defendant.

### i. Nurse DeGuzman

Plaintiff argues the objectively unreasonable element was established when Nurse DeGuzman essentially refused to conduct any meaningful assessment of Sandoval, making the risk of harm obvious even to a layperson. Oppo. at 18-21. Defendants argue that regardless of this exception, "while it was 'obvious' to a layperson that Sandoval was sweaty, tired, and possibly 'under the influence' it is <u>not</u> obvious to a layperson that a sweaty possibly under-the-influence person needs any, let alone a particular type of medical care…" Reply at 4.

The Court concludes expert testimony was not required and the jury's verdict is supported by sufficient evidence. Plaintiff established DeGuzman made two decisions with respect to care of Sandoval, and the consequences of those decisions are obvious and within a layperson's knowledge. First, DeGuzman did not attempt to determine the nature of Sandoval's illness. Several Deputies who interacted with Sandoval prior to his placement in the MOC1 holding cell testified they believed Sandoval needed to be assessed by medical personnel.[7] DeGuzman himself testified that if nurses see a

---

[6] *Hesse* was deciding an unopposed motion for summary judgment. *Hesse*, 2024 WL 494007 at *7. *Hesse* first notes the layman exception, stating "[e]xcept where the type of conduct required by the particular circumstances is within the common knowledge of laymen, the standard of care can only be proven by expert testimony." *Hesse* cites to *Hutchinson* without comment regarding the distinction between *Hutchinson*'s discussion of state law and federal law claims. *Id.*

[7] *See* (1) Dep. Martinez, expedited process to get Sandoval to second floor for medical screening more quickly (ECF No. 173, 4/22 PM Trans. at 1069:9-25); (2) Dep. Bryan,

problem, they are required to take vital signs.  ECF No. 162 ("4/17 AM Trans.") at 354:6-8.  However, after a twenty second blood sugar test,  DeGuzman made no further efforts to identify the cause of Sandoval's condition.  4/17 AM Trans. at 360:2-12 (blood sugar normal), 378:21-379:4 (no longer my responsibility).  DeGuzman did not perform any further assessments or check on Sandoval for the remainder of his shift other than glancing at him through the window when he walked by periodically.  4/17 AM Trans. at 379:5-22.  Defendants argue in their brief that the decision not to assess Sandoval was reasonable given a full assessment would occur "soon."  *See* Mot. at 11 (soon), at 12 (in a matter of hours), at 23 (a few hours).  However, during trial, Defendants made a point to emphasize just the opposite—that it could take days for an inmate to complete the intake process.[8]

Second, around 7:21 p.m., Deputy Fox asked nursing staff why Sandoval was placed in MOC1.  ECF No. 160 ("4/16 PM Trans.") at 210:10-23.[9]  Nurse DeGuzman, standing mere feet away, did not respond to the question despite being the only person present who had any knowledge of why Sandoval was in MOC1.  4/17 AM Trans. at 381-82, Trial Exhibit 40.  DeGuzman further did not notify any of the nurses coming on shift

---

Sandoval sweating "profusely" such that front of his shirt "noticeably wet" (ECF No. 180, 4/23 PM Trans. at 1229:23-1230:6), kept an eye on Sandoval because he was concerned about him (*Id*. at 1233:18-25); (3) Dep. Chavez, told DeGuzman Sandoval was sweating, lethargic and confused (ECF No. 159, 4/15 AM Trans. at 72:20-73:3), asked DeGuzman to do a more thorough evaluation, not just blood sugar test (*Id*. at 93:16-19).

[8] *See e.g.,* ECF No. 159, Defense Opening Statement at 42:1-5, "And you can wait at these holding cells for a long time.  Sometimes it's just 45 minutes.  Sometimes it's hours.  You're going to hear sometimes you can wait until the next day.  The booking process can take days.  It's a long process."

[9] At this time, Deputy Fox observed Sandoval sweating, lethargic, slurring his words, and "too intoxicated to go through the booking process" (ECF No. 160, 4/16 PM Trans. at 211:5-25), Fox assumed Sandoval was in MOC1 for observation by medical staff (*Id*. at 213:13-16).

about Sandoval. *See* ECF No. 167, 4/18 PM Trans. at 608:1-25 (Llamado) (Nurse DeGuzman told her about sobering cell patients but not Sandoval in MOC1); (Harris) *Id*. at 695:6-696:6 (expectation that nurses to provide information to oncoming shift for patients in holding cells like MOC1). This aligns with the Ninth Circuit's description of the evidence it found compelling, that DeGuzman "failed to check on Sandoval at any point during the remaining six hours of his shift. Worse still, when his shift was over, [DeGuzman] did not relay any information about Sandoval to the nurses who replaced him. This left the night shift nurses with no way of knowing that Sandoval was being held in MOC1 for medical reasons." *Sandoval*, 670.

Applying the Rule 50 standard, the Court finds there was sufficient evidence for a reasonable jury to conclude that DeGuzman's actions were deliberately indifferent because "a reasonable nurse who was told that Sandoval was shaking, tired, and disoriented[10]—and who was specifically directed by a deputy to evaluate Sandoval 'more thoroughly'—would have understood that Sandoval faced a 'substantial risk of suffering serious harm.'" *Sandoval*, at 670 (quoting *Gordon*, 888 F.3d at 11245). Similar to the doctor in *Gonzalez*, the issue for DeGuzman is more akin to a "flat out refusal" to provide care rather than a difference in medical opinion. The Court does not find expert testimony regarding the standard of care was necessary to establish deliberate indifference under these circumstances.

### ii. Nurse Harris

Plaintiff argues it adequately established Nurse Harris' deliberate indifference through evidence of Harris' deviations from the standard nursing procedures ("SNPs") and the fact that other medical and non-medical personnel on the scene, including the

---

[10] In their brief and at trial, Defendants emphasize the difference between a layperson's understanding of disoriented and the medical definition of disoriented, arguing Sandoval's condition did not fall into the medical definition of the term. However, as the Ninth Circuit noted, "Sweating and being so disoriented that officers observe and comment about it are not everyday conditions." *Sandoval*, at 670.

Charge Nurse, urged Harris to take different action (*i.e.*, call paramedics instead of EMTs).  Oppo. at 23-26.  Defendants argue the decision to call EMT versus paramedics was one of medical judgment and point to conflicting evidence regarding whether Sandoval was actively having a seizure during the entire encounter or not.  Mot. at 13-14.

The Court concludes expert testimony regarding the standard of care was also unnecessary to determine Nurse Harris' deliberate indifference.  The jury's verdict is supported by sufficient evidence that the consequences of Nurse Harris' choices were apparent even to a layperson.  And while not expert testimony regarding the standard of care, Plaintiff did present two threads of evidence showing Nurse Harris' decision making deviated from enumerated expectations and procedures at the jail.  First, her decision did not align with the SNP related to seizures and seizure activity.  Trial Ex. 77 (Seizure SNP).  Contrary to Defendants' assertions, Sandoval did not need to have been having an active seizure throughout the entire encounter in order to trigger this SNP.  *Id.* at 2.  Every witness, other than Harris, observed Sandoval was either experiencing a seizure or seizure like activity, and/or was unresponsive.[11]  Second, Harris disregarded a directive from Charge Nurse Bautista to request paramedics, a directive echoed by others around her.  ECF No. 165, 4/18 AM Trans. at 554:1-5.[12]  Charge Nurse Bautista testified

---

[11] (1) Deputy Shawcroft, Sandoval had "grayish color" (4/17 PM Trans. at 454:22-25), "slumped over and fell on the ground and had a seizure"(*Id.* at 452:24-25), "I just know, when he was seizing, that he hit his head once[,]" (*Id.* at 457:17-21), "no response, tightening of the body" (*Id.* at 468:1-5); (2) Deputy Fox, Sandoval "shaking" and "unresponsive" (4/16 PM Trans. at 215:3-22); (3) Deputy Andrade, Sandoval was breathing but unresponsive (4/17 PM Trans. at 492:9-21), unresponsive throughout encounter (*Id.* at 496:17-25); (4) Nurse Llamado, Sandoval appeared to be having a seizure (ECF No. 167, 4/18 PM Trans. at 616:22-617:6), unresponsive with "tremors of the upper arms and upper body" (*Id.* at 617:13-19), Sandoval was "still seizing" as of 1:08 am, since 12:55 am (*Id.* at 623:1-8).

[12] *See also* Deputy Andrade, requesting paramedics multiple times (4/17 PM Trans. at 494:2-16).

that if she gave a directive to call paramedics, she would expect that instruction to be followed.  *Id.* at 554:9-12.  It was not.

This evidence also aligns with the Ninth Circuit's assessment, that "[t]here can be no debate that a reasonable nurse would understand that an individual who is unresponsive and seizing faces a substantial risk of suffering serious harm."  *Sandoval*, at 670.  Accordingly, the Court concludes under the Rule 50 standard, there was sufficient evidence to support the conclusion that Nurse Harris acted with deliberate indifference, "even if it is possible to draw the opposite conclusion."  *DSPT Int'l, Inc.*, 624 F.3d at 1218.

### 2. Causation & Dr. Falgiani

Defendants argue Plaintiff failed to present evidence on the causation element by attacking the conclusions of Plaintiff's expert, Dr. Falgiani.  Mot. at 17-20.  Defendants essentially argue that Dr. Falgiani's opinions are too speculative because Falgiani admitted he did not know what Sandoval's vitals were during the time he sat in MOC1.  Mot. at 17.  Defendants also argue Dr. Falgiani's opinion that Sandoval likely had a "treatable arrythmia" prior to his flatline is also speculative because there was "no evidence, knowledge, or opinion that what treatable arrythmia, if any, was present prior to Sandoval going into pulseless electrical activity."  Mot. at 19.

These arguments are somewhat circular.  Central to Plaintiff's theory of liability is that Sandoval was placed in a cell without any meaningful medical assessment, which would have included measuring vital signs.  For Defendants to argue that any expert testimony on causation is speculative because no one monitored Sandoval or checked his vitals actually strikes at the heart of the deliberate indifference at issue.  This lack of information regarding Sandoval's condition during the eight hours he sat in the cell *is the whole point* and is necessarily the result of Defendants' decisions.[13]  Plaintiff's theory is

_____

[13] Regarding DeGuzman and sobering cells specifically, Defendants' motion is somewhat contradictory.  First Defendants argue "…sobering cells…are not checked more

3:16-cv-01004-BEN-AGS

that if Sandoval had been properly monitored, his deteriorating condition would have been discovered.  And if it had been discovered, it would have been successfully treated. Further, there was circumstantial evidence of Sandoval's deteriorating condition in the form of observations by deputies who interacted with Sandoval prior to his placement in MOC1, and the observations of those who were in the cell with Sandoval during his ultimately terminal collapse.

Finally, the Court cannot conclude that Dr. Falgiani's testimony was so flawed or so speculative that it should not have been presented to the jury.  Defendants challenged Dr. Falgiani's causation opinions in a motion in limine.  ECF No. 83 at 4-7.  The Court found Dr. Falgiani's opinions passed *Daubert* scrutiny, and maintains this view.  ECF No. 130 at 7-8.  Dr. Falgiani and Defense expert Dr. Minns ultimately had similar qualifications and experience.  *Compare* ECF No. 160, 4/16 PM Trans. at 233-244 (Falgiani's qualifications and experience) with ECF No. 177, 4/22 AM Trans. at 922-930 (Minns' qualifications and experience).  While Defendants certainly argue their expert was *more* qualified, to give one expert's testimony more weight over the other is not the Court's role on a Rule 50 motion, but it is the province of the jury.  *Lytle*, 494 U.S. at 554-55.  Accordingly, the Court does not find Defendants' argument regarding Dr. Falgiani's causation opinions persuasive.

### 3. Qualified Immunity

Qualified immunity contains two elements: (1) violation of the plaintiff's constitutional right; and (2) whether that right was clearly established at the time. *Sandoval*, at 671 (quoting *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599 (9th Cir. 2019)).  Defendants' arguments regarding the first prong of qualified immunity

---

frequently."  Mot. at 17.  However, on the same page Defendants also assert, "[t]here was no evidence indicating that Mr. Sandoval's vital signs were deteriorating during his time in the cell such that additional checks, such as every four hours in a sobering cell, would have revealed changes."  Mot. at 17 (emphasis added).

are identical to their arguments regarding the standard of care.  Mot. at 21-23.  For the second prong, Defendants argue Plaintiff failed to identify caselaw that would establish Sandoval's right to care was "clearly established."  *Id*. at 22.  However, the Ninth Circuit directly ruled that Sandoval's rights were clearly established in its 2021 opinion.  *See Sandoval*, 678-79.  This is binding on the Court.  While the Defendants argue there are substantial differences between the evidence the Ninth Circuit reviewed on summary judgment and the evidence presented at trial, the Court is not convinced.[14]  Given the Court's findings above on the first prong, and the Ninth Circuit's binding opinion in *Sandoval* on the second, the Defendants are not entitled to qualified immunity.

### 4. Loss of Life Damages

The jury awarded Plaintiff $2,750,000 for Sandoval's loss of life.  Verdict at. 5.  Defendants make three attacks on the jury's loss of life award: (1) Plaintiff's counsel made an impermissible comment during closing argument regarding making a "statement" about Sandoval's loss of life; (2) the damages are speculative; and (3) loss of life damages were not allowed under California law at the time of Sandoval's death.  Mot. at 24-25.  These will be addressed in reverse order.

*i. Loss of Life Damages & California Law*.  This issue was raised during the parties' briefing on the jury instructions.  *See* ECF No. 148 at 125-129.  The Court determined that controlling Ninth Circuit precedent clearly permitted loss of life as a category of damages for the jury to consider for Section 1983 claims.  ECF No. 187 at 25; *see also Chaudhry v. City of Los Angeles*, 751 F.3d 1096 (9th Cir. 2014) and

---

[14] Defendants' list of differences in evidence are largely based on inferences and weight that can be drawn from evidence, not whether the evidence was presented at all.  *See* Mot. at 5-7.  For example, Defendants argue that contrary to the Ninth Circuit's opinion that Sandoval was unmonitored for eight hours, evidence at trial showed Sandoval was "checked hourly by deputies."  Mot. at 5.  First, the Court notes the Ninth Circuit describes this as "almost entirely unmonitored[.]"  *Sandoval*, at 663.  Second, evidence that deputies glanced at Sandoval through a window to perform an hourly head count does not appear to contradict this statement.

*Valenzuela v. City of Anaheim*, 6 F.4th 1098 (9th Cir. 2021). Defendants reprise their argument that loss of life damages are foreclosed by *Robertson v. Wegmann* which directs courts to apply the survivorship laws of the forum state for Section 1983 claims. Mot. at 25 n.5 (citing *Robertson*, 436 U.S. 584, 589-90 (1978)). *Robertson* is in harmony with *Chaudhry* and *Valenzuela—Robertson* found that the survivorship law of the forum state must be applied *unless* inconsistent with the purposes of Section 1983. *Robertson*, 436 U.S. at 589-90. This is exactly what the Ninth Circuit determined in *Valenzuela*: "[P]rohibiting loss of life damages would run afoul of § 1983's remedial purpose…Following *Chaudhry*, the court held that § 377.34's prohibition of loss of life damages was inconsistent with § 1983." *Id.* at 1103.

  *ii. Speculative Nature of Damages*. Defendants argue that loss of life damages are speculative because jurors have never experienced death. Mot. at 25. The Ninth Circuit in *Valenzuela* also addressed and rejected this exact argument. *Valenzuela*, 6 F.4th at 1103.[15] Defendants also argue loss of life damages are also too speculative because Plaintiff presented no evidence regarding Sandoval's life or who he was as a person. Mot. at 25. However, Defendants cite no legal authority directing any particular type of evidence is required for a jury to place a value on this type of non-economic "loss of life" damages. As Plaintiff pointed out, the evidence did show Sandoval was an otherwise healthy forty-seven year old, and Defendants offered their condolences and expressed remorse on the stand regarding the fact that Sandoval would "miss life" and "life milestones." Oppo. at 30. The Court agrees with Plaintiff that the jury permissibly used their collective judgment to place a monetary value on what is essentially intangible. The Court concludes this is a situation where it is sensible to leave "the decision-making on a

---

[15] "Defendants argue that loss of life damages are too speculative because juries have never experienced death. But juries are regularly asked to assess damages without direct sensory experience of the issue before them…And it is still better for juries to decide whether a plaintiff has received sufficient compensation than for our court to draw arbitrary lines denying compensation entirely." *Id.*

matter most suitable for a jury, to the jury." *Holzhauer v. Golden Gate Bridge Highway*, 743 Fed.Appx. 843, 845 (9th Cir. 2018).

    *iii. Plaintiff's Statement in Closing.*  Finally, Defendants argue that Plaintiff made an inappropriate comment during closing argument that impermissibly invited the jury to "make a statement" about the value of Sandoval's life.  Mot. at 24; *see also* ECF No.191, 4/24 AM Trans. at 1269:10-24.  The Court notes Defendants did not object to this comment during trial.  "In order for misconduct during closing arguments to warrant reversal, it must so permeate the trial as to lead to the conclusion that the jury was necessarily influenced by passion and prejudice in reaching its verdict." *K.J.P. v. Cnty. of San Diego*, 621 F.Supp.3d 1097, 1152 (S.D. Cal. 2022) (quoting *Cooper v. Firestone Tire and Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991) (cleaned up).[16]  The Court does not find Plaintiff's statements regarding the "impossible task" of putting a value on human life and invitation for the jury to "make a statement about the value of life lost" rises to the level of permeation required for reversal.  Accordingly, the Court will not disturb the jury's verdict for loss of life damages.

## IV. CONCLUSION

    For the foregoing reasons, the Defendants' motion for judgment as a matter of law is **DENIED**.

    **IT IS SO ORDERED.**

DATED: August 29, 2024

                          _____
                          HON. ROGER T. BENITEZ
                          United States District Judge

---

[16] Defendants in *K.J.P.* similarly waited until post trial motion to object to a statement made in plaintiff's closing argument.  521 F.Supp.3d at 1152.