Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:   (619) 826-8065

Joseph M. McMullen, Esq., SBN 246757
joe@jmm-legal.com
Law Office of Joseph M. McMullen
501 West Broadway, Suite 1510
San Diego, CA 92101
Telephone:  (619) 501-2000
Facsimile:   (619) 615-2264

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF RONNIE PAUL SANDOVAL. | Case No. 16cv1004-BEN-SBC |
| Plaintiff, | **PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS** |
| v. | Date:      June 9, 2025 |
| COUNTY OF SAN DIEGO; | Time:      10:30 a.m. |
| Defendants. | Dept.:     5A |
| | Judge:    Hon. Roger T. Benitez |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................ 6

II. THE LEGAL STANDARD .............................................................. 7

III. PLAINTIFF IS THE PREVAILING PARTY .................................. 8

IV. PLAINTIFF IS ENTITLED TO LODESTAR BASED ATTORNEYS' FEES 10

    A.    *The Hourly Rates of Plaintiff's Legal Team Are Appropriate Given*

          *Counsels' Skill, Experience and Reputation in the Civil Rights Community*

          *and The Current Markert Rate* .................................................. 10

    B.    *Defendants Aggressively Litigated This Case, And Continue to Do So* ....... 16

    C.    *The Number of Hours Spent were Reasonable and Necessary* .................... 17

    D.    *Plaintiff's Counsel Has Exercised Reasonable Billing Judgment* .............. 18

V. A 1.5 MULTIPLIER IS JUSTIFIED .................................................. 20

VI. PLAINTIFF'S REQUESTED FEES SHOULD NOT BE REDUCED FOR

NOT SUCCEEDING ON ALL CLAIMS ................................................ 23

VII. PLAINTIFFS' LITIGATION EXPENSES, WHICH WERE REASONABLE

AND NECESSARY, ARE FULLY RECOVERABLE ......................... 24

VIII. CONCLUSION ................................................................................ 25

MOTION FOR ATTORNEY FEES                 16CV1004-BEN-SBC

# TABLE OF AUTHORITIES

## CASES

*Barjon v. Dalton*

132 F.3d 496, 500 (9th Cir. 1997)........................................................10

*Blum v. Stenson*

465 U.S. 886, 888 (1984)........................................................10, 11

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*

532 U.S. 598 (2001)........................................................9

*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216, fn. 7 (9th Cir. 1986)........................................................25

*Charles v. Daley*

846 F.2d 1057 (7th Cir. 1988)........................................................7

*Christiansburg Garment Co. v. E.E.O.C.*

434 U.S. 412 (1978)........................................................8

*City of Riverside v. Rivera*

477 U.S. 561 (1986)........................................................8

*Davis v. City of San Francisco*

976 F.2d 1536, 1545 (9th Cir. 1992)........................................................10

*D'Emanuele v. Montgomery Ward & Co.*

904 F.2d 1379, 1384 (9th Cir. 1990)........................................................11

*Edmo v. Corizon, Inc.*

97 F.4th 1165 (9th Cir. 2024)........................................................20, 21

*Farrar v. Hobby*

506 U.S. 103 (1992)........................................................8

*Feminist Women's Health Ctr. v. Blythe*

32 Cal. App. 4th 1641, 1674 n.8 (1995)........................................................18

MOTION FOR ATTORNEY FEES                    16CV1004-BEN-SBC

*Fischer v. SJB–P.D. Inc.*

 214 F.3d 1115, 1119, fn.4 (9th Cir. 2000)...................................................10, 17

*Flitton v. Primary Residential Mortg., Inc.*

 614 F.3d 1173 (10th Cir. 2010) ..................................................................17

*Fox v. Vice*

 563 U.S. 826, 839 (2011) ...........................................................................17

*Franks v. Bowman Transp. Co*

 424 U.S. 747 (1976) .....................................................................................7

*Gomez-Sanchez v. Sessions*

 No. 14-72506 (9th Cir. 2019)......................................................................13

*Hensley v. Eckerhart*

 461 U.S. 424 (1983) ...........................................................................passim

*Keith v. Volpe*

 643 F.Supp. 37, 43-44 (C.D. Cal. 1985) .....................................................25

*Kerr v. Quinn*

 692 F.2d 875 (2d Cir. 1982) ..........................................................................8

*Kerr v. Screen Extras Guild, Inc.*

 526 F.2d 67 (9th Cir. 1975)..........................................................................20

*Kingsley v. Henderson*

 576 U.S. 389 (2015) ....................................................................................16

*Lanni v. State of New Jersey*

 259 F.3d 146, 149-50 (3rd Cir. 2001) .........................................................10

*Marroquin v. Unidentified LAPD Officer*

 No. 221CV07607RGKJEM, 2023 WL 5505061, at *4 (C.D. Cal.

 Apr. 24, 2023)..............................................................................................24

*McCown v. City of Fontana*

 565 F.3d 1097 (9th Cir. 2008)......................................................................24

MOTION FOR ATTORNEY FEES     16CV1004-BEN-SBC

*Moreno v. City of Sacramento*

    534 F.3d 1106, 1112 (9th Cir. 2008) ........................................................... 17, 18

*Nadarajah v. Holder*

    569 F.3d 906 (9th Cir. 2009) ................................................................................. 13

*Paola French, et al. v. City of Los Angeles, et al.*

    Case No. EDCV 20-0416 JGB (SPx) (February 21, 2024) .............................. 13

*Paulson v. City of San Diego*

    2007 U.S. Dist. LEXIS 43587, *13 (S.D. Cal. 2007) ...................................... 21

*Rodriguez v. County of L.A.*

    96 F. Supp. 3d 1012 (2014) ................................................................................. 22

*Schwarz v. Secretary of Health & Human Services*

    73 F.3d 895 (9th Cir. 1995) ................................................................................. 24

*Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982) ...................................................... 16

*Sorenson v. Mink*

    239 F.3d 1140 (9th Cir. 2001) ............................................................................ 23

*Stanford Daily v. Zurcher*

    64 F.R.D. 680 (N.D. Cal.1974) .......................................................................... 24

*Thornberry v. Delta Airlines, Inc.*

    676 F.2d 1240, 1245 (9th Cir. 1982) ................................................................. 25

## STATUTES

Senate Report 6, U.S. Code Cong. & Admin. News 1976, p. 5913 ...................... 10

## I.

## **INTRODUCTION**

Over a decade after Mr. Sandoval died in-custody, following a two-week trial, on April 25, 2024, the jury returned a verdict in favor of Plaintiff, the Estate of Ronnie Sandoval ("Plaintiff"), finding that Plaintiff established the elements of a Section 1983 claim against Defendants Romeo DeGuzman and Dana Harris.  The jury awarded Plaintiff $3,600,000, which was reduced to $1,800,000 based on Mr. Sandoval's alleged failure to mitigate damages.  (Exhibit 1.)

After 1) ten years of litigation, 2) prevailing in front of the Ninth Circuit, 3) the Supreme Court's denial of Defendants' writ of certiorari, and 4) prevailing at trial, by any measure, Plaintiff's counsel achieved an excellent outcome.  This litigation resulted in policy reforms and was one of the leading cases igniting the public inquiry into the County's unprecedented in-custody death rate.  (Declaration of Danielle R. Pena ("Pena Decl."), ¶ 44.)  Even more significantly, this case is responsible for resolving a novel legal issue in the Ninth Circuit regarding the appropriate legal standard for clearly established law in the context of qualified immunity in medical care cases.  In that regard, the *Sandoval* opinion is cited throughout the Ninth Circuit's model jury instructions.  (Pena Decl., ¶ 45.) Ultimately, this verdict will not only bring Mr. Sandoval's family accountability and financial security—the verdict, and resulting legal landscape, will lead to reforms that prevent future in-custody injuries and deaths.

Notably, due to the implication of Plaintiff's claims, and the foreseeable consequential effect a favorable verdict would have on pending and future lawsuits against the County, Defendants chose to aggressively litigate this case.  Even though this case was two months away from trial in state court, Defendants removed the matter to federal court, wherein they filed multiple dispositive motions, including a motion for summary judgment.  Following Plaintiff's Ninth Circuit appeal, a two-week trial ensued.  Defendants then filed a Rule 50 motion

6

and motion for a new trial.  Thus, obtaining this verdict was time-consuming, expensive, and risky.  In fact, most law firms would not have taken this case because civil rights litigation challenging jail misconduct is notoriously difficult and costly, especially when the decedent died from methamphetamine ingestion. And, given the uncertainty in the law at that time, this case was even more challenging and time-consuming than most.

Accordingly, as the prevailing party in this matter, Plaintiff requests that the Court order the County to pay reasonable attorneys' fees and expenses related to this case (in addition to reimbursement for the separate costs addressed in Plaintiff's application to tax costs, see Exhibit 2).  Plaintiff additionally requests that the Court retain jurisdiction to consider supplemental fee and cost requests for work performed after the instant motion in defense of the judgment.  Specifically, as detailed and justified below, Plaintiff requests that the Court order Defendants to pay $2,329,350 in reasonable attorneys' fees and $38,995.15 in reasonable costs.

## II.

## **THE LEGAL STANDARD**

The request for attorney's fees is made under *Hensley v. Eckerhart*, 461 U.S. 424, 425 (1983) (holding a plaintiff may be considered a prevailing party if he succeeds on any significant issue in litigation which achieves some of the benefit the party sought).  "[A] prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id*. at 429 (internal quotation marks omitted).  "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Id*. (quoting H.R. Rep. No. 94-1558, p. 1 (1976)).  Congress provided for fee awards under Section 1988 because it considered civil rights litigation to be a matter of the "highest priority" to the welfare of the nation. *Franks v. Bowman Transp. Co*, 424 U.S. 747, 762-63 (1976).  "Punishment and deterrence are undeniably important purposes of Section 1988." *Charles v. Daley*, 846 F.2d 1057, 1063 (7th Cir. 1988)

7

(citations omitted).  The "overriding goal" of Section 1988 is "to reimburse with a reasonable attorney's fee those who as 'private attorneys general' take it upon themselves to invoke and thereby invigorate federal constitutional and statutory rights." *Id*.

The standard for the Court to use in exercising its discretion in awarding fees and costs to a prevailing defendant was set forth in the Supreme Court's decision in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978).  The Court explained the purpose behind the fee provision was to make it easier for a plaintiff of limited means to bring a meritorious suit to vindicate a policy Congress considered of the greatest importance.  *Id*. at 418.

Accordingly, based on the jury's favorable verdict, Plaintiff is entitled to attorneys' fees and costs as the prevailing party pursuant to 42 U.S.C. Section 1988. *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986) (fee awards are designed to "encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel") (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982)).

### III.

### **PLAINTIFF IS THE PREVAILING PARTY**

"A plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988.  A typical formulation is that 'plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.  Furthermore, a plaintiff "prevails" for purposes of Section 1988 "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  Relief "'on the merits' occurs when the material alteration of the parties' legal relationship is accompanied by judicial *imprimatur* on the change."

8

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532
U.S. 598, 605 (2001).  Judicial imprimatur can come in the form of an enforceable
judgment on the merits or a court-ordered consent decree.  *Id.*

Here, Plaintiff is the prevailing party as the Estate succeeded on the most
significant claim against the two most at-fault Defendants.  Stated plainly, Plaintiff
achieved the exact goal Mr. Sandoval's family set out to accomplish.  The crux of
Plaintiff's complaint is that multiple deputies noticed Mr. Sandoval was displaying
symptoms indicating serious medical distress.  (Exhibit 3, ¶¶ 16, 20, 21.)  After
observing Mr. Sandoval's medical condition worsen over the three-hour booking
process, deputies expedited Mr. Sandoval to medical intake for "further medical
observation."  (Exhibit 3, ¶ 21.)  Plaintiff alleged that after Nurse DeGuzman took
Mr. Sandoval's blood sugar level, he, nor anyone else, entered the threshold of Mr.
Sandoval's cell for the next eight hours.  (Exhibit 3, ¶ 22; Exhibit 4.)  The
complaint next alleges that it was not until a deputy observed Mr. Sandoval lose
consciousness and begin to seize, did someone come to Mr. Sandoval's aid.
(Exhibit 3, ¶¶ 24-25.)  Unfortunately, the medical personnel that first responded—
Nurse Harris—violated the County's Code Blue policy and failed to activate the
paramedics.  (Exhibit 3, ¶ 27.)  Plaintiff alleged it was DeGuzman and Harris' delay
that caused Mr. Sandoval's premature death.  Seemingly, the jury agreed.

Accordingly, securing a favorable verdict against the two medical providers
responsible for Mr. Sandoval's care strikes at the heart of the relief sought by
Plaintiff.  The jury's $1,800,000 verdict equates to the "judicial imprimatur"
required to establish relief on the merits and an alteration of the parties' legal
relationship.  (Judgement was entered on February 10, 2025. Exhibit 5.)  In sum,
Plaintiff is the prevailing party.

/ / /

/ / /

/ / /

## IV.

## PLAINTIFF IS ENTITLED TO LODESTAR BASED ATTORNEYS' FEES

The initial determination of reasonable attorney's fees is calculated by multiplying the number of attorney hours reasonably expended on the litigation by a reasonable hourly rate. This is commonly referred to as the "lodestar." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The Supreme Court has made clear the lodestar calculation is a presumptively reasonable fee award. *Id.* at 897; s*ee also Fischer v. SJB–P.D. Inc*., 214 F.3d 1115, 1119, n.4 (9th Cir. 2000). The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Hensley*, 461 U.S. at 437.

### A.    *The Hourly Rates of Plaintiff's Legal Team Are Appropriate Given Counsels' Skill, Experience and Reputation in the Civil Rights Community and The Current Markert Rate*

Reasonable rates under Section 1988 are to be calculated according to the prevailing market rates in the relevant legal community performed by attorneys of comparable skill, experience and reputation. *Blum, supra*, at 893, 895 n. 11. "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). Fee awards under Section 1988 should be equivalent to fees "in other types of equally complex Federal litigation, such as antitrust cases." *Hensley*, 461 U.S. at 447 (citing Senate Report 6, U.S. Code Cong. & Admin. News 1976, p. 5913).

"Such rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992). "When attorney's fees are awarded, the current market rate must be used. The current market rate is the rate *at the time of the fee petition*, not the rate at the time the services were performed." *Lanni v. State of New Jersey*, 259 F.3d 146, 149-50 (3rd Cir. 2001); Also see

10

*Wakeley v. Knutson Towboat Co*., 2021 U.S. App. LEXIS 24929, *3 (9th Cir. 2021)
("fee awards should be based on current market conditions…")

> "[T]he burden is on the fee applicant to produce satisfactory evidence, in addition to the attorney's own affidavits, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n. 11. Under these circumstances, plaintiffs' counsel is entitled to compensation at the hourly rate "for similar services of lawyers 'of reasonably comparable skill, experience, and reputation.'" *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990).

> Keeping in mind that this case took over a decade to litigate, four different attorneys worked on this matter. However, not at the same time. Vincent Renda was the originating attorney. (Declaration of Vincent Renda ("Renda Decl."), ¶ 3.) Mr. Renda filed this case in state court in September of 2014. Mr. Renda specializes in bankruptcy and real estate law. After the County filed a motion for summary judgment, Mr. Renda sought out the expertise of Mr. Morris and Ms. Pena due to their success and experience with in-custody death cases. (Renda Decl., ¶ 3.) Mr. Morris and Ms. Pena took over as lead counsel and spent most of the hours litigating this case from preparation for the state court trial to removal by Defendants to federal court. Once removed to federal court, Mr. Morris and Ms. Pena worked up the case, noticed and took all depositions, opposed Defendants' motion for summary judgement, and successfully appealed the case. In June of 2022, Mr. Morris was appointed to the bench of The San Diego Superior Court and Ms. Pena remained as lead counsel. (Pena Decl. ¶¶ 3, 41.) In October of 2022, Mr. McMullen joined the legal team as trial counsel. (Declaration of Joseph M. McMullen ("McMullen Decl."), Exhibit 1, filed concurrently herewith.) Additionally, Plaintiff requests fees incurred by Leanna Pierce, a legal secretary with over 25 years of experience.

11

Mr. Morris graduated from law school in 1992 and had thirty years of litigation experience before joining the bench. (See Pena Decl. ¶ 33.)  Mr. Morris' requested hourly rate is $1,150.  (See Pena Decl. ¶ 42.)  Mr. McMullen graduated in 2006 and has 18 years of experience. (McMullen Decl., ¶ 7.)  Mr. McMullen's requested hourly rate is $975. (McMullen Decl., ¶ 22.)  Ms. Pena graduated from law school in 2012 and has 13 years of *exclusively* civil rights experience.  (Pena Decl., ¶¶ 3, 10.)  Ms. Pena's requested hourly rate is $800.  (Pena Decl., ¶ 28.) Mr. Renda graduated from law school in 2000 and has 25 years of experience.  (Renda Decl., ¶ 9.)  Mr. Renda's requested rate is $475. (Renda Decl., ¶ 14.)

To support the rates requested by Mr. Morris, Ms. Pena, Mr. McMullen, Mr. Renda, and Ms. Pierce, Plaintiff relies on various declarations and evidentiary support.  First, Plaintiff submits declarations from prominent civil rights attorneys in the Southern California community with comparable skill, experience and reputations to demonstrate each petitioning attorney's skill and reputation in the civil rights community.  (Declaration of Julia Yoo., ¶¶ 22-32; Declaration of Eugene Iredale, ¶¶ 14-20; Declaration of Timothy Blood, ¶¶ 11-15; Declaration of Timothy Scott, ¶¶ 3-10.)  Each declaring attorney has worked directly with Mr. Morris, Ms. Pena, and/or Mr. McMullen, and knows their work from personal experience and by their contributions to the civil rights community.  Each declaring attorney attests to the excellent reputations of Mr. Morris, Mr. McMullen, and Ms. Pena, in the civil rights community.  *Id.*

Plaintiff also relies on the declaration of Carol Sobel to address the reasonableness of the requested rates in relation to the current market rate. (Declaration of Carol Sobel ("Sobel Decl."), generally.)  Ms. Sobel has nearly fifty years of civil rights litigation experience.  (Sobel Decl., ¶ 2.)  In her twenty years at the ACLU, Ms. Sobel was responsible for preparing fee motions.  (Sobel Decl., ¶ 4.)  In that capacity, Ms. Sobel obtained current billing rates for lawyers of

comparable skill and experience at several large and boutique commercial firms throughout southern California.  *Id.*  After leaving the ACLU in 1997, Ms. Sobel continues to survey firms annually to obtain relevant comparisons for rates.  (Sobel Decl., ¶¶ 5-9.)  Ms. Sobel has also litigated statutory fee issues at the appellate level in several cases.  (Sobel Decl., ¶ 18.)

Ms. Sobel has recently been recognized as an expert on attorney fee rates in the Southern District.  (Sobel Decl., ¶ 16.)  Specifically, in *Mickail Myles v. County of San Diego*, Case No. 3:15-cv-01985-JAH-BLM (S.D. Cal. 2023) [Doc. 484, p.7]. Ms. Sobel's fee declaration was cited with approval for both rates and methodology.  *Id.  Also see Paola French, et al. v. City of Los Angeles, et al.,* Case No. EDCV 20-0416 JGB (SPx) (February 21, 2024); *Valenzuela v. City of Anaheim*, Case No. SACV 17-00278-CJC (DFMx) (C.D. CA. 2023).  Ms. Sobel's fee declaration has also been recognized by the Ninth Circuit in *Nadarajah v. Holder*, 569 F.3d 906, 912–14 (9th Cir. 2009) and *Gomez-Sanchez v. Sessions*, No. 14-72506 (9th Cir. 2019).  (Sobel Decl. ¶ 17.)

To support her opinions, Ms. Sobel searches various legal databases for fees awarded in San Diego in similarly complex cases.  She subscribes to several websites that report legal news and obtains copies of motions, supporting declarations and fee awards from public sources, including the state Superior Court websites and PACER.  (Sobel Decl., ¶ 9.)

Ms. Sobel also relies on recent fee awards from the Southern District.  (Sobel Decl., ¶ 22.)  In *Myles*, plaintiffs' counsel was awarded similar requested rates for attorneys with similar experience and skill as Mr. Morris, Mr. McMullen, and Ms. Pena.  *Myles* is a Section 1983 case prosecuting an excessive force claim. Plaintiff's counsel, Mr. Dicks, specializing in various areas of law, was a practicing attorney for 35 years at the time.  (Sobel Decl., ¶ 23.)  The court in *Myles* awarded Mr. Dicks an hourly rate of $1000.  *Id.*  This finding is relevant to Mr. Morris' rate request as each share similar years of litigation experience and excellent

MOTION FOR ATTORNEY FEES                    16CV1004-BEN-SBC

reputations. *Id.*  According to Ms. Sobel, Mr. Dicks' rate from 2022, is equivalent to Mr. Morris' requested rate if you apply a standard 5% annual increase.  (Sobel Decl., ¶¶ 22-23.)

Akin to Mr. McMullen's 18 years of experience and Ms. Pena's 13 years of experience, plaintiffs' counsel in *Myles*, Mr. Balaban, with 15 years of litigation experience, was awarded a $900 hourly rate.  (Sobel Decl., ¶ 24.)  Similar to Mr. McMullen and Ms. Pena, Mr. Balaban is the managing partner of his namesake firm and has had prior multi-million-dollar verdicts and settlements in Section 1983 cases.

Ms. Sobel's declaration in *Myles* cites evidence of the market rates for litigation attorneys in the Southern District of California, including various attorneys at the San Diego law firm, Robbins Geller Rudman & Dowd ("RGRD"). (Exhibit 6, ¶¶ 32-34.)  For example, RGRD attorney Danielle Myers was "awarded a rate of $800 an hour in 2019 when she had 11 years of experience." *Id.*  Five years later in 2024, Ms. Myers had 16 years of experience (two less than Mr. McMullen) and an hourly rate of $1,075.  *Compare Dicker v. TuSimple Holdings, Inc.*, ECF #236-8 at p. 9, Case No. 3:22-cv-01300-BEN-MSB (Declaration of RGRD attorney Lucas F. Olts in support of granted application for award of attorneys' fees) *and* The State Bar of California Attorney Database at https://www.calbar.ca.gov (Ms. Myers was admitted in December 2008).  Further, Ms. Myers' colleague Jennifer Caringal had 11 years of experience (one less than Ms. Pena) and an hourly rate of $835, while RGRD attorneys Michael Albert and Juan Sanchez each had 9 years of experience (three less than Ms. Pena) and hourly rates of $785.  *Id.*

Additionally, Ms. Pena and Mr. McMullen also rely on a 2024 fee award in *Enyart v. County of San Bernardino et al.,* wherein the court granted the same rates requested herein.  (See Exhibit 7.)  *Enyart v. Cnty. of San Bernadino*, 2024 U.S. Dist. LEXIS 237960, *7 (C.D. Cal. 2024).  Plaintiff acknowledges that *Enyart* is a

14

Central District case. However, the court in *Herring* is instructive on this issue. In that case, the court found a prior fee award from the Central District to be "relevant" because that case "from the Central District analyzed the rates of same attorneys from the same law firm, Gibson Dunn." *Herring Networks Inc., v. Maddow*, 2021 U.S. Dist. LEXIS 23163, *17 (S.D. Cal. 2021). Given the limited number of civil rights attorneys in the highly specialized area of practice involved in this case, the relevant market, includes the Central and Northern District, and as such Mr. McMullen and Ms. Pena's recent fee award from the Central District should be considered.

Similarly, Mr. Renda has over twenty years of litigation experience. Mr. Renda founded Renda Law Offices in 2009 and specializes in bankruptcy and real estate litigation. (Renda Decl., ¶¶ 9-10.) Mr. Renda requests his typical billing rate of $475 per hour. (Renda Decl., ¶ 14.)

Lastly, Ms. Pierce is the only litigation staff that has worked on this case. Ms. Pierce is a litigation assistant with over 25 years of experience. (Pena Decl., ¶ 30.) Since 2017, Ms. Pierce performed many non-clerical functions so that higher billers did not have to expend their time on such matters. *Id.* These functions include preparing joint motions and orders, legal research, and interfacing with clients and opposing counsel regarding substantive issues. *Id.* In addition to Ms. Sobel's declaration, Plaintiff also relies on the *Enyart* fee award to support her requested hourly rate of $150. (Sobel Decl., ¶ 35.) In *Enyart*, the court found Ms. Pierce "was involved in conducting research, drafting various stipulations, and ensuring compliance with local rules. These are not clerical tasks." The court in *Enyart* awarded Ms. Pierce the same rate requested in the instant motion—$150 per hour.

/ / /

/ / /

/ / /

15

1    In sum, based on the various declarations submitted in support of Plaintiff's

2    Counsel, and based on the current market rates and recent Southern District rulings,

3    the requested rates for Plaintiff's Counsel are reasonable and well within the range

4    for comparably skilled and experienced attorneys.

5    **B.**   ***Defendants Aggressively Litigated This Case, And Continue to Do So***

6    The reasonableness of hours must be assessed with reference to defense

7    litigation tactics. "[A party] cannot litigate tenaciously and then be heard to

8    complain about the time necessarily spent by the plaintiff in response." *Serrano v.*

9    *Unruh*, 32 Cal. 3d 621, 638 (1982). In this case, approximately three months

10   before trial was set to begin in state court, Defendants removed the action to federal

11   court. Defendants then filed multiple dispositive pleadings resulting in a successful

12   motion for summary judgment. Given the novel legal issue regarding the

13   applicable Constitutional standard in the face of *Kingsley v. Henderson*, 576 U.S.

14   389 (2015), Plaintiffs were forced to appeal the court's order. After Plaintiffs

15   prevailed on appeal, Defendants then filed a petition for writ of certiorari, requiring

16   Plaintiff to respond in kind. Plaintiff prevailed following a two-week trial and

17   multiple post-trial motions.

18   Throughout the past decade, Plaintiff expressed a willingness to consider a

19   reasonable settlement. Defendants' long-standing position throughout litigation

20   was the case had only nuisance value. As a result of Defendants' position, and the

21   overall complexity of the case, this case required extensive effort at every stage,

22   obtaining and scrupulously analyzing all the relevant documents, surveillance

23   footage and audio recordings; deposing approximately a dozen defense witnesses

24   and defending the depositions of plaintiffs; extensive motion work; trial

25   preparation, trial, and post-trial work. At trial, Plaintiff bore the burdens of proof

26   and persuasion, and did so successfully despite the "massive amount" of

27   methamphetamine ingested by Mr. Sandoval. Of necessity, prevailing in this case

28   required convincing the jury that Defendants' recitation of events was not credible,

16

MOTION FOR ATTORNEY FEES                                    16CV1004-BEN-SBC

1    and that Mr. Sandoval could have survived if provided timely medical intervention.

2    As such, due to Defendants' unrelenting litigation tactics, as detailed below, the

3    hours expended were reasonable and reflective of the overall posture of the case.

4    ### C.    *The Number of Hours Spent were Reasonable and Necessary*

5        As the courts have recognized, civil rights lawyers working without payment

6    from their clients have little to gain from "churning" a case: "It must also be kept in

7    mind that lawyers are not likely to spend unnecessary time on contingency fee cases

8    in the hope of inflating their fees.  The payoff is too uncertain, as to both the result

9    and the amount of the fee.  It would therefore be the highly atypical civil rights case

10   where plaintiff's lawyer engages in churning [...]" *Moreno v. City of Sacramento*,

11   534 F.3d 1106, 1112 (9th Cir. 2008).  Accordingly, attorneys should be fully

12   compensated for taking the steps they reasonably believe are necessary to *win* the

13   case: "By and large, the court should defer to the winning lawyer's professional

14   judgment as to how much time he was required to spend on the case; after all, he

15   won, and might not have, had he been more of a slacker." *Id*. (emphasis added).

16       The petitioning party's burden is satisfied by listing hours spent and

17   "identifying the general subject matter of [the] time expenditures" *Fischer v. SJB-

18   P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000).  "The essential goal in shifting fees

19   ... is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S.

20   826, 839 (2011).  "Plaintiff's counsel . . . is not required to record in great detail

21   how each minute of his time was expended." *Hensley*, supra, at 437, fn. 12; *Flitton

22   v. Primary Residential Mortg., Inc*., 614 F.3d 1173, 1178 (10th Cir. 2010) ("counsel

23   should identify the general subject matter of his time expenditures").  As set forth in

24   the attached billing statements, while it is not required, Plaintiffs' counsel detailed

25   time entries thoroughly as to each billed task.

26       In support of their motion, Plaintiff presents declarations of Mr. McMullen,

27   Ms. Pena, and Mr. Renda, attesting to the reasonableness of the fees requested,

28   accompanied by task-based itemized statements—for each requesting attorney—of

17

time expended on this mater, derived from contemporaneous billing records. (Pena Decl., ¶¶ 21-22; McMullen Decl., ¶19.) Those detailed statements reflect the date, amount, and nature of work each attorney performed.  *Id.*  As set forth in the billing records, Mr. Morris took most of the depositions in this matter and drafted/argued the appeal.  Ms. Pena was tasked with conducting and reviewing discovery, working with co-counsel and opposing counsel, deposition preparation, motion work, trial preparation, and post-trial work.  As such, Ms. Pena's hours account for over 50% of the requested hours expended by all attorneys.  (Pena Decl., ¶ 27.)

Mr. McMullen joined the legal team a year and a half before trial.  Since his association, Mr. McMullen and Ms. Pena worked in tandem preparing this case for trial. Mr. McMullen played a paramount role by earning the family's trust and in trying the case.  Mr. McMullen delivered the opening and closing argument as well as examined the two Defendants that the jury held accountable.  As detailed in his billing statement, every hour expended was necessary to achieve the obtained result.  (McMullen Decl., ¶¶ 17-19.)

"Where a plaintiff has obtained excellent results, the attorney[s] should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation." *Feminist Women's Health Ctr. v. Blythe*, 32 Cal.App.4th 1641, 1674 n.8 (1995).

**D.**    ***Plaintiff's Counsel Has Exercised Reasonable Billing Judgment***

In *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008), the Ninth Circuit explained certain factors upon which district courts may not rely on when modifying fee awards.  First, although courts may reduce awards based on unnecessary duplication of efforts, they must take into account circumstances under which duplicative work is necessary.  *Id*. at 1112.  Second, courts may not "set the fee based on speculation as to how other firms would have staffed the case."  *Id*. at 1114.  The court noted the difficulties of comparing staffing decisions of small or solo civil rights firms to that of large commercial litigation firms in light of the vast

18

differences between the two models.  *Id*. at 1115.  The court explained such a

comparison may not serve the "statutory goal of sufficiently compensating counsel

in order to attract qualified attorneys to do civil rights work."  *Id*.  Finally, the Court

should not engage in "double counting," by reducing both the hourly rate and the

total number of hours.  *Id*.

In addition to billing only for reasonable time expended, Plaintiff's counsel

took additional steps to exercise reasonable billing judgment.  For instance, Mr.

Renda was the originating attorney and filed the operative complaint in this case.

He was present at several depositions and attended many meetings amongst counsel

and clients, including the last mediation prior to trial.  (Pena Decl., ¶ 24.)  Once

Defendants prevailed on summary judgment, Mr. Renda continued to be involved

in the case.  However, in an attempt to exercise reasonable billing judgment,

Plaintiff did not account for the time Mr. Renda spent attending depositions that he

did not take, nor did Plaintiff account for any of Mr. Renda's time following

Defendants' motion for summary judgment, totaling to approximately 92 hours.  *Id*.

Similarly, the time billed by Mr. Morris and Ms. Pena was necessary and

reasonable given the duration of the case, the number of times the attorneys had to

prepare for trial, and the number of percipient witnesses in the case.  However, Ms.

Pena reduced the requested hours between Mr. Morris and herself in an effort to

exercise reasonable billing judgment.  For example, Plaintiff's counsel reduced

their time by approximately 50 combined hours of discussions with the clients and

approximately 70 combined hours of discussions amongst the legal team.  (Pena

Decl., ¶ 23.)  With regards to trial preparation, Mr. McMullen and Ms. Pena took a

"divide and conquer" approach.  (McMullen Decl., ¶ 18; Pena Decl., ¶ 25.)  Each

attorney was responsible for different pre-trial tasks and prepared and billed only

for the witnesses they examined.  *Id*.  As such, Plaintiff's Counsel made painstaking

effort to review the time of each attorney and eliminate unnecessary, unreasonable,

duplicative, or unproductive hours.  *Id*

Accordingly, as detailed in the attached declarations, the following hours were reasonably expended in pursuit of the results obtained[1]:

| Attorney | Number of Hours | Rate | Lodestar |
|---|---|---|---|
| Christopher Morris | 565.6 Hours | $1,150 | $650,440 |
| Danielle Pena | 1458.7 Hours | $800 | $1,166,960 |
| Joeseph McMullen | 428.2 Hours | $975 | $417,495 |
| Vincent Renda | 148 Hours | $475 | $70,300 |
| Leanna Pierce | 161.3 Hours | $150 | $24,195 |
| **Total** | **2,761.8 Hours** | | **$2,329,390** |

## V.

## A 1.5 MULTIPLIER IS JUSTIFIED

The lodestar may be adjusted in light of additional considerations. *Hensley v. Eckerhart*, 461 U.S. 424, 434 1983). In 2024, the Ninth Circuit upheld a district court's approval of an attorney fee enhancement in a Section 1983 case. *Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168 (9th Cir. 2024). In *Edmo,* the Ninth Circuit held, "After calculating the lodestar figure, the court proceeds to the second step: considering whether to enhance the award based on the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). These factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

---

[1] Pena Decl., ¶ 27.

MOTION FOR ATTORNEY FEES                16CV1004-BEN-SBC

1    The *Edmo* court acknowledged that "some" of the *Kerr* factors "are

2    presumed (or 'subsumed') in the lodestar consideration." *Edmo*, 97 F.4th 1165,

3    1168. Isolating the *Kerr* factors that are not accounted for by the lodestar analysis,

4    the focus is on 1) the novelty and difficulty of the question involved, 2) the

5    undesirability of the case, and 3) the extent that litigation precluded other

6    employment. *See Paulson v. City of San Diego*, 2007 U.S. Dist. LEXIS 43587, *13

7    (S.D. Cal. 2007).

8    Here, the novelty of the legal question involved weighs in favor of

9    enhancement. The Ninth Circuit's opinion in this case clarified the qualified

10   immunity analysis as it relates to inadequate medical care claims. After analyzing

11   prior Ninth Circuit opinions that clearly established what actions or inactions a jail

12   employee would have understood violated the Constitution, the Ninth Circuit

13   clarified the inquiry. Rejecting Defendants argument that qualified immunity

14   requires a prior adjudication of "fundamentally similar" or "materially similar"

15   facts, the Ninth Circuit set forth a rule of law that defines the clearly established

16   inquiry. Specifically, the Ninth Circuit clarified that the clearly established prong

17   requires a showing that "a prison official who is aware that an inmate is suffering

18   from a serious acute medical condition violates the Constitution when he stands

19   idly by rather than responding with reasonable diligence to treat the condition."

20   *Sandoval*, 985 F.3d 657, 680. This rule of law clarified the Ninth Circuit's position

21   on this issue which was a source of confusion among district courts prior to the

22   *Sandoval* opinion. Since this opinion was published, this specific rule of law has

23   been cited over fifty times in this circuit; and, generally speaking, the Ninth

24   Circuit's *Sandoval* opinion has been cited over 500 times, including in the 1st, 3rd,

25   4th, 6th, 8th, 10th, and 11th circuits. (Pena Decl., ¶ 45.)

26   The declaration of Mr. Renda speaks to the undesirability of this case.

27   (Renda Decl., ¶ 3.) According to Mr. Renda, he spoke and/or meet with numerous

28   civil rights attorneys, in San Diego and Los Angeles, who were not interested in

21

1    taking over the case due to the applicable legal standard at the time and the

2    difficulty of surviving qualified immunity based on the fact that Mr. Sandoval

3    ingested a large amount of methamphetamine and chose not to inform jail personnel

4    despite being directly asked on multiple occasions. *Id.*

5         Finally, because this case required a considerable amount of resources, and

6    spanned over ten years, both Morris Law Firm and PHG Law Group were

7    precluded from taking on other civil rights cases specifically because of the

8    resources tied-up by this case, both in time and money. (Pena Decl., ¶ 20.) Bearing

9    this financial risk, including time spent, over the last ten years has resulted in a

10   hardship that is not customary with typical civil rights litigation. *Id.*

11        In *Rodriguez v. County of L.A.*, 96 F. Supp. 3d 1012, 1025-1026 (2014), the

12   court awarded the plaintiff a 2.0 multiplayer "to compensate counsel for excellent

13   work and for the risk counsel assumed in litigating Plaintiffs' case." *Id.* "The

14   purpose of a fee enhancement, or multiplier, for contingent risk is to bring the

15   financial incentives for attorneys enforcing important constitutional rights... into

16   line with incentives... they are paid on a fee-for-services basis." *Id.* The *Rodriguez*

17   court found, "Plaintiffs' requested multiplier is justified based on the financial risk

18   Plaintiffs' counsel assumed in litigating this case on a contingency basis, the

19   difficulty of this case, and based on counsel's demonstrated skill." *Id.* at *30. The

20   court continued, "to litigate this case, counsel invested $3.4 million in services

21   rendered and incurred substantial costs, without any interim payments from the

22   Plaintiffs … Plaintiffs faced aggressive opposition. In working to secure Plaintiffs'

23   civil rights, counsel faced a serious risk of receiving no payment for their

24   performance of thousands of hours of work over four years. Counsel also risked

25   obtaining no reimbursement for their sizeable financial investment. This Court,

26   accordingly, finds that a multiplier is justified to fully compensate Plaintiffs'

27   counsel for litigating this difficult civil rights lawsuit."

28   / / /

Accordingly, based on the overall achievement, the novel legal issues, the
undesirability of the case, and the other, more desirable, civil rights cases that
Plaintiff's counsel was precluded from taking over the last ten years, Plaintiff
respectfully requests a 1.5 multiplier. If the Court applies the multiplier to
Plaintiff's fee request, the total fee award would be $3,494,085.

## VI.

### PLAINTIFF'S REQUESTED FEES SHOULD NOT BE REDUCED FOR NOT SUCCEEDING ON ALL CLAIMS

Plaintiff anticipates the County will argue the requested fees should be
reduced because Plaintiff did not succeed on the *Monell* theory or the claim against
Llamado.  The Court in *Hensley* held "the fee award should not be reduced simply
because the plaintiff failed to prevail on every contention raised in the lawsuit." !
*Hensley*, 461 U.S. at 435.  "A plaintiff who is unsuccessful at a stage of litigation
that was a necessary step to her ultimate victory is entitled to attorney's fees even
for the unsuccessful stage."  *Cabrales v. County of Los Angeles*, 935 F.2d 1050,
1053 (9th Cir. 1991); *see also Hensley*, 461 U.S. at 440 ("A plaintiff who has won
substantial relief should not have attorney's fee reduced simply because the district
court did not adopt each contention raised.")

The *Hensley* Court established a two-part analysis for determining attorney's
fees where plaintiff has achieved limited success.  461 U.S. at 434-35.  In the first
step, the Court must consider whether the "plaintiff[s] fail[ed] to prevail on claims
that were unrelated to the claims on which [they] succeeded."  *Sorenson v. Mink*,
239 F.3d 1140, 1147 (9th Cir. 2001).  Claims are unrelated if they are "entirely
distinct and separate from the claims on which the plaintiff prevailed."  *Id.*  If a
plaintiff's claims for relief "involve a common core of facts," the lawsuit is not
"viewed as a series of discrete claims," even if the claims contain differing legal
theories.  *Id.*  The second step is to "consider whether the plaintiff achieve[d] a
level of success that makes the hours reasonably expended a satisfactory basis for

1    making a fee award." *Id.* In making this assessment a court focuses "on the

2    significance of the overall relief obtained . . . in relation to the hours reasonably

3    expended on the litigation." *Id. See also McCown v. City of Fontana*, 565 F.3d

4    1097, 1103 (9th Cir. 2008); *Schwarz v. Secretary of Health & Human Services*, 73

5    F.3d 895, 901-902 (9th Cir. 1995); *Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684

6    (N.D. Cal.1974).

7          This Court recently rejected a similar argument made in *Marroquin v.*

8    *Unidentified LAPD Officer*, No. 221CV07607RGKJEM, 2023 WL 5505061, at *4

9    (C.D. Cal. Apr. 24, 2023). In *Marroquin*, Defendants argued for a fee reduction

10   because the plaintiff only prevailed on two of eight claims. This Court rejected the

11   argument finding the unsuccessful and successful claims "arose from the same

12   incident" and "were not entirely distinct and separate for attorneys' fee purposes."

13   *Id.* at *4.

14         In this case, Plaintiff's claim against Llamado and the MOC1 *Monell* claim

15   are entirely related to the successful claims against DeGuzman and Harris.

16   Accordingly, the requested hours cannot be divided or distinguished on a claim-by-

17   claim basis as the claims are identical in work-up and preparation for trial,

18   especially because the evidence to support the *Monell* claim was obtained by

19   litigating the individual claims. (Pena Decl., ¶ 26.) As such, Plaintiff should be

20   awarded reasonable attorney's fees—without reduction—because Plaintiff

21   succeeded on the most significant claims against the two medical providers that

22   could have saved Mr. Sandoval's life.

23                                 **VII.**

24   **PLAINTIFFS' LITIGATION EXPENSES, WHICH WERE REASONABLE**

25                **AND NECESSARY, ARE FULLY RECOVERABLE**

26         Under 42 U.S.C. Section 1988, litigation expenses that are "necessary to the

27   effective and successful representation of the plaintiffs' interests. . . are authorized

28   for inclusion in a reasonable attorneys' fee award." *Keith v. Volpe*, 643 F.Supp. 37,

                                   24

43-44 (C.D. Cal. 1985), aff'd. 833 F.2d 850 (9th Cir. 1987).  Because it was Congress' intention to "allow plaintiffs to recover the full costs of litigation," *Thornberry v. Delta Airlines, Inc*., 676 F.2d 1240, 1245 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983), a "reasonable attorney's fee" under Section 1988 necessarily includes compensation for the various "out-of-pocket expenses incurred by an attorney which would normally be charged to a fee-paying client." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216, fn. 7 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987).

The litigation expenses claimed by Plaintiff as part of this motion amount to a total of $23,239.65.  (Pena Decl., ¶ 31.)  Per code, these costs cannot be recovered in Plaintiff's Application to Tax Costs.  However, they were reasonably expended and are recoverable under the law.  In addition, Plaintiff also requests $15,755.5 in the Application to Tax Costs, filed concurrently herewith.  (Exhibit 2.)  Accordingly, the total amount of reasonable costs and expenses in this case amount to $38,995.15. All of requested costs were reasonable and necessary in the litigation of this case.  (Pena Decl., ¶ 31.)

## VIII.

## CONCLUSION

The requested billing rate is appropriate per supporting declarations, the *Enyart* fee award, and other fee awards ordered in this District.  The hours expended were reasonable and necessary to achieve the obtained result.  Thus, the total amount claimed is reasonable in light of the overall result and the manner in which the trial was conducted.  The ligation expenses are fully recoverable as well as reasonable. If this Court sees fit, based on the circumstances of this case over the past decade, Plaintiff's counsel also seek a 1.5 multiplier.

/ / /

/ / /

/ / /

1     It is respectfully submitted the Court should therefore award attorney's fees

2   and expenses as follows:

3        Attorney's Fees                    $2,329,390  ($3,494,085 with 1.5 multiplier.)

4        Litigation Expenses               $38,995.15

5

6                                           **PHG Law Group**

7
    Dated:  April 4, 2025                   s/ *Danielle R. Pena*
8                                           Danielle R. Pena, Esq.
                                            Attorneys for Plaintiff
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ATTORNEY FEES                              16CV1004-BEN-SBC