# EXHIBIT 6

Browne Greene, SBN 38441
GREENE BROILLET & WHEELER, LLP
222 N. Pacific Coast Highway, Suite 2100
P.O. Box 955
El Segundo, California 90245
Telephone: (310) 576-1200
Facsimile: (310) 576-1220
Email:  bgreene@gbw.law

Daniel K. Balaban, SBN 243652
BALABAN & SPIELBERGER, LLP
11999 San Vicente Blvd., Suite 345
Los Angeles, California 90049
Telephone:  (424) 832-7677
Facsimile:  (424) 832-7702
Email:  daniel@dbaslaw.com

Joseph G. Dicks, SBN 127362
Linda G. Workman, SBN 128621
DICKS & WORKMAN ATTORNEYS AT LAW, APC
7825 Fay Avenue, Suite 120
La Jolla, California 92037
Telephone: (619) 685-6800
Facsimile: (619) 557-2735
Email:  jdicks@dicks-workmanlaw.com; lworkman@dicks-workmanlaw.com

Holly N. Boyer (SBN 221788)
Shea S. Murphy (SBN 255554)
ESNER, CHANG & BOYER
234 East Colorado Boulevard, Suite 750
Pasadena, California   91101
Telephone: (626) 535-9860
Facsimile: (626) 535-9859
Email:  hboyer@ecbappeal.com; smurphy@ecbappeal.com

Attorneys for MICKAIL MYLES, Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MICKAIL MYLES, an individual,

      Plaintiff,

v.

COUNTY OF SAN DIEGO, by and through the SAN DIEGO COUNTY SHERIFF'S DEPARTMENT, a public entity; and DEPUTY J. BANKS, an individual,

      Defendants.

Case No.  15-cv-1985-JAH (BLM)

**DECLARATION OF CAROL A. SOBEL IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AND FOR FEES AND COSTS UNDER 42 U.S.C. §1988 AND CALIFORNIA CIVIL CODE §52.1(i)**

Judge:    Hon. John A. Houston
Crtrm:    13B

Complaint Filed:  September 4, 2015
Trial:        September 12, 2022

## <u>DECLARATION OF CAROL A. SOBEL</u>

I, Carol A. Sobel, declare as follows:

1.  I am an attorney duly licensed to practice law before all courts in the State of California and the federal courts listed in my attached resumé at Exhibit 1.  I am not counsel in the within action.  I file  in  support  of Plaintiff's  motion  for attorney fees and the reasonableness of the hourly rates sought.  The declaration is based on facts within my personal  knowledge and, if called to testify to those facts, I could and would do so competently under penalty of perjury.

2.  I graduated from law school and was admitted to practice in 1978. Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997, primarily engaged in complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit 1 is my résumé.

3.  I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) recipient for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono

1   work and was also named by the Daily Journal as one of the Top 100 Most

2   Influential Lawyers in California. In 2013 and again in 2014, I was named one

3   of the top 50 women lawyers in Los Angeles. I am named as a Superlawyer in

4   the area of First Amendment or civil rights litigation consistently nearly two

5   decades. Additional recognition of my legal work is in my attached resumé.

6      4. For the six years prior to 1997, I was a Senior Staff Counsel at the ACLU

7   Foundation of Southern California. During that time period, I was responsible

8   for preparing many of the fee motions in cases where the ACLU represented the

9   prevailing party. Because the ACLU does not bill clients on an hourly basis for

10  its services, I had to obtain information to establish reasonable market rates for

11  the ACLU lawyers. It was my practice to obtain current billing rates for lawyers

12  of comparable skill and experience at several large commercial firms throughout

13  the City. I did this on an annual basis, contacting partners familiar with the

14  ACLU lawyers in question so that they could assess the comparable skill levels

15  of attorneys at their firms to establish ACLU billing rates. At the time that I

16  consulted these individuals, I was aware that the partners had been personally

17  involved in pro bono litigation with the ACLU and worked directly with the

18  ACLU lawyers for whom I sought to establish market billing rates, so they were

19  able to assess the skill and experience of the ACLU lawyers.

20     5. As a sole practitioner, I assess a reasonable market rate by comparison to

21  lawyers of comparable skill and experience at other firms in the Los Angeles

22  area, as when I was employed by the ACLU. Since entering private practice, I

23  continue to survey firms each year to obtain relevant comparisons for billing

24  rates. I generally begin this process the first time in each year I prepare a fee

25  motion or enter into settlement discussions regarding fees. As part of my survey,

26  I make a point to obtain information concerning rates for attorneys in larger law

27  firms engaged in complex litigation, as well as boutique civil rights law firms.

28     6. I also review attorney fee applications and awards in other cases than my

---

DECLARATION OF CAROL A. SOBEL            -3-            *Myles v. County of San Diego, et al.*
                                                       Case No. 15-cv-1985-JAH (BLM)

own.  Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing the range of civil rights law, as well as court awards made to the ACLU, Disability Rights Legal Center ("DRLC"), Asian Americans Advancing Justice, the Western Center on Law and Poverty ("WCLP"), MALDEF and other public interest groups in Los Angeles.  I do this to determine what is being sought and approved as market rates for lawyers at these firms.  Since many cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I have access to those billing rates as well.

7.  When I become aware of a case where statutory fees are sought, I obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw. Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these commercial firms also serve as pro bono counsel on occasion.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.

8.  My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates in Los Angeles.  For example, in *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of the application of attorneys from the ACLU for fees under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (CD CA 2008), granting fees pursuant to the IDEA statute, 20 U.S.C. §1415(i)(3)(c), the Court cited to my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (CD CA 2007), Judge Pregerson awarded fees to a 1975 graduate at $675 an hour, specifically citing to my declaration and that of Barry Litt to support the

requested rates.  *Id.* at pp. 8-9 and n.4.  Additional cases in which my

declarations have been cited favorably include, among others, *Charlebois v.*

*Angels Baseball LP*, SACV 10-0853 DOC (May 30, 2012); *Orantes-Hernandez*

*v. Holder*, 713 F.Supp.2d 29,963-964(C.D.Cal.2010); *Hiken v. DOD*, 2013

U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d

1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696

(C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS

138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan*

*v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. March 3, 2014);

*Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23,

2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May

23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. WA

02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal.

January 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding

fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance

of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS

26601 (9th Cir. Dec. 28, 2012).  The Ninth Circuit recently cited to my

declaration in approving EAJA rates for the ACLU and other immigration

attorneys in *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892

F.3d 985 (9th Cir. 2018).  In *Jochimsen*, a unanimous court held that I was

qualified as an expert on reasonable market rates.

9. I litigated statutory fee issues at the appellate level in several cases,

including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal.4th 604 (2004),

the companion case to *Graham v. Daimler-Chrysler*, 34 Cal.4th 533 (2004),

affirming the "catalyst" fee doctrine in California and upholding almost $2

million in fees in a multi-plaintiff sexual discrimination/harassment lawsuit

on behalf of female employees of the Los Angeles Police Department.  I was

also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (2014),

1    establishing entitlement to fees as a "prevailing party" based on the Circuit's
2    necessary approval of a settlement that was conditioned on vacatur of the
3    panel decision.

4        10.  I provide training on attorney fees best practices for civil rights and
5    public interest firms, including the Legal Aid Foundation of Los Angeles and
6    the ACLU.  I also have done CLEs on attorney fees for the National Lawyers
7    Guild and the National Police Accountability Project.

8        11.  I have considerable experience reviewing and analyzing billing
9    records in my own cases and in cases for which I provide a supporting
10   declaration on the reasonableness of rates or hours.  Many of these cases
11   involve multiple attorneys and law offices.  In those instances, I am usually
12   the attorney who conducts a review of all of the fee records and exercises
13   billing judgment to eliminate any impermissible hours.  This includes,
14   among other issues, eliminating clerical tasks, unnecessarily duplicative
15   items, improperly billed items and vague items.  For example, in the *Tipton-*
16   *Whittingham* case cited above, it was my responsibility to review the fee
17   records covering six years of hours for attorneys from three firms: the
18   ACLU, the Western Regional Office of the NAACP Legal Defense Fund,
19   and Litt & Associates.  The unadorned lodestar in *Tipton* 20 years ago was
20   approximately $1,900,000.

21       12.  In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*,
22   involving a police assault on a lawful demonstration in MacArthur Park on May
23   Day, 2007, I performed a billing judgment on the fee records for all attorneys
24   and support staff in the case.   Because the case was a hybrid class action, with
25   both 300 individual plaintiffs and a residual class of several thousand persons,
26   the legal team was sizable.  The fee approved in the case was $3,713,000.

27       13.  In all the fee declarations that I prepare, I apply my understanding of the
28   U.S. Supreme Court decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that

"rates charged in private representations may afford relevant comparisons." *Id.*
at 895 fn. 11.  I understand this to mean that fees for civil rights lawyers should
approximate the rates charged by attorneys of comparable skill, experience and
reputation in the relevant legal market, who are engaged in similarly complex
litigation, regardless of whether the attorneys work for a non-profit, represent
individuals on contingency, serve as in-house counsel, or charge a minimal rate
with the possibility of receiving a market rate award if successful.  *See,*
*Nadarajah v Holder,* 569 F3d at 910.  This principle was also affirmed in *PLCM*
*Group, Inc. v. Drexler*, 22 Cal.4th 1084 (Cal. 2000).

14.  I apply several additional principles to assess market rates.  First, when
available, I look to rates awarded to the attorney in previous cases as I
understand that such awards are viewed as strong evidence of reasonable market
rates.  *See Chaudhry v. City of Los Angeles*, 751 F3d 1096, 1111 (9th Cir. 2014);
*U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho*
*v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Also, past decisions
where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing
on what the market rate is, because the lawyer and his clients are part of the
market." *Carson v. Billings Police Dept.*, 470 F. 3d 889, 892 (9th Cir. 2008).

15.  Next, I look to billing rates by attorneys engaged in similarly complex
litigation to set rates for civil rights attorneys who do not bill on an hourly basis.
*See Blum*, 465 U.S. at 895.  *Blum* notes that most civil rights attorneys, including
at non-profits, work on a contingency basis.  *See Camacho v. Bridgeport Fin.,*
*Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other
attorneys regarding prevailing rates in the relevant market and rates in other
cases). I understand that the market rate comparison "extends to all attorneys in
the relevant community engaged in equally complex Federal litigation, no matter
the subject matter." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455
(9th Cir. 2010) (internal quotation omitted).

16.   When the specific rate evidence identified in the preceding paragraph is available, I do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis.  In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the attorneys included in the survey and often no indication of the relevant legal market.  *See e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where lower court relied on a national survey rather than local rates).

17.   I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers as they generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees.  *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market). *See also,* Pearl, *California Attorney Fee Awards*, CEB 2012, §9.109 (2012).

18.   Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F3d 1041, 1046 (9th Cir. 2009).

19.   I estimate that I review nearly 100 fee motions, fee awards, and supporting declarations in the course of a year.  To prepare this declaration, I searched in various legal databases for fees awarded in San Diego in similarly complex cases.  I subscribe to several websites that report legal news.  I obtain copies of motions, supporting declarations and fee awards from public sources, including the state Superior Court websites and PACER.

20.   To support my opinion on the reasonableness of the fees sought by this motion, I attach fee awards and declarations in cases primarily in the San Diego

legal market. I included two awards to the Robbins Geller firm, one from the district court in San Diego and one from the Los Angeles Superior Court. The customary billing rates used by the firm are largely the same for each market.

21. Each exhibit to my declaration is a true and correct copy of the document available in the Court's files. Some are now several years old and illustrate the reasonableness of past rates but do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original). To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles pre-pandemic. http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category). Since 2021, I have that raised that increase to 5 percent.

22. In my experience, billing rates in major metropolitan areas have increased annually at more than the cost-of-living rate and to reflect both increased experience and increases in the base rates. For example, in *Charlebois v. Angels Baseball, LP*, 2012 U.S. Dist. LEXIS 91069, cv 10-0853 DOC (C.D. Cal. May 30, 2012), Judge Carter rejected the defense's argument that the rate then sought by attorney V. James DeSimone should be limited to what he had received in prior years. "[C]ourts routinely recognize that fee rates increase over time based on a variety of factors." 2012 U.S. Dist. LEXIS 91069, *24. In *Parker v. Vulcan Materials Co. Long Term Disability Plan*, No. EDCV 07-1512 ABC (OPx), 2012 WL 843623, *7 (C.D. Cal. Feb. 16, 2012), the Court approved an increase of 10 percent in one year, noting "[i]t is common practice for attorneys to periodically increase their rates for various reasons, such as to account for expertise gained over time, or to keep up with the increasing cost of maintaining a practice."

23. I have not filed a contested fee motion in several years other than to seek Court approval of the reasonableness of fees in class-action settlements, or to settle non-class cases. The last such application I filed applied a 2019 rate of $1,000 an hour. In May 2019, this was the rate I used to calculate my fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.). In the same year, this rate was applied for the lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS. Prior to these 2019 cases, I resolved attorney fees in several matters applying rates of $900 an hour up to $975. The last court-awarded fee I received in a contested fee motion was from the Ninth Circuit, approving my 2014 rate of $875 an hour in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015). My current rate is $1125 an hour, which is an increase of approximately 3.2 percent annually from my last court-approved rate of $875 for 2014 in *CPR for Skid Row*.

24. I am informed that Plaintiff's counsel seek fees at the following 2022 rates:

| Attorney | Firm | Experience | Rate |
|---|---|---|---|
| Browne Greene | Greene, Broillet | 62 | $1,150 |
| Daniel Balaban | Balaban & Spielberger | 16 | $ 900 |
| Holly Boyer | Esner, Chang & Boyer | 20 | $ 800 |
| Shea Murphy | Esner, Chang & Boyer | 15 | $ 700 |
| Joseph Dicks | Dicks & Workman | 35 | $1,000 |
| Linda Workman | Dicks & Workman | 35 | $1,000 |

25. Attached to my declaration at Exhibit 2 is the order approving fees for attorneys at Gibson Dunn & Crutcher in *Herring Networks, Inc. v. Maddow*, Case No. 19-cv-1713 BAS-AHG (SD CA 2021). Gibson Dunn represented the prevailing defendant in an anti-SLAPP lawsuit brought pursuant to California Code of Civil Procedure §425.16. I downloaded a copy of the Court's Order from PACER. The Court reduced the customary billing rates sought by Gibson Dunn

1  based on their rates in the Central District of California by approximately 10

2  percent to reflect the slightly lower rates in the Southern District.

3      26. Even with that reduction, the approved rates for Theodore Boutrous and

4  Scott Edelman support the rates sought for Browne Greene, Joe Dicks and Linda

5  Workman.  Based on my own involvement in the Los Angeles legal market, I am

6  aware that Mr. Greene has a reputation as a highly skilled lawyer.  He has nearly

7  twice the experience of the Gibson Dunn attorneys.  Mr. Dicks and Ms. Workman

8  have two years more experience in 2022 than Mr. Boutrous had in 2020 and one

9  year less than Mr. Edelman had in 2020.

10     27. Although I did not know Mr. Dicks or Ms. Workman prior to a few weeks

11  ago, both my review of the case docket and some of the briefs, as well as

12  discussions with colleagues at Iredale & Yoo, I understand that they, too, enjoy a

13  reputation as highly skilled and experienced attorneys.  In addition to the Gibson,

14  Dunn rates set out in Exhibit 2, the 2022 rate of $1,000 an hour they seek is

15  supported by the 2019 approved rates for attorneys at Robbins Geller, including

16  Spencer Burkholz ($1,150), Laurie Largent ($1,040) and David Walton ($1,030).

17  Largent Declaration Ex. 3.  I reviewed the information on the firm's website for

18  each attorney.  Spencer Burkholz is listed on the firm's website as a 1989 law

19  graduate.  Laurie Largent is listed on the firm's website as a 1988 law graduate

20  and David Walton is listed as a 1993 law graduate.  By comparison, both Mr.

21  Dicks and Ms. Workman were admitted in 1987.  In 2022, they have a minimum

22  of four years of additional experience than the Robbins Geller attorneys had in

23  2019.  The 2019 Robbins Geller award was in the Los Angeles legal market;

24  however, Ms. Largent's declaration avers that these are the firm's customary

25  billing rates, without regard to the specific legal market.  Ex. 3, ¶ 4.  As

26  demonstrated by the 2015 fee award to attorneys at Robbins Geller in *Makaeff v.*

27  *Trump University, Case No.* 10cv0940 GPC (WVG), 2015 U.S. Dist. LEXIS

28  46749, at *1 (S.D. Cal. Apr. 9, 2015), when adjusted for inflation, the San Diego

rates for attorneys at the firm of comparable experience are comparable to the rates approved in Los Angeles in 2019. A copy of the decision awarding fees in *Makaeff* is attached at Exhibit 4.

28. As an additional example of the reasonableness of the rates requested for Mr. Dicks and Ms. Workman, I include at Exhibit 5 the order approving the 2014 rate of $795 an hour for Lisa Ferri in an intellectual property case, *Zest IP Holdings, LLC v. Implant Direct MFG., LLC*, Case No. 10-CV-0541-GPC (WVG), 2014 U.S. Dist. LEXIS 167563, 2014 WL 6851612 (S.D. Ca. 2014). I reviewed Ms. Ferri's listings on her LinkedIn page and, on that basis, believe that she is a 1987 law graduate. In 2014, she had 27 years of experience, eight years less than Mr. Dicks and Ms. Workman have now. With eight years additional experience and eight more billing years, Mr. Workman's and Ms. Dicks' rate is only 20 percent above Ms. Ferri's approved 2014 rate.

29. Mr. Balaban's requested rate of $900 an hour is supported by the approved rate of $720 an hour in 2020 for Nathaniel Bach at Gibson Dunn (Ex. 2) and $800 an hour for Matthew Alpert of Robbins Geller in 2019. Ex. 3. Messrs. Bach and Alpert each had two years' less experience at the time of these fee awards than Mr. Balaban has now. Applying an increase of 3 percent to 5 percent a year for the last few years, the comparable 2022 rate for Mr. Bach would be approximately $860 an hour, raising only the base rate with no adjustment for step increases based on expanded skills. With the same approach, the comparable 2022 rate for Mr. Alpert would be approximately $935 an hour.

30. Mr. Balaban's requested rate is also supported by the rate approved in 2015 for Rachel Jensen in the Trump University anti-SLAPP litigation, when Ms. Jensen had 15 years of experience. Ex. 4. I calculated the equivalent 2022 rate by first applying a modest 3% increase to account for one more year of experience Mr. Balaban has now as compared to Ms. Jensen's experience in 2015. That raised the base amount to just under $680 an hour. I then applied a three percent

CPI increase for 2015 through 2020 and a five percent increase for 2021 and 2022, to reflect the higher inflation rate. By this method, the comparable 2022 rate is $870 an hour. The rate requested for Mr. Balaban falls right in the middle of the rates approved for Bach, Jensen and Alpert.

31. In *Zest IP Holdings*, the district court also approved the 2014 rate of $725 an hour for John Molenda. 2014 U.S. Dist. LEXIS 167563, *13 [Ex. 5, p.10]. I reviewed Mr. Molenda's listing on the website for his current firm, Steptoe & Johnson, and on that basis believe that he is a 1997 law graduate. In 2014, Mr. Molenda had 17 years of experience as an IP attorney, one more year than Mr. Balaban has now. Using the same annual CPI increases of 3 and 5 percent, the equivalent rate for an attorney with 17 years of experience would now be approximately $926 an hour. To extrapolate a current rate, I reduced the $725 an hour by three percent to adjust for the one year less of experience. I then applied a 3% increase for years 2015-2020 and a 5 percent increase for years 2021 and 2022. Mr. Balaban's requested rate is less than three percent below the adjusted 2022 rate for Mr. Molenda.

32. As one more point of comparison, Mr. Balaban's requested rate is below the equivalent current rate for Danielle Myers, awarded a rate of $800 an hour in 2019 when she had 11 years of experience, five years less than Mr. Balaban has now. Ex. 3. Under the same analysis of increases between three and five percent a year, Ms. Myers' equivalent 2022 rate would be approximately $908 an hour. This does not include the five additional years of experience Mr. Balaban has now.

33. The two remaining attorneys, Holly Boyer and Shea Murphy, are known to me by reputation as highly skilled appellate lawyers. The rates they seek, $800 and $700, respectively, are considerably lower than the rates sought for the other attorneys in this action. Ms. Boyer has 20 years of experience and Mr. Murphy has 15 years of experience. Their rates are within the market range for attorneys of comparable skill and experience identified in the exhibits to my declaration.

For example, Mr. Murphy's 2022 rate is the same as the 2019 rate for Danielle Myers with 11 years of experience [Ex. 3] and $20 below the 2020 rate for Nathaniel Bach, then with 14 years of experience. Ex. 2.

34. The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Firm | Experience | Year | Rate |
|---|---|---|---|---|---|
| 2 | Theodore Boutrous | Gibson Dunn | 33 | 2020 | $1,150 |
| 2 | Scott Edelman | Gibson Dunn | 36 | 2020 | $1,050 |
| 2 | Nathaniel Bach | Gibson Dunn | 14 | 2020 | $  720 |
| 3 | Matthew Alpert | Robbins Geller | 14 | 2019 | $  800 |
| 3 | Spencer Burkholz | Robbins Geller | 30 | 2019 | $1,150 |
| 3 | Joseph Daley | Robbins Geller | 23 | 2019 | $  925 |
| 3 | Robert Hennsler | Robbins Geller | 18 | 2019 | $  850 |
| 3 | Laurie Largent | Robbins Geller | 31 | 2019 | $1,040 |
| 3 | David Walton | Robbins Geller | 26 | 2019 | $1,030 |
| 3 | Danielle Myers | Robbins Geller | 11 | 2019 | $  800 |
| 3 | Tricia McCormick | Robbins Geller | 21 | 2019 | $  880 |
| 4 | Eric Isaacson | Robbins Geller | 30 | 2015 | $  825 |
| 4 | Rachel Jensen | Robbins Geller | 15 | 2015 | $  660 |
| 4 | Amber Eck | Zeldes…Eck | 20 | 2015 | $  690 |
| 5 | Lisa Ferri | Mayer Brown | 27 | 2014 | $  895 |
| 5 | John Molenda | Mayer Brown | 16 | 2014 | $  725 |

35. Based on the foregoing, it is my opinion that the requested rates are reasonable in the San Diego market for attorneys of comparable skill, experience, and reputation. Executed this 8th day of November 2022 at Los Angeles, California.

_Carol A. Sobel_

Carol A. Sobel



# EXHIBIT 1

# CAROL A. SOBEL

725 Arizona Avenue• Suite 300 • Santa Monica, CA 90401 •
Tel. 310 393-3055 • Email carolsobellaw@gmail.com

## Employment:

LAW OFFICE OF CAROL A. SOBEL                                    APRIL, 1997 TO PRESENT
Solo civil rights law firm.

SENIOR STAFF COUNSEL                                           1990 TO APRIL, 1997
*ACLU Foundation of Southern California*

Responsible for conducting civil rights and civil liberties litigation in state and federal courts in California;
supervise litigation by ACLU volunteer counsel and other ACLU legal staff.

STAFF ATTORNEY                                                1985 TO 1990
*ACLU Foundation of Southern Califonia*

Civil liberties litigation, primarily in the areas of Establishment Clause and Free Exercise violations, as well as other
First Amendment rights.

ASSOCIATE DIRECTOR                                            1979 TO 1985
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Under the direction of the Executive Director, responsible for administration of two non-profit organizations,
including working with Boards of Directors on development of policy on civil liberties issues.  Engaged in litigation
and assisted Legal Director in coordination and supervision of pro bono attorneys.

DEVELOPMENT DIRECTOR                                          1977 TO 1979
*ACLU Foundation of Southern California*
*American Civil Liberties Union of Southern California*

Responsible for conducting a variety of fundraising efforts to meet a million-dollar plus annual budget for a
501(c)(3) and a 501(c)(4).

## Admitted to Practice:

California Supreme Court                                           November, 1978

United States Supreme Court                                       September, 1991

Ninth Circuit Court of Appeals                                    August, 1986

U.S.D.C. Central District of California                           February, 1986

U.S.D.C. Eastern District of California                           June, 1990

## Litigation Experience:

### Federal courts:   (Partial listing of published opinions and significant cases)

*CPR for SKID ROW,*
779 F.3d 1098 (9th Cir. 2015)
Partial reversal of summary judgment in favor of the Defendant and holding that California Penal Code §403
could not lawfully be applied to criminalize the expressive activity of the Plaintiffs for protesting on Skid
Row.
(Lead counsel and argued on appeal)

*Desertrain v. City of Los Angeles*
754 F.3d 1114 (9th Cir. 2014)
Reversal of summary judgment in favor of the Defendants and holding that Los Angeles Municipal Code
§85.02, prohibiting parking a vehicle on public streets or parking lots any time of day or night if a person
"lives" in the vehicle, is unconstitutionally vague.
(Lead counsel and argued on appeal)

*Lavan v. City of Los Angeles*
693 F.3d 1022 (9th Cir. 2012), *affirming* grant of preliminary injunction 797 F.Supp.2d 1005 (C.D. Cal.
2011)
Preliminary injunction barring City from confiscating and immediately destroying the property of homeless
individuals on Los Angeles' Skid Row.
(Lead Counsel)

*Long Beach Area Peace Network v. City of Long Beach*
522 F.3d 1010 (9th Cir. 2008), as amended July 24, 2009
Upholding and reversing in part on appeal a decision of the district court granting Plaintiffs' request for a
preliminary injunction to enjoin a municipal parade ordinance that included vague permit standards setting, *inter
alia*, advance-notice requirements  police charges based on the past unlawful conduct of third parties without
adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.
(Lead counsel)

*Fitzgerald v. City of Los Angeles*
485 F.Supp.2d 1137 (CD CA 2008)
Extending injunction against police sweeps of homeless persons on Los Angeles' Skid Row on the grounds of
searching for parole and probation violations.  See below for discussion of permanent injunction in 2003.
(Co-Counsel)

*Multi-Ethnic Immigrant Worker Organizing Network (MIWON) v. City of Los Angeles*
246 F.R.D. 621 (C.D. Cal. 2007)
Order granting class certification in challenge to police assault on a lawful assembly of immigrant rights
supporters by the Los Angeles Police Department on May Day, 2007.
(Class Co-Counsel)

*Edward Jones, et al., v. City of Los Angeles*,
444 F.3d 1118 (9th Cir. 2006), vacated pursuant to settlement 505 F.3d 1006 (2007)
Challenge to City of Los Angeles Municipal Code §41.18(d), prohibiting sitting, lying or sleeping on any street
or sidewalk anywhere in the City at any time of day or night.  Plaintiffs, all of whom are homeless persons,
brought an 8th Amendment as-applied challenge to their arrests and citations for violating the ordinance when
their was no available adequate shelter.
(Co-counsel)

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*
316 F.3d 1059 (9thCir. 2003)
Challenge by City of Los Angeles to interim fee award granting plaintiffs' fees as "catalysts" under state civil
rights fee shifting statutes.  Following oral argument, the Ninth Circuit certified issue of continued availability
of "catalyst" fees under California law after adverse decision by the United States Supreme Court rejecting
catalyst fee doctrine under federal law absent express legislative authorization.  Certified for hearing before the
California Supreme Court and ultimately upheld the catalyst fee doctrine under California law.
(Co-counsel; argued in Ninth Circuit)

*Fitzgerald v. City of Los Angeles*
2003 U.S. Dist. LEXIS 27382 (CD CA 2003)
Permanent injunction enjoining Fourth Amendment violations by the Los Angeles Police Department (LAPD).
The injunction prevents the LAPD  from engaging in stops of homeless persons for parole and probation sweeps
on Skid Row without reasonable suspicion to believe that specific individuals are on parole or probation and
subject to a search condition, or that the individual has engaged in, or is about to commit a crime.
(Lead counsel)

*Khademi v. South Orange County Community College District*
194 F.Supp.2d 1011 (C.D. CA 2002)
First Amendment facial challenge invalidating college policy  regulating time, place and manner of student
speech on campus.
(Lead counsel)

*Mardi Gras of San Luis Obispo v. City of San Luis Obispo*
189 F. Supp.2d 1018 (C.D. Cal. 2002)
Preliminary injunction to enjoin a municipal parade ordinance that required lengthy advance-notice requirement
and permitted high insurance and police charges based on the past unlawful conduct of third parties without
adequate standards to limit the discretion of public officials charged with implementing the parade ordinance.

*Bauer v. Sampson*
261 F.3d 775 (9th Cir. 2001)
First Amendment challenge to disciplinary action against college professor for publication of an alternative newsletter criticizing elected and appointed public officials and disclosing wrongdoing by college officials and personnel. The college sought to discipline the professor for violating the district's policies on discrimination and work-place violence. The polices were declared unconstitutional as applied to the professor's speech.

*H.C. v. Koppel*
203 F.3d 610 (9th Cir. 2000)
Dismissal of federal civil rights action filed in federal court against state court judge and appointed counsel for minor in family law matter. Circuit held that Younger Abstention applied and non-custodial parent had adequate state court remedy.

*Justin v. City of Los Angeles*
2000 U.S. Dist. LEXIS (CD Cal. 2000)
Class action to enjoin police sweeps of homeless population on Los Angeles' Skid Row. Permanent injunction stipulated to in settlement following certification of the injunctive relief class.
(Lead counsel)

*Los Angeles Alliance for Survival, et al. v. City of Los Angeles*
987 F. Supp. 819 (1997); 157 F.3d 1162 (9th Cir. 1998); on certification to the California Supreme Court, 22 Cal.4th 352 (2000); 224 F.3d 1076 (9th Cir. 2000)
Injunction issued in challenge to municipal ordinance barring so-called "aggressive solicitation" in broad areas of traditional public fora. Preliminary injunction entered by district court based on California Constitution. On appeal, the Ninth Circuit certified the California Constitution question to the California Supreme Court. Following decision by the California Supreme Court, the Ninth Circuit upheld the original injunction.
(Co-counsel)

*Service Employees International Union 660 v. City of Los Angeles*
114 F. Supp.2d 966 (C.D. Cal. 2000)
Challenge to the "no-protest zone" at the Democratic National Convention in Los Angeles in 2000, as well as a preliminary injunction to enjoin the City of Los Angeles parade ordinance.
(Co-counsel)

*United States v. Wunsch*
54 F.3d 579 (9th Cir. 1995);84 F.3d 1110 (9th Cir. 1996) (reargument)
First Amendment challenge to discipline of male attorney for "gender bias" in sending note to female Asst. U.S. Attorney after she successfully moved to disqualify him as defense counsel in a criminal case. Ninth Circuit invalidated the penalty and declared unconstitutional California's "offensive personality" regulation on attorneys' professional conduct. (Argued and briefed on appeal).

*American Jewish Congress v. City of Beverly Hills*
65 F.3d 1539 (9th Cir. 1995);90 F.3d 379 (9th Cir. 1996) (en banc)
First Amendment challenge to display of a religious symbol on public property and to permit scheme for expressive activities in public fora in the City of Beverly Hills. The en banc panel held the permit scheme unconstitutional and found that a preference had occurred for the display of a particular religious symbol. The en banc decision was unanimous. (Argued and briefed on appeal)

*Baca v. Moreno Valley Unified School District*
936 F. Supp. 719 (C.D. Cal. 1996)
First Amendment challenge to school board regulations preventing speakers from making disparaging remarks about public employees during public board meetings.

*Wallin v. City of Los Angeles*,
1194 U.S. App. LEXIS 2343 (9th Cir. 2004)

Circuit dismissed appeal of defendant City and law enforcement officers from denial of qualified immunity. Appellee, a female officer with the Los Angeles Police Department, alleged that appellants violated her right to equal protection, due process and right to petition the government because they violated LAPD confidentiality regulations and delayed the investigation into her allegations of co-worker rape.

(Lead counsel)

*National Abortion Federation v. Operation Rescue*
8 F.3d 680 (9th Cir. 1993)
Class-action state-wide injunction against blockades of women's health care clinics by anti-abortion activists. First case decided under the "frustrate and hinder" clause of 42 U.S.C. § 1985(3), the 1871 Ku Klux Klan Act. Appeals court held cause of action under "frustrate and hinder" clause was properly plead and reversed 12(b)(6) ruling on that claim.

(Co-lead counsel throughout; argued on appeal)

*Hewitt v. Joyner*

940 F.2d 1561 (9th Cir. 1991)

Establishment Clause challenge to Christian theme park, Desert Christ Park, owned and operated by San Bernardino County. Ninth Circuit held County ownership and operation of the park violated the Establishment Clause.

(Lead counsel throughout litigation; argued on appeal).

*Standing Deer v. Carlson*

831 F.2d 1525 (9th Cir. 1986)

First Amendment challenge for Native Americans at Lompoc Federal Penitentiary to regulation barring religious headbands in the dining facilities for purported health reasons.

(Argued and briefed on appeal)

*Burbridge v. Sampson*

74 F.Supp.2d 940 (C.D. Ca. 1999)

First Amendment challenge to community college policy regulating student speech in public fora on campus. Court issued a preliminary injunction, declaring the college's speech regulations unconstitutional.

*Rubin v. City of Santa Monica*

823 F.Supp. 709 (C.D. Ca. 1993)

First Amendment challenge to city permit scheme limiting access to public parks for protected expressive activities. Court issued a preliminary injunction and declared the permit scheme unconstitutionally on vagueness grounds and procedural due process grounds. (Lead counsel)

# State Court

*Terry Tipton-Whittingham, et al. v. City of Los Angeles*

34 Cal.4th 604 (2002)

California continues to recognize "catalyst" fee awards to prevailing parties under the private attorney-general statute (Cal. Code of Civ. Proc. §1021.5) and Fair Employment and Housing Act (FEHA) despite change in federal civil rights fee-shifting law. Under California law, there is no requirement of a judicial determination establishing a change in the legal obligations of the parties.

(Co-counsel and argued at California Supreme Court)

*Los Angeles Alliance for Survival v. City of Los Angeles*

22 Cal.4th 352 (2000)

Ordinance restricting certain activity as "aggressive solicitation" was not content-based under California Constitution

(co-counsel)

*Williams v. Garcetti*

5 Cal.4th 561 (1993), *sub nom Williams v. Reiner*, 13 Cal.App.4th 392 (1991)

Challenge on due process grounds to portion of STEPP law which imposed a criminal penalty on parents of minor children engaged in or at risk of delinquent conduct.

(Argued and brief on appeal to California Supreme Court)

*Sands v. Morongo Unified School District*

53 Cal.3d 863 , *cert denied*, 112 U.S. 3026 (1991)

225 Cal.App.3d 1385 (1989)

Establishment Clause challenge invalidating prayers at public high-school graduations.

(Argued and briefed as lead counsel throughout litigation)

*Walker v. Superior Court of Sacramento*

47 Cal.3d 112 (1988)

Establishment Clause/Free Exercise/Due Process challenge to criminal prosecution of Christian
Science parents for death resulting from use of prayer instead of traditional medicine in treatment
of ill child.  (Wrote amicus brief on due process issues).

*Irvine Valley College Academic Senate, et al. v. South Orange County Community College District*

129 Cal.App.4th 1482 (2005)

Statutory construction of plain language of Education Code §87360, bolstered by legislative intent, requires
actual joint agreement and mutual development of revisions to faculty hiring policies.

(co-counsel, drafted final briefs on appeal)

*Fashion 21, et al. v. Coalition for Humane Immigrant Rights (CHIRLA), et al.*

111 Cal.App.4th 1128 (2004)

Special motion to strike defamation complaint by retailer against garment worker advocates must be granted
as the plaintiff retailer could not establish a probability of prevailing on the merits of their claims.  Garment
worker advocates properly relied on draft labor commission regulations suggesting retailer could be liable for
sweatshop conditions of manufacturing of its retail goods.

(lead counsel at all stages)

*Gonzalez v. Superior Court*

33 Cal.App.4th 1539 (1995)

Challenge to discovery order in sexual harassment case requiring plaintiff to disclose name of confidential
informant who provided her with photographic evidence of harassment.  "After-acquired evidence" rule
applied to require disclosure.

(Lead counsel in trial court and appeal)

*Lantz. v. Superior Court of Kern County*

28 Cal.App.4th 1839 (1994)

Privacy rights challenge to interpretation of Consumer Personnel Records Statute (CCP § 1985(3), requiring
strict adherence to statutory procedures and limiting exemption of local government agencies from adhering
to statutory requirements.

(Lead counsel throughout litigation)

*Rudnick v. McMillan*

25 Cal.App.4th 1183 (1994)

Defamation verdict involving public figure plaintiff and local environmentalist author of letter to editor
overturned on basis that letter was protected opinion and public figure subject to constitutional malice proof
burden.  Wrote amicus brief which formed basis of appellate ruling.

*Westside Sane/Freeze v. Hahn*

224 Cal.App.3d 546 (1990)

Challenge to restrictions on First Amendment petition activities in shopping center.

(Co-counsel, co-wrote appeal)

*City of Glendale v. Robert George*

208 Cal.App.3d 1394 (1989)

Reversal of trial court order imposing prior restraints on speech of "Presidential Santa" on the basis that he
constituted a public nuisance to his neighbors in a residential area.

(Argued and briefed on appeal)

*McCarthy v. Fletcher*

207 Cal.App.3d 130 (1989)

Challenge to removal of textbooks from school reading list based on community-based religious objections.
Court of Appeal reversed summary judgment decision, holding that there was sufficient evidence of
constitutionally impermissible factors in evaluation of appropriateness of class-room reading materials.

(Argued and brief on appeal)

*Fiske v. Gillespie*

200 Cal.App.3d 130 (1988)

Challenge to sex-based actuarial presumptions in insurance industry rate for particular types of life insurance and annuity benefits.

(Co-Counsel, Argued on appeal)


# Publications:
# (Partial listing)s


*Catalyst Fees After Buckhannon*

Civil Rights Litigation and Attorney Fees Annual Handbook

(January 2006)


*Free Speech and Harassment: An Overview*

*in the Public Employee Sector*

CPER: CALIFORNIA PUBLIC EMPLOYEE RELATIONS

Institute of Industrial Relations - UC Berkeley

June 1999  No. 136


*Defeating Employer Defenses to Supervisor Liability*

*After* Ellerth *and* Faragher

ADVOCATE, October 1998


*Student Expression Under California Law*

UCLA Journal of Education

Volume 3, pp. 127-137 (1989)


*Should Attorneys Be Disciplined For Gender Bias*

Point/Counterpoint ABA Journal   August, 1995


*Fight Illegal Police Practices in State Court*

Los Angeles Daily Journal

March 6, 1992


*Judicial Oversight Limited by Supreme Court*

Los Angeles Daily Journal

May 6, 1991


*Jury Nullification is Conscience of Community*

Los Angeles Daily Journal

August 31, 1990


*A Basic Right Merits Shield From The Mob*

Los Angeles Times

August 11, 1991 p.M5

*Prop 115 revisited: Police charged with crimes deserve fair trials too*
Los Angeles Daily News
May 7, 1991

*Prayer Doesn't Belong at Graduation*
USA Today
May 15, 1991 p. A10

*Killea Tactic Can Only Hurt the Church in the Long Run*
Los Angeles Times (San Diego)
November 20, 1989 p.B7

*The Fifth is a Shield for All*
Los Angeles Times
August 6, 1988   II8
(authored for Exec. Dir. ACLU)

*Which Way Will Rehnquist Court Turn?*
Los Angeles Daily News
June 18, 1986 p.21

*Constitution Exacts Cost for Religious Freedom*
Los Angeles Daily News
June 8, 1986 FOCUS   p.3

## Education:

| | |
|---|---|
| Peoples College of Law | J.D.  May, 1978 |
| Douglass College.For Women, Rutgers University | B.A . June, 1968 |

## Professional and Community Activities:

| | |
|---|---|
| Adjunct Professor - Loyola Law School<br>Civil Rights Advocacy Practicum | 2007-present |
| Blue Ribbon Panel on LAPD Rampart Inquiry, Member | 2004-2006 |
| Ninth Circuit Gender Bias Task Force<br>Convenor, Advisory Committee on Employment Law | 1992-1993 |
| Ninth Circuit Conference on "Ethnicity, Race, and Religion in the Ninth Circuit"<br>Member, Working Subcommittee | 1993 |
| Los Angeles Public Interest Law Journal<br>Advisory Board | 2007-present |

| | |
|---|---|
| Los Angeles Center for Law and Community Action<br>Member, Board of Directors | 2015-present |
| National Police Accountability Project<br>Member, Advisory Board and Board of Directors | 2006-present |
| National Lawyers Guild, Los Angeles - President | 2001-2008 |
| National Lawyers Guild - National Executive Vice President | 2009-2011 |
| National Lawyers Guild Far West Regional Vice-President | 2003-2005 |
| National Lawyers Guild, National Executive Committee | 2003-2012 |
| NLG National Mass Defense Committee, Co-chair | 2003-2012 |
| Women Lawyers Association of Los Angeles<br>Member, ProChoice Committee | 1985-2002 |
| The California Anti-SLAPP Project<br>Member, Board of Directors | 1995-2010 |

## Awards:
## (Partial listing)

| | |
|---|---|
| PEN Freedom to Write Award | 1991 |
| American Jewish Congress Tzedek Award | 1992 |
| Planned Parenthood Los Angeles, Distinguished Service Award | 1990 |
| Freethought Heroine Award | 1992 |
| National Lawyers Guild - Los Angeles | 1999 |
| ACLU of Southern California Pro Bono Attorney Award | 2001 |
| Asian Pacific American Legal Center Pro Bono Award | 2003 |
| California Lawyer: Super Lawyer -Civil Rights/Constitutional Law | 2004-2019 |
| ACLU of Southern California Freedom of Expression Award | 2007 |
| Daily Journal Top 100 Most Influential Lawyers in California | 2007 |

National Lawyers Guild - Ernie Goodman Award                                                    2007

Angel Award - California Lawyer Magazine Award for pro bono work                                2007

CLAY Award (California Lawyer of the Year - civil rights) - California Lawyer Magazine          2008

Top 75 Women Litigators in California - Daily Journal                                     2008, 2013

California Super Lawyers - Top 50 Women Lawyers in Southern California                          2014

National Lawyers Guild, Los Angeles Law for the People Award                                    2014

ACLU Lifetime Achievement Award                                                                 2017

# EXHIBIT 2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC., | Case No.: 3:19-cv-1713-BAS-AHG |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEY FEES AND COSTS** |
| v. | |
| RACHEL MADDOW, et al., | |
| Defendants. | **[ECF No. 35]** |

Before the Court is Defendants' Motion for Attorney Fees and Costs. ECF No. 35. This matter was referred to the undersigned by District Judge Cynthia Bashant. ECF No. 30 at 16. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## I. BACKGROUND

Plaintiff Herring Networks, Inc. ("Plaintiff") filed a complaint for defamation against Defendants Rachel Maddow, Comcast Corporation, NBCUniversal Media, LLC, and MSNBC Cable LLC (collectively, "Defendants"). ECF No. 1. Plaintiff's claim stemmed from a statement Rachel Maddow made on The Rachel Maddow Show on MSNBC. *Id.* Soon after Plaintiff filed suit, Defendants filed a special motion to strike pursuant to California Code of Civil Procedure § 425.16, commonly known as the Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") law. ECF No. 18. After considering the parties' arguments, the Court found that "the contested statement is an

1

opinion that cannot serve as the basis for a defamation claim" and granted Defendants' special motion to strike. ECF No. 30 at 16. Because the Court granted the anti-SLAPP motion, Defendants were permitted to file a motion for attorney fees and costs. *Id.* (citing CAL. CIV. PROC. CODE § 425.16(c)(1)). After Defendants filed their motion for attorney fees and costs (ECF No. 35), the Court set a briefing schedule. ECF No. 36. Plaintiff timely filed its opposition brief, and Defendants timely filed their reply brief. ECF Nos. 37, 38. Plaintiff also filed objections to evidence submitted in Defendants' motion and reply brief. ECF Nos. 37-4, 39. This Order follows.

## II. LEGAL STANDARD

Under California's anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney[] fees and costs." CAL. CIV. PROC. CODE § 425.16(c)(1). Under the anti-SLAPP statute, an award of attorney fees to a prevailing defendant is mandatory. *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001); *Christian Research Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 871 (Ct. App. 2008). The anti-SLAPP statute is "intended to compensate a defendant for the expense of responding to a SLAPP suit. To this end, the provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (quoting *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 45 Cal. Rptr. 3d 633, 637 (Ct. App. 2006)).

To determine a reasonable attorney fee award for an anti-SLAPP motion, the California Supreme Court has found that "the lodestar adjustment approach should be applied." *Ketchum*, 17 P.3d at 744. For the lodestar approach, the Court begins by "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

The party seeking attorney fees and costs carries the initial burden of production to establish the reasonableness of the requested fee. *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (citing *Blum v. Stenson*, 465 U.S. 886, 895

2

n.11 (1984) and *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008)). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Once the applicant meets its burden of production, the court then determines whether the fee is reasonable. *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (citing *Blum*, 465 U.S. at 895 n.11 and *Camacho*, 523 F.3d at 980). A court has broad discretion in determining what is reasonable. *See Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002); *see, e.g.*, *Garrison v. Ringgold*, No. 19cv244-GPC-RBB, 2019 WL 5684401, at *3 (S.D. Cal. Nov. 1, 2019) (explaining that the "court has wide discretion in determining the reasonableness of attorney[] fees.") (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)).

## III.    DISCUSSION

In the instant case, Defendants request an award of attorney fees in the amount of $347,244, based on 384.28 hours incurred in the process of strategizing, researching, and briefing the anti-SLAPP motion, and the fee motion. ECF No. 38 at 3–5; *see* ECF No. 35-1 at 13–14.[1] Additionally, Defendants request costs in the amount of $10,724.36. ECF No. 38 at 6–7. Plaintiff counters that the Court should substantially reduce the fees to $84,995.80. ECF No. 37 at 6, 18. Plaintiff does not contend that Defendants' requested costs should be reduced. *Compare* ECF No. 35-2 at 26 (Defendants initially requested $9,706.28 in costs) *with* ECF No. 37 at 17 (Plaintiffs listed $9,706.28 as a "reasonable [] rate" for initial costs).

### A.    Evidentiary Objections

As a preliminary matter, the Court considers Plaintiff's evidentiary objections. First, Plaintiff objects to various statements made within the Edelman declaration in support of

---

[1] Due to discrepancies between original and imprinted page numbers, page numbers for docketed materials cited in this Order refer to those imprinted by the Court's electronic case filing system.

Defendants' attorney fees motion. ECF No. 37-4 (citing ECF No. 35-2). Second, Plaintiff objects to evidence included in Defendants' reply brief. ECF No. 39. The Court will address these objections in turn.

### 1. Objections to the Declaration of Scott A. Edelman in support of Defendants' Motion for Attorney Fees and Costs

Plaintiff objects to fifteen statements in the Edelman declaration. ECF No. 37-4 at 2–9. A few examples of Mr. Edelman's statements at issue include his representations that "[s]ubstantial efforts went into the preparation of this dispositive motion;" "Defendants' counsel also researched the case law surrounding substantially true speech;" "Gibson Dunn was retained on a modified contingency fee basis NBCU agreed to pay Defendants' counsel a rate of $100,000 for the filing and argument on the Anti-SLAPP Motion;" and "[b]ased on my reading of the relevant case law, fee applications submitted in other district courts in California, and my overall familiarity with rates charged by my firm's competitors, it is my understanding that these rates are comparable to the rates charged by peer firms and attorneys with similar skill and experience." *Id.* (quoting ECF No. 35-2). Plaintiff's objections are based on a range of evidentiary principles, such as hearsay, relevance, vagueness, lack of foundation, speculation, lack of authentication, improper legal conclusions, and unfair prejudice outweighing probative value. ECF No. 37-4 at 2–9. Defendants contend that Plaintiff's objections lack merit and are "nothing more than a collateral" attack on Defendants' motion. ECF No. 38 at 5 n.3. Defendants argue that the facts and observations set forth in the Edelman declaration are based on his personal knowledge and experience, and relate directly to their motion. *Id.*

Plaintiff's objections are largely boilerplate objections that cite to evidentiary rules without analysis. *See, e.g., Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1107 (S.D. Cal. 2018). Plaintiff's objections based on lack of personal knowledge, lack of foundation, improper opinion, and hearsay are overruled. There is no information to contradict Mr. Edelman's testimony that the statements in his declaration are within his personal knowledge and based on his review of the business records in this case. *See Makaeff v. Trump Univ., LLC*, No. 10cv940-GPC, 2015 WL 1579000, at *2–*3,

3:19-cv-1713-BAS-AHG

*4 n.5 (S.D. Cal. April 9, 2015) (overruling similar objections); *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1275 n.2 (N.D. Cal. 2014) ("personal knowledge can come from the review of the contents of business records and an affiant may testify to acts that she did not personally observe but which have been described in business records").

As for the remaining objections, "[t]he Court notes the objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent the evidence is not proper, the Court did not consider it." *Makaeff*, 2015 WL 1579000, at *4 n.5.

### 2. *Objections to Defendants' Reply Brief*

Plaintiff also objects to evidence included in Defendants' reply brief, specifically Defendants' submission of a 2014 motion for attorney fees filed by Plaintiff's counsel, Miller Barondess LLP, in *Margosian v. Bank of the West*. ECF No. 39 at 2 (citing ECF No. 38-3). Since reply briefs are limited to matters raised by the opposition or unforeseen at the time of the original motion, Plaintiff argues that it was improper for Defendants to submit the *Margosian* fee application for the first time with its reply. ECF No. 39 at 2.

The remainder of Plaintiff's objection contains unauthorized argument, distinguishing *Margosian* to undermine Defendants' fee application in the instant case by noting the differences in procedural posture, hourly rates, and staffing levels. ECF No. 39 at 2–3. Although the Court would normally consider striking information from a reply that raises new evidence or argument, it will not do so here. Plaintiff is not prejudiced by Defendants' reference to the *Margosian* fee application, since the Court will also consider the arguments presented by Plaintiff in its objections, which are in effect an unauthorized sur-reply.[2]

/ /

---

[2] The practical effect of this is minimal, since the *Margosian* fee application is entitled to little weight. The *Margosian* fee application is from a state court within the Eastern District of California, outside the relevant community for attorney rates, and the court's ruling on the motion offers no analysis of the court's reasoning. *See Margosian v. Bushell*, No. 10-VCU-238202, 2014 WL 12650875, at *5 (Cal. Super. Ct. Oct. 24, 2014).

## B. Parties' Positions Regarding Attorney Fees

In their motion, Defendants seek fees for 384.28[3] hours of work, and contend that the number of hours are reasonable because they are related to briefing the anti-SLAPP motion, responding to Plaintiff's motion to supplement the record, or briefing the instant attorney fees motion and reply brief. ECF No. 35-1 at 13–14; ECF No. 38 at 3. Defendants seek hourly rates ranging from $1,335 to $1,525 per hour for partners, $625 to $960 per hour for associates, $460 per hour for paralegals, and $270 for researchers. ECF No. 35-2 at 5–6. Defendants contend that these billing rates are reasonable by touting the experience of their staff and comparing their rates with fee awards in multiple cases in the Central District and Northern District of California. ECF No. 35-1 at 17–18. In support of their motion, Defendants provided a declaration from Mr. Edelman itemizing time spent on each task and amount spent on each cost (ECF No. 35-2); biographies of the partners, senior associate, and mid-level associates who worked on the case (ECF Nos. 35-3, 35-4, 35-5, 35-6, 35-7); the transcript of the oral argument on the anti-SLAPP motion (ECF No. 35-8); an April 2020 Northern District bankruptcy court attorney fee application from another law firm with similar billing rates (ECF No. 35-9); and excerpts from the 2020 and 2018 Thomson Reuters Public Rates Reports (ECF Nos. 35-10, 35-11).

As for Defendants' hourly rate, Plaintiff argues that Defendants are not relying on the "relevant community," the district in which the lawsuit is pending, which is the Southern District of California. Plaintiff notes that the reasonable rates in the Southern District are much lower than the examples used by Defendants from the Central District or Northern District. ECF No. 37 at 5–6, 9–11. Thus, Plaintiff requests that the Court reduce the recoverable hourly rates to $535 for partners, $300 for senior associates, and $260 for junior associates. *Id*. at 11–12. As for Defendants' request for paralegal and researcher fees, Plaintiff argues that Defendants failed to meet their burden of establishing prevailing rates, and thus those should be eliminated. *Id*. at 12–13.

---

[3] 355.5 hours relate to briefing the anti-SLAPP motion or responding to Plaintiff's motion to supplement the record, and 28.78 hours relate to briefing the instant attorney fees motion and reply brief. ECF No. 38 at 3.

As for Defendants' hours worked, Plaintiff argues that they are excessive relative to the procedural posture of the case. ECF No. 37 at 13. Plaintiff also argues that many of the hours worked are duplicative, noting that junior associates' work was revised by a senior associate and then again by two partners. *Id*. at 14–15. Plaintiff submits that only one of the partners' hours should be considered, and that the remaining hours should be subject to a 10% reduction. *Id*. at 15. Plaintiff also argues that certain categories of work performed were not related to the anti-SLAPP motion or were ministerial, and requests that those thirteen hours be deducted. *Id*. at 15–16. Plaintiff's proposed final recoverable amount is $84,995.80. *Id*. at 18.

Defendants respond that although the Southern District is the focus for the reasonable rate inquiry, the Court should consider attorney rates and fee approvals from neighboring districts. ECF No. 38 at 7. Defendants also included numerous cases from the Southern District to support their fees. *Id*. at 7–9. Defendants contend that their paralegal and researcher rates are reasonable because a court has approved similar rates for the same paralegal and researcher in another case. *Id*. at 8–9. As for the hours worked, Defendants respond that the entire lawsuit is the subject of the anti-SLAPP motion and thus all attorney fees expended in the case are recoverable. *Id*. at 3. Defendants further respond that their team structure was reasonable, and that junior attorneys always spend substantial time researching and writing, and more senior attorneys then write, revise, and fine-tune arguments. *Id*. at 5. Defendants also reiterate their detailed time entries and argue that counsel did not overlap by researching the same issues or cases. *Id*. Additionally, upon completing the briefing on the attorney fees motion, Defendants included the time entries for preparation of the motion and reply brief, which brings the updated total requested to 384.28 hours and $347,244.00. *Id*.

## C.   Reasonable Attorney Fees

"When the district court makes its award, it must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). To determine a reasonable attorney fee award under the lodestar approach, the Court first considers whether the hourly

rates and number of hours expended are both reasonable.

### 1. *Reasonable Hourly Rates*

To determine the reasonable hourly rate, the Court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotation marks and citation omitted). The burden is on the party requesting attorney fees to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see Roberts v. City & County of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate"). Evidence that the Court should consider includes "[a]ffidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). A court can consider other factors, including its own knowledge of the relevant legal market, the complexity of the legal issues at stake, and the reputation and experience of counsel. *See FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15cv1879-BEN-BLM, 2020 WL 5645331, at *3–*4 (S.D. Cal. Sept. 21, 2020); *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 212 Cal. Rptr. 3d 304, 314 (Ct. App. 2016).

The parties disagree as to the relevant legal community for setting a reasonable rate in this case. Generally, the relevant community is the forum in which the district court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (citing *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991)). Rates outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates*, 987 F.2d at 1405. Plaintiff argues that the Southern District of California is the relevant community. ECF No. 37 at 9–11. Defendants do not dispute that "the Southern District of California is the focus of the reasonable rate inquiry," but they also point out

that courts within the Southern District have relied on cases from the Central and Northern Districts to establish a reasonable rate within this district. ECF No. 38 at 7.

The Court finds that the relevant community is the Southern District of California. *Camacho*, 523 F.3d at 979. Although the Southern District is the Court's primary focus, the Court will consider rates for similar work in neighboring and nearby districts, albeit they will be accorded minimal weight. *See, e.g.*, *Smith v. Aetna Life Ins. Co.*, No. 18cv1463-JLS-WVG, 2020 WL 6055147, at *6 (S.D. Cal. Oct. 14, 2020) (explaining that "Plaintiff also cites to numerous other cases in which courts have approved similar rates as reasonable, although these all appear to be cases in the Northern and Central Districts of California. [] However, 'the relevant community is the Southern District of California because it is the forum in which the district court sits.' [] Accordingly, the Court accords minimal weight to these authorities from outside the Southern District of California"); *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, No. 10cv419-GPC-WVG, 2014 WL 5438532, at *4 n.5 (S.D. Cal. Oct. 24, 2014) (noting that "Plaintiff also presents attorney fee awards in other districts in California; however, those cases are not considered the relevant community for purposes of a reasonable hourly rate and not helpful to the Court"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (considering rates from the Central and Northern Districts, but relying on the Court's "familiarity with the rates charged by other firms in the San Diego area"); *Deanda v. Savings Investment, Inc.*, No. 05cv0139-DMS-RBB, 2006 WL 8443522, at *4 (S.D. Cal. June 8, 2006) (reducing attorney's rate based on his approved rate in the Central District).

### a. Attorneys

Defendants seek hourly rates for Theodore J. Boutrous, Jr., a partner at Gibson Dunn, who charged $1,450 for 2019 and $1,525 for 2020.[4] ECF No. 35-1 at 16. Mr. Boutrous has

---

[4] As a preliminary matter, just because an attorney charges clients a certain amount does not conclusively make that amount the prevailing market rate—i.e., an attorney's usual hourly rate is relevant, but not determinative, evidence of the prevailing market rate. *See Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006).

over 30 years of legal experience and has received numerous awards for his work as a First Amendment attorney. ECF No. 35-1 at 16. Defendants seek hourly rates for Scott A. Edelman, a partner at Gibson Dunn, of $1,335 for 2019 and $1,395 for 2020. ECF No. 35-1 at 16. Mr. Edelman has over 30 years of experience, and has received numerous awards for his work as a media and entertainment attorney. *Id*. Defendants seek hourly rates for Nathaniel L. Bach, a senior associate at Gibson Dunn, of $915 for 2019 and $960 for 2020. *Id*. Mr. Bach has over ten years of legal experience working as a media and entertainment litigator. *Id*. Defendants seek hourly rates for Marissa B. Moshell, a mid-level associate at Gibson Dunn, of $625 for 2019 and $740 for 2020. *Id*. at 17. Ms. Moshell has three years of legal experience, working on a variety of commercial disputes, including First Amendment, anti-SLAPP, and other media and entertainment actions. *Id*. Defendants seek an hourly rate for Daniel Rubin, a mid-level associate at Gibson Dunn, of $625 for 2019. *Id*. Mr. Rubin has three years of legal experience as a general commercial litigator, including experience with media and entertainment disputes. *Id*.

To support these rates, Defendants rely principally on court-approved hourly rates in the Central and Northern Districts. *See* ECF No. 35-1 at 17–18. One of the cases cited from the Central District involved attorneys from Gibson Dunn. *See ScripsAmerica, Inc. v. Ironridge Global LLC*, No. CV14-03962-SJO-AGRx, 2016 WL 6871280, at *4–*5 (C.D. Cal. Jan. 12, 2016). Defendants also provided a recent fee application from the PG&E bankruptcy case in the Northern District, where the attorneys sought similar rates. ECF No. 35-1 at 18 (referring to ECF No. 35-9). Additionally, Defendants provided the Public Rates Report issued by Thomson Reuters in 2020 ("2020 Rates Report"), which includes rates from the Central and Northern Districts, and the Public Rates Report issued by Thomson Reuters in 2018 ("2018 Rates Report"), which includes rates from the Central, Eastern, Northern, and Southern Districts. ECF No. 35-1 at 18; ECF No. 35-2 at 7 (referring to ECF Nos. 35-10, 35-11). In their reply brief, Defendants cited five cases from the Southern District that approved a range of $622 to $943. ECF No. 38 at 7–8.

Plaintiff responds that these billing rates are excessive, and that Mr. Boutrous and Mr. Edelman should instead rate $525, Mr. Bach should instead rate $300, and Ms. Moshell

1    and Mr. Rubin should instead rate $260. ECF No. 37 at 9–11. Plaintiff focused much of its

2    argument on Defendants' lack of support from the Southern District as the relevant

3    community, and presented four cases from the Southern District that purport to illustrate

4    the district's lower rates. *Id.* at 11. Plaintiff also listed figures from Defendants' 2018 Rate

5    Report, which showed lower rates in the Southern District than those requested by

6    Defendants. *Id.* at 10.

7            For the most part, the Court does not find the cases that Defendants rely on from the

8    Central and Northern Districts to be persuasive. They are outside the relevant community,

9    and the subject matter and complexity of the cases are not analogous. Although it is from

10   the Central District, the Court finds that *ScripsAmerica*, a 2016 case from the Central

11   District that analyzed the rates of attorneys from the same law firm, Gibson Dunn, to be

12   relevant. There, the court approved rates of $950 for a partner with 37 years of experience

13   and numerous awards, $700 for a ten-year associate, and $450 for a three-year associate.

14   2016 WL 6871280, at *4–*5 (reducing from counsel's initial requests of $1,125 for a 37-

15   year partner, $770 for a ten-year associate, and $625 for a three-year associate). The Court

16   has also considered Defendants' proffered 2018 Rate Report insofar as it documents

17   Southern District rates, although these figures refer to rates from 2011 to 2015 and are

18   somewhat dated. *See Camacho*, 523 F.3d at 981 ("in determining the prevailing market

19   rate a [] court abuses its discretion to the extent it relies on cases decided years before the

20   attorneys actually rendered their services."). The Court has also considered recent fee

21   awards in the Southern District. *See Moreno*, 534 F.3d at 1115 ("judges can certainly

22   consider the fees awarded by other judges in the same locality in similar cases"); *see, e.g.*,

23   *San Diego Comic Convention v. Dan Farr Productions*, No. 14cv1865-AJB-JMA, 2019

24   WL 1599188, at *13–*14 (S.D. Cal. Apr. 15, 2019) (in a complex, well-known trademark

25   infringement case, finding reasonable the hourly rates of $760 for partners with 28–29

26   years of experience, $685 for a partner with 14 years of experience, $585 for attorney with

27   16 years of experience, $545 for an associate with 5 years of experience, from a Top 100

28   law firm), *attorney fees aff'd by* 807 F. App'x 674 (9th Cir. Apr. 20, 2020); *Kikkert v.*

     *Berryhill*, No. 14cv1725-MMA-JMA, 2018 WL 3617268, at *2, *2 n.1 (S.D. Cal. July 30,

2018) (an unopposed fee motion after a successful social security appeal, finding *de facto* hourly rate of $943 reasonable, citing other decisions in the district approving rates from $656 to $886); *Medina v. Metropolitan Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1179 (S.D. Cal. 2015) (in a consolidated employment case, finding $850 for a partner with 38 years of experience, $625 for a partner with 17 years of experience, and $295 for an associate with 3 years of experience was reasonable); *Makaeff*, 2015 WL 1579000, at *4–*5 (in a complex class action with a successful anti-SLAPP motion, finding reasonable the rates of $250 to $440 for associates and $600 to $825 for partners).

The Court has also considered the complexity of the legal issues at stake and the reputation and experience of counsel. *See FlowRider Surf*, 2020 WL 5645331, at *3–*4. Although the issue of defamation is not complex, the posture of this litigation demonstrates that the stakes were high. This case was brought by a competing media outlet and has achieved a high degree of publicity. Defendants had a great incentive to hire the most experienced and qualified counsel available to protect their reputation. Defendants' counsel have a strong reputation for expertise in First Amendment issues and in high-stakes litigation. *See* ECF No. 35-3 (noting Mr. Boutrous's credentials, including numerous awards, his experience arguing "more than 100 appeals, including before the Supreme Court of the United States, 12 different federal circuit courts of appeals, nine different state supreme courts and a multitude of other appellate and trial courts in complex civil, constitutional and criminal matters[,]" and his success in representing the prevailing parties in three recent, high-stakes Supreme Court cases); ECF No. 35-4 (noting Mr. Edelman's credentials, including numerous awards and accolades, and his success in several high-stakes, complex, multi-week jury trials); ECF No. 35-5 (noting Mr. Bach's credentials, including being awarded "2020 Litigator of the Week," and listing his numerous successful high-stakes case outcomes). The Court also relies on its own knowledge of and familiarity with rates in the relevant community. *See PLCM Group v. Drexler*, 997 P.2d 511, 519 (Cal. 2000) ("The value of legal services performed in a case is a matter in which the trial court has its own expertise.").

Based on all of this information, the Court finds that reasonable rates for comparable

work in San Diego are not as high as Defendants assert, but not as low as Plaintiff suggests. The Court finds that reasonable rates in San Diego for attorneys of comparable skill, experience, and reputation are as follows: $1,150 for Mr. Boutrous, $1,050 for Mr. Edelman, $720 for Mr. Bach, $470 for Ms. Moshell, and $470 for Mr. Rubin.[5]

### b.   Paralegals

Defendants also seek fees for two paralegals. ECF No. 35-1 at 17. The paralegals are "Lolita Gadberry, a paralegal with 35 years of experience with a standard hourly rate of $460 in 2019 and $480 in 2020, and Duke Amponsah, a paralegal with over twenty years of experience with a standard hourly rate of $480 in 2020." *Id.* Defendants rely on the same cases and information to support the reasonable rate for their paralegals. Plaintiff argues that Defendants have not met their burden as to the paralegal and researcher fees, because they presented no evidence of prevailing rates in the relevant community. ECF No. 37 at 12. Plaintiff also points to two cases from the Southern District, in which the courts denied paralegal fees because insufficient facts were presented. *Id.* (citing *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10cv0541-GPC-WVG, 2014 WL 6851612, at *6 (S.D. Cal. Dec. 3, 2014) and *Brighton Collectibles*, 2014 WL 5438532, at *5).

The 2018 Rates Report attached to the motion includes paralegal rates in the Southern District from 2011 to 2014. ECF No. 35-11. The range of these rates varies widely from $50 to $305. ECF No. 35-11 at 73, 118, 167–69, 185–87, 197–98, 200–01, 212, 214–16, 258, 261–62, 313–14, 324, 356. Courts in the Southern District have recently approved paralegal fees in the middle of this range. *See, e.g.*, *Aispuro v. Ford Motor Co.*, No. 18cv2045-DMS-KSC, 2020 U.S. Dist. LEXIS 142806, at *11 (S.D. Cal. Aug. 10, 2020) ($200); *James Holcomb & Rotoco, Inc. v. BMW of N. Am., LLC*, No. 18cv475-JM-BGS,

---

[5] Though Defendants separately list rates for work done in 2019 and in 2020 (see ECF No. 35-2 at 5–6), the Court has determined that the current rates listed above are reasonable, without a distinction regarding the year the work was completed. *See Gates*, 987 F.2d at 1406 (finding that "district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds.").

1  2020 U.S. Dist. LEXIS 26094, at *15–*16 (S.D. Cal. Feb. 14, 2020) ($100); *Puccio v.*
2  *Love*, No. 16cv2890-W-BGS, 2020 WL 434481, at *4 (S.D. Cal. Jan. 28, 2020) ($195);
3  *San Diego Comic Convention*, 2019 WL 1599188, at *15 ($290); *Lewis v. County of San*
4  *Diego*, No. 13cv2818-H-JMA, 2017 WL 6326972, at *12–*13 (S.D. Cal. Dec. 11, 2017)
5  ($100 and $200).

6          Based on its judgment and extensive experience in the Southern District, its thorough
7  review of the parties' submissions regarding paralegal fees, and its independent review of
8  recent paralegal fee awards in the district, the Court finds that, in light of her 35 years of
9  experience, $280 is a reasonable paralegal fee for Ms. Gadberry and, in light of his 20 years
10 of experience, $265 is a reasonable paralegal fee for Mr. Amponsah.

11                              *c.    Researchers*

12         Defendants also seek fees for two researchers, Erin Kurinsky and Carla Jones, who
13 charge a standard hourly rate of $270. ECF No. 35-1 at 17. With respect to the researchers,
14 the Court finds that Defendants have failed to produce satisfactory evidence to support the
15 requested rates. Defendants offer no information or documentation justifying the rates for
16 Ms. Kurinsky or Ms. Jones, such as a curriculum vitae, resume, or description of their
17 educational background or work experience. *See* ECF No. 35-1 at 17. "In the absence of
18 any evidence as to the background and experience of the [researchers], the Court is unable
19 to determine the prevailing rate." *Makaeff*, 2015 WL 1579000, at *5. Because Defendants
20 have failed to carry their burden to demonstrate that the researchers' hourly rates are
21 reasonable, the Court denies their request for researcher fees. *See cf. Garrison*, 2019 WL
22 5684401, at *4; *Zest IP Holdings*, 2014 WL 6851612, at *6.

23                              *d.    Summary*

24         In sum, the Court concludes that reasonable rates in this district for those of
25 comparable skill, experience, and reputation are as follows: $1,150 for Mr. Boutrous,
26 $1,050 for Mr. Edelman, $720 for Mr. Bach, $470 for Ms. Moshell, $470 for Mr. Rubin,
27 $280 for Ms. Gadberry, and $265 for Mr. Amponsah. The Court denies Defendants' request
28 for fees for researchers Erin Kurinsky and Carla Jones.

/ /

## 2. Reasonable Hours Expended

The party seeking fees bears the "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Computer Xpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 649 (Ct. App. 2001) (internal quotation marks and citation omitted). Although "it is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method," *Concepcion v. Amscan Holdings, Inc.*, 168 Cal. Rptr. 3d 40, 53 (Ct. App. 2014), the "evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims and whether the hours were reasonably expended." *Christian Research Inst.*, 81 Cal. Rptr. 3d at 870. To that end, the Court may require a prevailing party to produce records sufficient to provide "a proper basis for determining how much time was spent on particular claims." *Computer Xpress*, 113 Cal. Rptr. 2d at 649 (internal quotation marks and citation omitted). The Court should exclude hours "'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434).

Here, Defendants seek an award for 384.28 hours. ECF No. 38-1 at 5. This includes time spent analyzing Plaintiff's complaint and discussing initial strategy; researching and drafting the anti-SLAPP Motion and supporting documents; responding to Plaintiff's opposition brief and evidentiary submission; responding to Plaintiff's *ex parte* Application to Supplement the Record; preparing for and attending the motion hearing; and researching and drafting the attorney fees motion, reply, and supporting documents. ECF No. 35-1 at 13, ECF No. 35-2 at 8–22; ECF No. 38-1 at 3–4.

Plaintiff contends that the hours requested are excessive. ECF No. 37 at 13. First, Plaintiff contends that Mr. Edelman's and Mr. Boutrous's hours should be reduced, or Mr. Edelman's hours completely excluded, because hiring two renowned partners was redundant and unnecessary. *Id*. at 14. Second, Plaintiff contends that Defendants overstaffed this case and used it as a training opportunity. *Id*. at 14–15. Third, Plaintiff contends that the anti-SLAPP fee provision only applies to motion to strike, and not the entire action. *Id*. at 15. Fourth, Plaintiff asserts that Defendants should not recover for ministerial or administrative tasks. *Id*. at 16. The Court will address these challenges in

turn.

a. *Whether Fees Beyond the Anti-SLAPP Motion should be Considered*

As a threshold issue, the Court will examine whether Defendants' request for attorney fees should be limited to those fees directly related to the anti-SLAPP motion. Plaintiff cites three cases in support of its argument: *S. B. Beach Props. v. Berti*, 138 P.3d 713, 717 (Cal. 2006); *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 46 Cal. Rptr. 2d 542, 544–45 (Ct. App. 1995), and *Christian Research Inst.*, 81 Cal. Rptr. 3d at 872–74. ECF No. 37 at 15. In *Lafeyette Morehouse*, the court reversed the fee award because the trial court awarded fees for work other than on the anti-SLAPP motion. However, *Lafayette Morehouse* was decided prior to the 1997 amendment of section 425.16, which mandated the statute be construed broadly. *See* CAL. CIV. CODE § 425.16; *see also Metabolife*, 213 F. Supp. 2d at 1222–24 (discussing *Lafayette Morehouse* after the 1997 amendment of § 425.16). In addition, the *Lafayette Morehouse* court reduced fees to those directly related to the anti-SLAPP motion because the motion concerned only one of seven causes of action. 46 Cal. Rptr. 2d at 545 (referring to 44 Cal. Rptr. 2d. 46 (Ct. App. 1995)). Plaintiff's references to *Christian Research Institute* and *S. B. Beach Properties* are likewise unpersuasive. In *Christian Research Institute*, the court affirmed the trial court's reductions to the requested 600 hours, not based on counsel working on non-anti-SLAPP filings, but because the case was vastly overstaffed for a simple motion and the billing entries were vague. 81 Cal. Rptr. 3d at 874. In *S. B. Beach Properties*, the court affirmed the trial court's denial of defendants' fee motion, because they were seeking fees for an anti-SLAPP motion they never filed—the plaintiff voluntarily dismissed the case the day before they planned to file the anti-SLAPP motion. 138 P.3d at 715, 717–18.

In this case, "granting the special motion to strike effectively dismissed all of plaintiff['s] claims against defendant[s]. Thus, the entire lawsuit here is subject to the anti-SLAPP motion and, therefore, all attorney[] fees and costs expended in this case 'occurred in the context of, and were inextricably intertwined with, the anti-SLAPP motion.'" *Zwebner v. Coughlin*, No. 05cv1263-JAH-AJB, 2006 WL 8455423, at *2 (S.D. Cal. Jan.

3:19-cv-1713-BAS-AHG

1    24, 2006) (quoting *Metabolife*, 213 F. Supp. 2d at 1223). Thus, as in *Metabolife* and

2    *Zwebner*, "[a]ll of [Defendant]'s attorney fees and expenses were in incurred in connection

3    with the anti-SLAPP motion." *Metabolife*, 213 F. Supp. 2d at 1223 (internal quotation

4    marks omitted). Accordingly, the Court finds Plaintiff's initial argument unavailing, and

5    will consider all of the requested hours, not just the hours spent preparing the anti-SLAPP

6    motion.

7                              **b.    Overstaffing**

8            Regarding the use of multiple attorneys, the Ninth Circuit has recognized that "'the

9    participation of more than one attorney does not necessarily constitute an unnecessary

10   duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995)

11   (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989). Instead, "[a] reduction

12   of fees is warranted only if the attorneys are *unreasonably* doing the *same* work. An award

13   for time spent by two or more attorneys is proper as long as it reflects the distinct

14   contribution of each lawyer to the case and the customary practice of multiple-lawyer

15   litigation." *Noyes v. Grossmont Union High Sch. Dist.*, 331 F. Supp. 2d 1233, 1250 (S.D.

16   Cal. 2004) (emphasis in original) (internal quotations omitted).

17           Thus, the Court is not persuaded that Defendants should have been limited to one

18   partner. *See, e.g.*, *Hammett v. Sherman*, No. 19cv605-JLS-AHG, 2020 U.S. Dist. LEXIS

19   49793, at *82 (S.D. Cal. Mar. 23, 2020) (approving anti-SLAPP fees for two partners with

20   over 30 years of experience); *Zwebner*, 2006 WL 8455423, at *3 n.2 (noting approval of

21   the use of five attorneys in anti-SLAPP case). Similarly, the Court is not persuaded that the

22   pyramid law firm model of having associates complete work that is then reviewed by

23   partners, without more, is a reason to reduce hours. *Cf. Moreno*, 534 F.3d at 1114–15, 1114

24   n.2 (discussing various law firm models and concluding that it was error for the district

25   court to speculate "that other firms could have staffed the case differently").

26           However, the Court finds that some of the time spent was duplicative. "[C]ounsel

27   should not bill for attending the same meetings, internal communications, and

28   communicating with each other, as such time is unnecessary." *Salgado v. T-Mobile USA,*
     *Inc.*, No. 17cv339-JLT, 2020 WL 3127931, at *21–*22 (E.D. Cal. June 12, 2020). Courts

1   have "reduced fee awards for time spent in 'interoffice conferences' or other internal

2   communications." *Id.*; *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1194–

3   95 (S.D. Cal. 2003). Here, Plaintiff points out many examples of internal communications

4   between co-counsel, totaling approximately 19.6 hours. ECF No. 37-1 at 4–5. Accordingly,

5   while the Court recognizes the value of coordination between co-counsel, the Court

6   believes a 5%[6] reduction to the requested fees is appropriate, to more accurately reflect the

7   time billed. *See Moreno*, 534 F.3d at 1112 (explaining that the "court can impose a small

8   reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and

9   without a more specific explanation"); *see also Klein v. Gordon*, No. 8:17-cv-00123-AB-

10  JPRx, 2019 WL 1751839, at *4 (C.D. Cal. Feb. 12, 2019) (exercising discretion to impose

11  a ten percent "haircut" reduction for clerical work, conferences calls, conversations

12  amongst co-counsel, and preparation of submissions).

13                      *c.     Ministerial or Administrative Tasks*

14          "[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's]

15  rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)

16  (noting that "[i]t is appropriate to distinguish between legal work, in the strict sense, and

17  investigation, clerical work, compilation of facts and statistics and other work which can

18  often be accomplished by non-lawyers but which a lawyer may do because he has no other

19  help available"); *Lewis*, 2017 WL 6326972, at *8 ("A fee award should not include time

20  spent on clerical matters, whether billed at an attorney's or paralegal's hourly rate"). Thus,

21  courts have discounted billing entries for "clerical tasks." *Nadarajah v. Holder*, 569 F.3d

22  906, 921 (9th Cir. 2009).

23          Plaintiff identified three entries that it labels ministerial. The first, from

24  May 17, 2020, where Ms. Moshell corresponded with the court reporter about the hearing

25  transcript, is already subsumed in the Court's earlier reduction for interoffice

26

27  _____

28  [6] In recognition of the value of coordination between co-counsel, and in the interest of
    transparent calculations, the Court exercises its discretion to reduce the 384.28 requested
    hours by 5% (i.e., 19.2 hours) instead of excluding the approximately 19.6 hours identified
    by Plaintiff.

communication, since the same entry includes her speaking with Mr. Boutrous and Mr. Bach. *Compare* ECF No. 37-1 at 9 *with id*. at 7. As to the second, the Court does not agree that finalizing a stipulation is ministerial, and will not exclude that entry. ECF No. 37-1 at 9. However, the Court does agree with Plaintiff that the time spent "research[ing] court reporting and hearing transcription" is ministerial, and will exclude 0.3 hours from Ms. Moshell's total accordingly. ECF No. 37-1 at 9.

### d. Summary

Using the Court's judgment and experience, and upon a thorough review of the hours expended in this case, in light of the case's complexity and procedural history, the remaining billing entries and total hours billed are appropriate. *See Moreno*, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

In sum, Defendants' requested 384.28 hours are reduced to 363.1 as follows: Mr. Boutrous's hours are reduced from 56.4 to 53.5; Mr. Edelman's hours are reduced from 20.1 to 19.1; Mr. Bach's hours are reduced from 137.5 to 130.6; Ms. Moshell's hours are reduced from 134.9 to 128.2 and then to 127.9; Mr. Rubin's hours are reduced from 16.6 to 15.8; Ms. Gadberry's hours are reduced from 15.7 to 14.9; Mr. Amponsah's hours are reduced from 1.4 to 1.3; Ms. Kurinsky's hours are reduced from 1.58 to 0; and Ms. Jones's hours are reduced from 0.1 to 0.

### D. Costs

Defendants request costs in the amount of $10,724.36. ECF No. 35-2 at 24–26; ECF No. 38-1 at 6–7. These costs include transcript costs, research costs, photocopying costs, process server costs, document retrieval service costs, and courier costs. *Id*. Plaintiff does not contend that Defendants' requested costs should be reduced. *Compare* ECF No. 35-2 at 26 (Defendants initially requested $9,706.28 in costs) *with* ECF No. 37 at 17 (Plaintiffs listed $9,706.28 as a "reasonable [] rate" for initial costs).

Attorneys charging "such expenses to paying clients separate from their hourly rates, [] is consistent with the Court's experience, as well as prior orders in this District

addressing the issue of awardable non-statutory costs." *See Smith*, 2020 WL 6055147, at *12 (collecting cases from the Southern District which approved costs such as: copying fees, courier and messenger fees, mailing charges, legal research fees, electronic research costs, telephone charges, filing fees, and court reporter fees). Accordingly, the Court finds the $10,724.36 in costs included[7] by Defendants as part of their fee request reasonable.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Attorney Fees. ECF No. 35. The Court awards Defendants **fees in the amount of $247,667.50** representing 53.5 hours billed by Mr. Boutrous at $1,150 per hour, 19.1 hours billed by Mr. Edelman at $1,050 per hour, 130.6 hours billed by Mr. Bach at $720 per hour, 127.9 hours billed by Ms. Moshell at $470 per hour, 15.8 hours billed by Mr. Rubin at $470 per hour, 14.9 hours billed by Ms. Gadberry at $280 per hour, and 1.3 hours billed by Mr. Amponsah at $265 per hour, and **costs in the amount of $10,724.36**.

As explained by District Judge Bashant in her order granting Defendants' anti-SLAPP motion: "[a]fter Defendants' motion for attorney fees is resolved, the Court will instruct the Clerk to close this case." ECF No. 30 at 17.

**IT IS SO ORDERED**.

Dated:  February 5, 2021

_____

Honorable Allison H. Goddard
United States Magistrate Judge

---

[7] Both Federal Rule of Civil Procedure Rule 54(d) and this district's Civil Local Rule 54.1, requiring a bill of costs, are based on an entry of judgment, which has not yet occurred here. *See* ECF No. 30 at 17; ECF No. 12 n.2; *see also James Holcomb & Rotoco, Inc.*, 2020 U.S. Dist. LEXIS 26094, at *25–*27 (rejecting argument that prevailing party is not entitled to costs because they failed to submit a bill of costs).



EXHIBIT 3

1 | ROBBINS GELLER RUDMAN
  | & DOWD LLP
2 | SPENCER A. BURKHOLZ (147029)
  | LAURIE L. LARGENT (153493)
3 | ROBERT R. HENSSLER JR. (216165)
  | MATTHEW I. ALPERT (238024)
4 | ERIKA OLIVER (306614)
  | 655 West Broadway, Suite 1900
5 | San Diego, CA 92101
  | Telephone: 619/231-1058
6 | 619/231-7423 (fax)
  | spenceb@rgrdlaw.com
7 | llargent@rgrdlaw.com
  | bhenssler@rgrdlaw.com
8 | malpert@rgrdlaw.com
  | eoliver@rgrdlaw.com
9
  | Lead Counsel for Plaintiff
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| In re BANC OF CALIFORNIA SECURITIES LITIGATION | ) ) ) ) | No. SACV 17-00118 AG (DFMx) consolidated with SACV 17-00138 AG (DFMx) |
|---|---|---|
| This Document Relates To: | ) ) ) ) | CLASS ACTION |
| ALL ACTIONS. | ) ) ) ) ) ) | DECLARATION OF LAURIE L. LARGENT FILED ON BEHALF OF ROBBINS GELLER RUDMAN & DOWD LLP IN SUPPORT OF AWARD OF ATTORNEYS' FEES AND EXPENSES |

DATE: March 16, 2020
TIME: 10:00 a.m.
CTRM: 10D
JUDGE: Hon. Andrew J. Guilford

4821-8804-5233.v1

1        I, LAURIE L. LARGENT, declare as follows:

2        1.      I am a member of the firm of Robbins Geller Rudman & Dowd LLP

3 ("Robbins Geller" or the "Firm"). I am submitting this declaration in support of my

4 Firm's application for an award of attorneys' fees, expenses and charges ("expenses")

5 in connection with services rendered in the above-entitled action (the "Litigation").

6        2.      This Firm is counsel of record for Lead Plaintiff Iron Workers Local No.

7 25 Pension Fund ("Plaintiff"), and the Class.

8        3.      The information in this declaration regarding the Firm's time and

9 expenses is taken from time and expense printouts and supporting documentation

10 prepared and/or maintained by the Firm in the ordinary course of business. I am the

11 partner who oversaw and/or conducted the day-to-day activities in the Litigation and I

12 reviewed these printouts (and backup documentation where necessary or appropriate)

13 in connection with the preparation of this declaration. The purpose of this review was

14 to confirm both the accuracy of the entries on the printouts as well as the necessity for,

15 and reasonableness of, the time and expenses committed to the Litigation. As a result

16 of this review, reductions were made to both time and expenses in the exercise of

17 billing judgment. Based on this review and the adjustments made, I believe that the

18 time reflected in the Firm's lodestar calculation and the expenses for which payment

19 is sought herein are reasonable and were necessary for the effective and efficient

20 prosecution and resolution of the Litigation. In addition, I believe that these expenses

21 are all of a type that would normally be charged to a fee-paying client in the private

22 legal marketplace.

23        4.      After the reductions referred to above, the number of hours spent on the

24 Litigation by the Firm is 11,048.97. A breakdown of the lodestar is provided in the

25 attached Exhibit A. The lodestar amount for attorney/paraprofessional time based on

26 the Firm's current rates is $7,561,131.30. The hourly rates shown in Exhibit A are the

27 usual and customary rates set by the Firm for each individual.

28

4821-8804-5233.v1

5.      The Firm seeks an award of $1,575,210.83 in expenses and charges in connection with the prosecution of the Litigation.  Those expenses and charges are summarized by category in the attached Exhibit B.

6.      The following is additional information regarding certain of these expenses:

(a)      Filing, Witness and Other Fees: $18,423.47.  These expenses have been paid to the Court for filing fees and to attorney service firms or individuals who either: (i) served process of the complaint or subpoenas; (ii) obtained copies of court documents for Plaintiff; or (iii) delivered courtesy copies to the Court.  The vendors who were paid for these services are set forth in the attached Exhibit C.

(b)      PR Newswire: $700.00.  This expense was necessary under the Private Securities Litigation Reform Act of 1995's ("PSLRA") "early notice" requirements, which provides, among other things, that "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." *See* 15 U.S.C. §78u-4(a)(3)(A)(i).

(c)      Transportation, Hotels & Meals: $46,818.52.  In connection with the prosecution of this case, the Firm has paid for travel expenses to, among other things, attend court hearings, meet with witnesses, mediators and opposing counsel and take or defend depositions.  The date, destination and purpose of each trip is set forth in the attached Exhibit D.

(d)      Court Hearing Transcripts and Deposition Reporting, Transcripts and Videography: $50,121.36.  The vendors who were paid for these services are listed in the attached Exhibit E.

- 2 -

4821-8804-5233.v1

1          (e)      Experts/Consultants/Investigators: $1,238,734.24.

2                   (i)      Compass Lexecon, LLC ("Compass Lexecon"):

3 $373,054.09.  Compass Lexecon is an economic consulting firm and its economists

4 assisted Plaintiff's expert Dr. Pirrong with his work rebutting defendants' experts'

5 opinions on market manipulation, spoofing and layering and cross-market derivative

6 manipulation.  The economists at Compass Lexecon spent a substantial amount of

7 time reviewing and analyzing the expert reports submitted by defendants, which

8 included over 7,000 pages of exhibits, analyzing significant volumes of securities

9 trading data relied upon by defendants' experts, deciphering defendants' experts'

10 calculations and computer code used to manipulate raw data, performed their own

11 independent analysis of the data relating to trading of Banc of California stock

12 (including trade-related variables), and conducted analyses and comparisons of

13 various pricing data points.

14                  (ii)      Crowninshield Financial Research, Inc. ("Crowninshield"):

15 $356,616.00.  Crowninshield is a financial economics consulting firm.  Lead Counsel

16 retained Professor Steven P. Feinstein (Ph.D., CFA), the President of Crowninshield

17 and an Associate Professor of Finance at Babson College, to offer opinions at

18 summary judgment and testify at trial regarding loss causation and damages relating to

19 Banc of California stock.  Dr. Feinstein and his team spent considerable time studying

20 the record and public information, including analyst reports and SEC filings in order

21 to be able to address the markets in which Banc of California securities traded,

22 disclosures related to Banc of California's operations and any related price movement

23 in Banc of California's stock.  Based on this work, Dr. Feinstein provided detailed

24 information and analyses that were utilized in analyzing loss causation and damages.

25 Dr. Feinstein provided a detailed expert report opining on these issues.  Dr. Feinstein

26 also provided a rebuttal report to address the opinions of two of defendants' experts

27 with regard to loss causation and damages.  Dr. Feinstein and his team also drafted the

28

- 3 -

Plan of Allocation governing the distribution of the Settlement Fund among Class Members.

(iii)    Stanford Consulting Group, Inc. ("Stanford Consulting"): $203,595.00.  Stanford Consulting is a financial economics consulting firm.  Lead Counsel retained Zachary Nye, Ph.D., a financial economist and Vice President at Stanford Consulting Group, to provide expert economic analysis on the market efficiency of Banc of California's stock during the Class Period and the economic materiality of information to investors.  Dr. Nye has an A.B. in Economics from Princeton University; an M.Sc. in Finance from the London Business School; and a Ph.D. in Finance from the Paul Merage School of Business at the University of California, Irvine.  Dr. Nye prepared a report in support of Plaintiff's motion for class certification, and Lead Counsel referred to and relied on Dr. Nye's report and event study to argue that Banc of California's securities reacted quickly to new, material information during the Class Period, and that its securities traded in an efficient market.  Dr. Nye and his team spent time studying the record and public information, including analyst reports and Banc of California's SEC filings, in order to analyze the market in which Banc of California stock traded, disclosures related to Banc of California's business, and the movements of Banc of California's stock in response to the disclosures and events identified in the complaint.  Dr. Nye produced a rebuttal report detailing his opinions in response to defendants' expert.  Dr. Nye's work was necessary to support Plaintiff's motion for class certification, which was granted by the Court.

(iv)    Kalorama Partners, LLC: $186,125.00.  Through Kalorama Partners, LLC, Lead Counsel retained the services of Harvey L. Pitt, the former chairman of the SEC, to provide expert opinions at summary judgment and testimony at trial on issues concerning internal disclosure controls for publicly traded companies like Banc of California, disclosures relating to proxy statements and materiality.  Mr. Pitt's opinions were based on his distinguished career, which first began at the SEC

- 4 -

and continued for over a decade, where he served as the SEC General Counsel for three years before leaving and then returning to serve as the 26th Chairman of the SEC from 2001-2003. Mr. Pitt was also a senior partner and Co-Chairman of Fried, Frank LLP for almost 25 years, and has also served as a fiduciary director to numerous public and non-public companies, for-profit and non-profit organizations and private sector and governmental advisory boards. Mr. Pitt also has extensive teaching experience at a number of law schools. In connection with his 31-page report, Mr. Pitt spent a significant amount of time reviewing Banc of California's 2016 Proxy Statement, Banc of California's SEC filings, deposition testimony given in this case, documentary evidence and consulted with Lead Counsel and its in-house forensic accountants throughout the process.

(v)     Tasta Group dba Caliber Advisors, Inc. ("Caliber Advisors"): $47,025.00. Caliber Advisors is a financial economics consulting firm. Lead Counsel retained Bjorn Steinholt, CFA, the managing director of Caliber Advisors, to provide the initial damages analysis for purposes of mediation. Mr. Steinholt prepared an event study that analyzed the movements in the price of Banc of California stock in comparison to the broader stock market and prepared damages analyses for Lead Counsel. Based on this work, Mr. Steinholt provided Lead Counsel with detailed information and analyses that provided support for Plaintiff's arguments regarding damages with respect to the August 2018 mediation and June 2019 mediation, which ultimately led to the Settlement.

(vi)    Stephen Craig Pirrong: $42,550.00. Lead Counsel retained Craig Pirrong, Ph.D. to review and respond to the analysis and opinions of two experts offered by defendants to rebut loss causation. Dr. Pirrong provided an expert rebuttal report to both of defendants' experts on the issue market manipulation, spoofing and layering and cross-market derivative manipulation. Dr. Pirrong is Professor of Finance at the Bauer College of Business, University of Houston and obtained his undergraduate and Ph.D. in economics from the University of Chicago. A large part

- 5 -

of his professional work has focused on market manipulation and pricing, which includes eleven peer reviewed articles and a book on manipulation and pricing. Dr. Pirrong has also served on the Commodity Futures Trading Commission Energy and Environment Markets Advisory Board. The staff of Compass Lexecon assisted Dr. Pirrong with his work in this case. In connection with his 30-page report, Dr. Pirrong and Compass Lexecon reviewed and analyzed a substantial amount of trading data, including shot sale trading volume data for securities (including Banc of California securities) traded on various exchanges, including the NYSE and the NASDAQ.

(vii) L.R. Hodges & Associates, Ltd. ("LRH&A"): $25,019.15. Over a six-month period (October through December 2016 and March through May 2017) in which LRH&A provided investigative services to Robbins Geller, LRH&A expended 109.6 hours for combined fees of $21,880.00, and incurred related expenses of $3,139.15 for a total of $25,019.15. LRH&A's research staff expended 36.1 hours to research, identify, and confirm the employment status of prospective witnesses, locating all key targets, as well as maintaining and updating an evolving witness list to support other investigative individuals. This also involved research, retrieval and analysis of relevant documents, including SEC filings, media articles, court filings, as well as other materials related to the case issues. The case manager and interviewing investigators expended a combined 73.5 hours to research, review and analyze materials in preparation for the investigation; contacting and conducting interviews with targeted third-party witnesses; and thereafter, preparing comprehensive interview summaries and other case reports. In addition, these individuals were involved in analyzing key case issues, as well as establishing and executing the joint litigation-investigation plan, and participating in numerous strategy sessions and investigation briefings with Robbins Geller.

(viii) Kumar Venkataraman dba Wodehouse Consultants, LLC: $4,750.00. Through Wodehouse Consultants, LLC, Lead Counsel consulted with Professor Kumar Venkataraman to provide an initial analysis of the opinions put forth

- 6 -

by defendants' experts on the issues of market manipulation and spoofing and layering as defenses to loss causation. Professor Venkataraman is the Professor of Finance and the Maguire Chair in Energy Management in the Cox School of Business at Southern Methodist University and has a Ph.D. in Finance from Arizona State University. Professor Venkataraman specializes in the area of market microstructure, evaluation of trading strategies and the functioning of equity, fixed-income and energy markets. In connection with the consultation, Professor Venkataraman undertook a detailed review of the expert report of Joseph Mitts submitted by Banc of California and consulted with Lead Counsel on rebutting the opinions therein.

(f)      Photocopies: $4,783.61.  In connection with this case, the Firm made 23,957 photocopies.  Robbins Geller requests $0.15 per copy for a total of $3,593.55.  Each time an in-house copy machine is used, our billing system requires that a case or administrative billing code be entered and that is how the number of in-house copies were identified as related to the Litigation.   The Firm also paid $1,190.06 to outside copy vendors.  A breakdown of these outside charges by date and vendor is set forth in the attached Exhibit F.

(g)      Online Legal and Financial Research: $76,777.67.  This category includes vendors such as LexisNexis Products, PACER, Thomson Financial, TransUnion Acquisition Corp. and Westlaw.  These resources were used to obtain access to SEC filings, factual databases, legal research and for cite-checking of briefs. This expense represents the expenses incurred by Robbins Geller for use of these services in connection with this Litigation.   The charges for these vendors vary depending upon the type of services requested.  For example, Robbins Geller has flat-rate contracts with some of these providers for use of their services.  When Robbins Geller utilizes online services provided by a vendor with a flat-rate contract, access to the service is by a billing code entered for the specific case being litigated.  At the end of each billing period in which such service is used, Robbins Geller's costs for such services are allocated to specific cases based on the percentage of use in connection

- 7 -

1  with that specific case in the billing period.  As a result of the contracts negotiated by

2  Robbins Geller with certain providers, the Class enjoys substantial savings in

3  comparison with the "market-rate" for *a la carte* use of such services which some law

4  firms pass on to their clients.  For example, the "market rate" charged to others by

5  LexisNexis for the types of services used by Robbins Geller is more expensive than

6  the rates negotiated by Robbins Geller.

7          (h)    eDiscovery Database Hosting: $73,888.53.  Robbins Geller

8  requests $73,888.53 for hosting eDiscovery related to this Litigation.  Robbins Geller

9  has installed top tier software, infrastructure and security.  The platform implemented,

10  Relativity, is offered by over 100 vendors and is currently being used by 198 of the

11  AmLaw200.  Over 30 servers are dedicated to Robbins Geller's Relativity hosting

12  environment with all data stored in a secure SSAE 16 Type II data center with

13  automatic replication to a datacenter located in a different geographic location.  By

14  hosting in-house, Robbins Geller is able to charge a reduced, all-in rate that includes

15  many services which are often charged as extra fees when hosted by a third party

16  vendor.  Robbins Geller's hosting fee includes user logins, processing, deduplication,

17  OCRing, TIFFing, bates stamping, exports, productions and archiving – all at no

18  additional cost.  Also included is unlimited structured and conceptual analytics (*i.e.*,

19  email threading, inclusive detection, near-dupe detection, concept searching, assisted

20  review, clustering, and more).  Robbins Geller is able to provide all these services for

21  a rate that is typically much lower than outsourcing to a third party vendor.  Utilizing

22  a secure, advanced platform in-house has allowed Robbins Geller to prosecute actions

23  more efficiently and has reduced the time and expense associated with maintaining

24  and searching electronic discovery databases.  Similar to third-party vendors, Robbins

25  Geller uses a tiered rate system to calculate hosting charges.  The amount requested

26  reflects charges for the hosting of over 1.2 million pages of documents produced by

27  defendants and third parties in this action.

28          (i)    Mediation Fees: $62,684.04.

(i)     Phillips ADR Enterprises, P.C. ("Phillips ADR"): $55,184.04.  The parties retained the Honorable Layn Phillips (Ret.) and Michelle Yoshida of Phillips ADR to assist with settlement negotiations following the Court's March 6, 2019 order requiring the parties to renew discussions with a mediator.  ECF No. 551 at 2.  Counsel for all parties attended a full-day, in-person mediation session in New York, New York, with Judge Phillips and Ms. Yoshida on June 21, 2019. Prior to the mediation, the parties exchanged briefs detailing their claims and defenses in the case.  Although no agreement was reached that day, negotiations continued through Judge Phillips and Ms. Yoshida over the following three months and on September 15, 2019, the parties accepted a mediator's proposal from Judge Phillips to resolve the case for $19,750,000.00.  This expense represents Plaintiff's one-half share of the fees for the mediation services provided by Phillips ADR.

(ii)     Fairbank and Vincent dba Fairbank ADR ("Fairbank ADR"): $7,500.00.  Pursuant to Local Rule 16-15, the parties agreed to follow ADR Procedure No. 3 (private mediation) and retained Robert Fairbank of Fairbank ADR to assist with settlement negotiations.  Counsel for all parties attended an in-person mediation with Mr. Fairbank on August 10, 2018, in Los Angles, California, however, the case did not resolve.  Prior to the mediation, the parties exchanged briefs detailing their claims and defenses in the case, which were reviewed and analyzed by Mr. Fairbank.  This expense represents Plaintiff's one-half share of the fees for the mediation services provided by Fairbank ADR.

7.     The expenses pertaining to this case are reflected in the books and records of this Firm.  These books and records are prepared from receipts, expense vouchers, check records and other documents and are an accurate record of the expenses.

- 9 -

4821-8804-5233.v1

8.    The identification and background of my Firm and its partners is attached hereto as Exhibit G.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of February, 2020, at San Diego, California.

s/ Laurie L. Largent
_____
LAURIE L. LARGENT

- 10 -

EXHIBIT A

Case 8:17-cv-00118-DMG-DFM Document 206-35 Filed 04/04/25 Page 13 of 19 Page ID
Page 59 of 108
Case 8:17-cv-00118-DMG-DFM Document 203-6 Filed 02/10/20 Page 13 of 19 Page ID
#:5257

## EXHIBIT A

*In re Banc of California Securities Litigation*, SACV 17-00118 AG (DFMx)
Robbins Geller Rudman & Dowd LLP
Inception through December 30, 2019

| *NAME* | | *HOURS* | *RATE* | *LODESTAR* |
|---|---|---|---|---|
| Alpert, Matthew | (P) | 3,389.80 | 800 | $ 2,711,840.00 |
| Burkholz, Spencer | (P) | 281.90 | 1,150 | 324,185.00 |
| Daley, Joseph | (P) | 26.00 | 925 | 24,050.00 |
| Gusikoff Stewart, Ellen | (P) | 5.00 | 1,030 | 5,150.00 |
| Henssler, Robert | (P) | 606.50 | 850 | 515,525.00 |
| Largent, Laurie | (P) | 2,000.57 | 1,040 | 2,080,592.80 |
| Myers, Danielle S. | (P) | 5.45 | 800 | 4,360.00 |
| Pintar, Theodore | (P) | 100.70 | 1,050 | 105,735.00 |
| Saham, Scott H. | (P) | 60.90 | 950 | 57,855.00 |
| Mendoza, Alexander | (A) | 38.00 | 175 | 6,650.00 |
| Oliver, Erika | (A) | 1,617.40 | 480 | 776,352.00 |
| McCormick, Tricia | (OC) | 27.25 | 880 | 23,980.00 |
| Walton, David | (OC) | 67.80 | 1,030 | 69,834.00 |
| Araya-Schraner, Natasha | (SA) | 7.00 | 360 | 2,520.00 |
| Rudolph, Andrew | (FA) | 12.10 | 725 | 8,772.50 |
| Sader, Brad | (FA) | 346.90 | 575 | 199,467.50 |
| Yurcek, Christopher | (FA) | 6.10 | 725 | 4,422.50 |
| Hughes, Zackary | (FAI) | 15.50 | 75 | 1,162.50 |
| Ignacio, Angelica | (FAI) | 10.50 | 75 | 787.50 |
| Mouannes, Charbel | (FAI) | 27.00 | 75 | 2,025.00 |
| Wat, Emily | (FAI) | 44.50 | 75 | 3,337.50 |
| Barhoum, Anthony | (EA) | 20.35 | 430 | 8,750.50 |
| Cabusao, Reggie | (EA) | 22.25 | 335 | 7,453.75 |
| Uralets, Boris | (EA) | 13.20 | 415 | 5,478.00 |
| Roelen, Scott | (RA) | 32.30 | 295 | 9,528.50 |
| Brandon, Kelley | (I) | 74.00 | 290 | 21,460.00 |
| Keita, C. Oumar | (LS) | 8.00 | 290 | 2,320.00 |
| Ulloa, Sergio | (LS) | 6.00 | 290 | 1,740.00 |
| Frazier, Joshua | (LC) | 70.00 | 170 | 11,900.00 |
| Rigby, John | (SUA) | 57.10 | 175 | 9,992.50 |
| Hart, Miranda | (SLC) | 87.90 | 170 | 14,943.00 |
| Paralegals | | 1,439.85 | 275-350 | 468,046.25 |

| NAME | | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| Document Clerks | | 482.30 | 100-150 | 66,980.00 |
| Shareholder Relations | | 38.85 | 100-150 | 3,935.00 |
| **TOTAL** | | **11,048.97** | | **$ 7,561,131.30** |

(P) Partner
(A) Associate
(OC) Of Counsel
(SA) Staff Attorney
(FA) Forensic Accountant
(FAI) Forensic Accounting Intern
(EA) Economic Analyst
(RA) Research Analyst
(I) Investigator
(LS) Litigation Support
(LC) Law Clerk
(SUA) Summer Associate
(SLC) Summer Law Clerk

Exhibit A

# EXHIBIT 4

# Makaeff v. Trump Univ., LLC

United States District Court for the Southern District of California

April 9, 2015, Decided; April 9, 2015, Filed

Case No. 10cv0940 GPC (WVG)

**Reporter**

2015 U.S. Dist. LEXIS 46749 *; 2015 WL 1579000

TARLA MAKAEFF, et al., on Behalf of Herself and All Others Similarly Situated, Plaintiffs, vs. TRUMP UNIVERSITY, LLC, (aka Trump Entrepreneur Initiative) a New York Limited Liability Company, DONALD J. TRUMP, and DOES 1 through 50, inclusive, Defendants.TRUMP UNIVERSITY, LLC, Counterclaimant, vs. TARLA MAKAEFF, and DOES 1 through 10, inclusive, Counter Defendant.

**Subsequent History:** Motion granted by, in part, Motion denied by, in part, Motion granted by Makaeff v. Trump Univ., LLC, 309 F.R.D. 631, 2015 U.S. Dist. LEXIS 128265 (S.D. Cal., 2015)

**Prior History:** Makaeff v. Trump. Univ., LLC, 2014 U.S. Dist. LEXIS 167581 (S.D. Cal., Dec. 3, 2014)

## Core Terms

spent, lumping, Hourly, anti-SLAPP, Expended, duplicative, reply, paralegal, reduction, deposition, staff, notice, reconsideration, malice, amicus, prevailing, staffing, hearsay, revised, block, Settlement, contingency, lodestar, inadmissible, multiplier, attended, conversations, co-counsel, upward, strategizing

**Counsel:** [*1] For Tarla Makaeff, on Behalf of Herself and All Others Similarly Situated, Brandon Keller, Ed Oberkrom, Sonny Low, on Behalf of Themselves and All Others Similarly Situated, J.R. Everett, on Behalf of Themselves and All Others Similarly Situated, John Brown, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs: Aaron M. Olsen, Amber Lee Eck, LEAD ATTORNEYS, Zeldes Haeggquist & Eck, LLP, San Diego, CA; Daniel Jacob Pfefferbaum, LEAD ATTORNEY, Robbins Geller Rudman & Dowd LLP, San Francisco, CA; Jason A Forge, LEAD ATTORNEY, Robbins Geller Rudman & Dowd LLP, San Diegp, CA; Maureen E. Mueller, Rachel L Jensen, Thomas R. Merrick, LEAD ATTORNEYS, Robbins Geller Rudman & Dowd LLP, San Diego, CA.

For Trump University, LLC, A New York Limited Liability Company also known as, Trump Entrepreneur Initiative, Donald J Trump, Defendants: Benjamin James Morris, LEAD ATTORNEY, Foley & Lardner LLP, San Diego, CA; Jeffrey L. Goldman, LEAD ATTORNEY, PRO HAC VICE, Belkin Burden Wenig & Goldman, LLP, New York, NY; Jill Ann Martin, LEAD ATTORNEY, Trump National Golf Club, Los Angeles, Rancho Palos Verdes, CA; Nancy L. Stagg, LEAD ATTORNEY, Foley & Lardner, LLP, San Diego, CA.

For Trump University, [*2] LLC, A New York Limited Liability Company, Counter Claimant: Benjamin James Morris, LEAD ATTORNEY, Foley & Lardner LLP, San Diego, CA; Jeffrey L.

Case 3:16-cv-01985-BEN-BLM   Document 405-65   Filed 01/04/25   PageID.18487
Page 64 of 108
2015 U.S. Dist. LEXIS 46749, *2

Page 2 of 35

Goldman, LEAD ATTORNEY, PRO HAC VICE, Belkin Burden Wenig & Goldman, LLP, New York, NY; Jill Ann Martin, LEAD ATTORNEY, Trump National Golf Club, Los Angeles, Rancho Palos Verdes, CA; Nancy L. Stagg, LEAD ATTORNEY, Foley & Lardner, LLP, San Diego, CA.

For Tarla Makaeff, on Behalf of Herself and All Others Similarly Situated, Counter Defendant: Amber Lee Eck, LEAD ATTORNEY, Zeldes Haeggquist & Eck, LLP, San Diego, CA; Rachel L Jensen, LEAD ATTORNEY, Robbins Gellar Rudman & Dowd LLP, San Diego, CA.

**Judges:** HON. GONZALO P. CURIEL, United States District Judge.

**Opinion by:** GONZALO P. CURIEL

## Opinion

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTERDEFENDANT TARLA MAKAEFF'S REQUEST FOR FEES AND COSTS**

[Dkt. No. 331.]

### INTRODUCTION

Before the Court is Plaintiff/Counter Defendant Tarla Makaeff's ("Makaeff") Bill of Fees and Costs pursuant to California Code of Civil Procedure § 425.16, commonly known as California's Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute. (Dkt. No. 331.) Defendant/Counterclaimant Trump University,

LLC ("Trump University") has opposed. [*3] (Dkt. No. 335.) Pursuant to this Court's order, the Parties also submitted supplemental briefing. (Dkt. Nos. 358, 364, 367. ) For the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Makaeff's request for fees and costs. The Court **AWARDS** Makaeff fees in the amount of **$790,083.40**, and costs in the amount of **$8,695.81**.

### BACKGROUND

Beginning in August 2008, Makaeff attended Trump University's real estate programs. (Dkt. No. 1 ¶ 10.) On April 30, 2010, Makaeff brought a class action lawsuit against Trump University accusing it of, among other things, deceptive business practices. (Dkt. No. 1.) On May 26, 2010, Trump University filed a defamation counterclaim against Makaeff. (Dkt. No. 4.)

On June 30, 2010, Makaeff filed a special motion to strike Trump University's defamation counterclaim under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. (Dkt. No. 14.)

On August 23, 2010, Judge Irma E. Gonzalez denied Makaeff's anti-SLAPP motion. (Dkt. No. 24.) Makaeff's subsequent motion for reconsideration was denied on September 20, 2010. (Dkt. No. 40.)

On January 3, 2011, Makaeff appealed the denial of her anti-SLAPP motion to the Ninth Circuit (Dkt. No. [*4] 43), which reversed and remanded on April 17, 2013.[1] *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 271 (9th Cir. 2013). In addition, the Ninth Circuit granted Makaeff's unopposed request that the issue of appellate attorney's fees be transferred to the district court. (Dkt. No. 284.) On June 16, 2014, this Court granted Makaeff's anti-SLAPP motion to strike Trump University's defamation counterclaim. (Dkt. No. 328.)

---

[1] In the interim, the case was transferred to the undersigned judge. (Dkt. No. 190.)

On July 3, 2014, pursuant to this Court's direction, Makaeff filed a Bill of Fees and Costs to substantiate the amount of reasonable attorney's fees and costs associated with bringing the anti-SLAPP motion, related appeal, and supplemental briefing. (*Id.* at 18-19; Dkt. No. 331.)[2] Trump University filed an opposition on July 18, 2014. (Dkt. No. 335.) On July 22, 2014, Makaeff filed a "Notice of Deficiency and Intended NonResponse Absent Court Request." (Dkt. No. 336.)

On November 18, 2014, this Court ordered Makaeff to submit "additional briefing detailing the amount of time each attorney spent on each task" and further "substantiating **[*5]** the costs requested." (Dkt. No. 358.) Makaeff filed her supplemental briefing on December 15, 2014, and Trump University filed its supplemental opposition on December 23, 2014.[3] (Dkt. Nos. 364, 367.) On January 7, 2015, Makaeff filed an *ex parte* application for leave to file a limited response.[4] (Dkt. No. 368.)

## LEGAL STANDARD

Under California's anti-SLAPP statute, "a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 104 Cal. Rptr. 2d 377, 17 P.3d 735, 741 (Cal. 2001) ("[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.").

To determine a reasonable attorney's fee award for an anti-SLAPP motion, the California Supreme

Court has found that "the lodestar adjustment approach should be applied." *Ketchum*, 17 P.3d at 744. For the lodestar approach, the Court begins by "multiplying the number of hours reasonably spent on the litigation by a reasonable **[*6]** hourly rate." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40(1983)).

An award of fees and costs in an anti-SLAPP case must be reasonable, and courts have broad discretion in determining what is reasonable. *See Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220,1222 (S.D. Cal. 2002).

## DISCUSSION

In the instant case, Makaeff requests an award of attorney's fees in the amount of $1,333,004.25, based on 2,226.35 hours incurred in the process of strategizing, researching and briefing the anti-SLAPP motion, subsequent successful appeal and opposing Trump University's petition for rehearing en banc, discovery, supplemental briefing, and the fee brief. (Dkt. No. 331 at 16, 18; Dkt. No. 331 (Jensen Decl.) ¶ 58; Dkt. No. 331-2 (Eck Decl.) ¶ 55; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 2; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 2.) Additionally, Makaeff requests costs in the amount of $9,209.27. (Dkt. No. 331 at 18; Dkt. No. 331 (Jensen Decl.) ¶ 59; Dkt. No. 331-2 (Eck Decl.) ¶ 57; Dkt. No. 364 at 19 n.11; Dkt. No. 364-1 (Jensen Supp. Decl.) 2, 31 n.1; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 33.) Trump University counters that the Court should deny Makaeff's fee request entirely, or substantially reduce the fees to no more than $147,675.00, and deny all costs. (Dkt. No. 335 at 27; Dkt. No. 367 at 27.)

## I. Evidentiary Objections [*7]  and Motions to Strike

As a preliminary matter, the Court considers Trump University's evidentiary objections and motions to

---

[2] Page number citations such as this one are to the page numbers reflected on the Court's CM/ECF system and not to page numbers assigned by the parties.

[3] On December 16, 2014, the Court granted Makaeff's motion to quash Trump University's subpoenas of Plaintiffs' counsels' time records, and denied Trump University's motion to compel the production of documents. (Dkt. No. 366.)

[4] The Court GRANTS Makaeff's unopposed *ex parte* application.

strike. Trump University objects to the majority of the two supplemental declarations of Makaeff's counsel, Rachel L. Jensen and Amber L. Eck, on the ground that they contain inadmissible hearsay. (Dkt. Nos. 367-3, 367-4.) Specifically, Trump University contends that the portions of the two supplemental declarations regarding the time spent by other attorneys and paralegals — who did not submit their own declarations — are inadmissible hearsay because the two declarants do not purport to have personally observed the amount of time spent by these other individuals.

Trump University relies on the Ninth Circuit's recent decision in *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 222-23 (9th Cir. 2013), which held that an attorney's declaration regarding his paralegal's hours was inadmissible hearsay. In *Muniz*, the declaring attorney averred that he watched the paralegal reconstruct her hours and the spreadsheet he attached to his declaration showed her hours. *Id.* The Ninth Circuit held that the attorney's declaration stating the number of hours worked by the paralegal was inadmissible hearsay because it merely repeated the paralegal's **[*8]** out of court statements concerning the hours she had worked. *Id.* at 223. Therefore, the Ninth Circuit vacated in part and remanded to the district court "to determine, in the first instance, whether any hearsay exception applies to [the attorney's] declaration regarding fees for paralegal work in this case." *Id.* at 227.

Trump University argues that here, similar to *Muniz*, the two supplemental declarations regarding the time spent and tasks performed by other individuals are inadmissible hearsay because they are "undoubtedly based on out of court statements or [the declarant's] own opinion" and are not based on "personal knowledge or observation." (Dkt. No. 367-3 at 3; Dkt. No. 367-4 at 3.) *See also Knickerbocker* v. *Corinthian Colls.*, No. 12-cv-1142-JLR, 2014 U.S. Dist. LEXIS 111733, 2014 WL 3927227, at *3 n.2 (W.D. Wash. Aug. 12, 2014) (attorney's declaration of another attorney's hours worked was inadmissible hearsay based on

*Muniz); Kranson v. Fed. Express Corp.*, No. 11-cv-5826-YGR, 2013 U.S. Dist. LEXIS 173499, 2013 WL 6503308, at *5 (N.D. Cal. Dec. 11, 2013) (attorney's declaration of paralegal's hours worked was inadmissible hearsay based on *Muniz).*

Makaeff counters that *Muniz* is distinguishable because the initial and supplemental declarations of Makaeff's counsel, Ms. Jensen and Ms. Eck, regarding other individuals are based on their personal knowledge working **[*9]** on the matters, overseeing the work of others, and their personal review of their respective law firms' business records. (Dkt. No. 368-1 at 5-6.) *See Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1275 n.2 (N.D. Cal. 2014) ("[P]ersonal knowledge can come from the review of the contents of business records and an affiant may testify to acts that she did not personally observe but which have been described in business records." (citing *Aniel v. GMAC Mortg., LLC*, No. 12-cv-4201-SBA, 2012 U.S. Dist. LEXIS 138555, 2012 WL 5373388, *6 (N.D. Cal. Oct. 30, 2012))). Both Ms. Jensen and Ms. Eck declare that they personally reviewed their firm's time and expense records maintained in the ordinary course of business. (Dkt. No. 331-1 (Jensen Decl.) ¶¶ 43, 54-55, 61; Dkt. No. 331-2 (Eck Decl.) ¶ 53; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 4).

The Court agrees with Makaeff that the portions of the two supplemental declarations regarding the time spent by other attorneys and paralegals are not inadmissible hearsay because they are based on Ms. Jensen's and Ms. Eck's personal knowledge, including their overseeing of the work of others and their personal review of business records. *See Banga*, 29 F. Supp. 3d at 1275 n.2; *see also* Fed. R. Evid. 803(6) (outlining business records exception to hearsay rule).

Trump University also argues that the supplemental declarations disregard the best evidence rule by describing the **[*10]** contents of writings (i.e., time and expense records) not submitted into evidence. (Dkt. No. 367-3 at 3; Dkt. No. 367-4 at 3) *See* Fed. R. Evid. 1002. However, under California law, "an

award of attorney fees may be based on counsel's declarations, without production of detailed time records." *Raining Data Corp. v. Barrenechea*, 175 Cal. App. 4th 1363, 97 Cal. Rptr. 3d 196, 205 (Ct. App. 2009).

Accordingly, the Court **DENIES** Trump University's evidentiary objections to and motion to strike portions of the supplemental declarations of Ms. Jensen and Ms. Eck on the grounds of hearsay and best evidence, as well as lack of foundation, lack of personal knowledge, and improper opinion.[5]

## II. Reasonable Attorney's Fees

To determine a reasonable attorney's fee award **[*11]** under the lodestar approach, the Court first considers whether Makaeffs counsel's hourly rates and number of hours expended are both reasonable. The Court then considers Makaeff's request for an upward multiplier.

## A. Reasonable Hourly Rates

To determine the reasonable hourly rate, the Court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (internal quotation marks and citation omitted). In this case, the relevant community is the Southern District of California because it is "the forum in which the district court sits." *Id.* The burden is on the party requesting attorney's fees to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are

in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also Blum* v. *Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). Evidence that the Court should consider includes "[affidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney." *United Steelworkers of Am.* v. *Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Makaeff's counsel **[*12]** seek attorney hourly rates ranging from $250 to $440 for associates, and $600 to $825 for partners. (Dkt. No. 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 331-2 (Eck Decl.) ¶ 55.) Makaeff's counsel argues that its rates are reasonable because the two law firms have extensive class action experience, and their hourly rates are comparable to those that have been previously approved by this Court and in this District in class action settlements. (Dkt. No. 331 at 14-15; Dkt. No. 331-1 (Jensen Decl., Ex. 4-7); Dkt. No. 331-2 (Eck Decl., Ex. 3-4.) Makaeff's counsel also points to the National Law Journal's annual large law firm rate survey, which does not list any San Diego law firms for 2013, and lists only one San Diego law firm, Luce Forward Hamilton & Scripps LLC ("Luce Forward"), for 2007, who at that time charged associate rates of $220 to $450 per hour, and partner rates of $325 to $725 per hour. (Dkt. No. 331 at 14; Dkt. No. 331-1 (Jensen Decl., Ex. 3) at 120.) Makaeffs counsel contends its rates are within this range, given that the survey rates are from seven years ago. (Dkt. No. 331 at 14.) Further, Makaeffs counsel argues that even if their rates are above average for the Southern District, **[*13]** it is justified by their credentials, track record and the contingent nature of the litigation. (*Id.* at 14-15.)

Trump University argues that Makaeffs counsel's rates are unreasonable and should be reduced to a blended rate of $300 per hour. (Dkt. No. 335 at 18-

---

[5] Trump University also filed evidentiary objections to the original Declarations of Rachel L. Jensen, Amber L. Eck, Carol A. Sobel, Eric Alan Issacson, and Karl Olson in support of Makaeffs Bill of Fees and Costs. (Dkt. Nos. 335-2, 335-3, 335-4, 335-5 and 335-6.) Makaeff argues that the objections are "not well-taken." (Dkt. No. 336 at n.1.) The Court notes the objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent the evidence is not proper, the Court did not consider it.

21.) Trump University points to Makaeffs own submission of a "Real Rate Report Snapshot," which lists for 2012: (1) San Diego average hourly rates of $278.30 for associates, and $443.69 for partners; (2) law firms of 101-250 attorneys average hourly rates of $277.81 for associates, and $422.35 for partners; (3) San Diego partner average hourly rates of $483.88 for fewer than 21 years experience; (4) San Diego associate average hourly rates of $318.52 for three to fewer than seven years experience; and (5) San Diego litigation average hourly rates of $197.88 for associates, and $279.03 for partners. (Dkt. No. 331-4 (Olson Decl., Ex. A) at 27, 29, 33, 37, 62.) Trump University also notes that Makaeffs own expert declares that her counsel's rates "appear to be higher than the average billing rates in San Diego." (*Id.* ¶ 14.) In addition, Trump University argues that Makaeffs counsel's rates should be reduced because her counsel admits that they **[*14]** had no experience with anti-SLAPP motions, and because she was improperly staffed with too many partners working on a simple motion. (Dkt. No. 335 at 19.) Trump University further relies on other cases in this District awarding attorney's fees for anti-SLAPP motions which used lower hourly rates. (*Id.* at 19-20.) *See, e.g., Ravet* v. *Stern*, No. 07-cv-31-JLS (CAB), 2010 U.S. Dist. LEXIS 79589, 2010 WL 3076290, at *5 (S.D. Cal. Aug. 6, 2010) (finding $350 hourly rate reasonable for anti-SLAPP motion based on attorney declarations, "the complex and lengthy nature of this case, and the Court's familiarity of the rates charged in the San Diego community").

The Court determines that Makaeff has produced satisfactory evidence that the hourly rates for its associates and partners are reasonable. The hourly rates are consistent with Luce Forward's 2007 rates in the National Law Journal survey, with those previously approved by this Court and in this District in class action settlements, and with this Court's familiarity of the rates charged in the San Diego community. Trump University's reliance on the average rates in the Real Rate Report Snapshot survey and other anti-SLAPP motion cases are

misplaced given the complex and lengthy nature of the anti-SLAPP motion in the instant case. Makaeff **[*15]** has also provided the declaration of an attorney with extensive experience with anti-SLAPP motions who opines that "the experience, credentials, and effectiveness of Makaeff's counsel in this case justify above-average billing rates." (Dkt. No. 331-4 (Olson Decl.)¶ 14.) As such, the Court finds that the associate and partner rates charged by Makaeff are reasonable.

However, the Court determines that Makaeff has failed to produce satisfactory evidence to support its requested rates for staff attorneys and paralegals. Makaeff seeks hourly rates of $350 for "staff attorneys" and ranging from $250 to $295 for paralegals. (Dkt. No. 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 2.)[6] Makaeff has not provided sufficient evidence of the prevailing market rates for staff attorneys and paralegals in this District. The only supporting evidence the Court located in the Makaeff's filings regarding prevailing rates in this District was that in prior class action settlements (which used the common fund approach rather than the lodestar approach), Makaeff's counsel submitted hourly rates of $380 for a "project attorney" and $280 for a "paralegal / law clerk" in one action, and $175 for **[*16]** a paralegal in two other actions. (Dkt. No. 331-1 (Jensen Decl. Ex. 7) at 211 ¶ 54; Dkt. No. 331-2 (Eck Decl. Ex. 3-4)at 46 ¶ 3, 60 ¶ 6.) There is also some evidence regarding national rates for staff attorneys and paralegals, but it is Makaeff's burden to show prevailing rates in this District. (Dkt. No. 331-1 (Jensen Decl. Ex. 2) at 98, 100; Dkt. No. 331-4 (Olson Decl. Ex. A) at 22.)

In addition, Makaeff has not provided any evidence as to the background and experience of the staff attorneys or paralegals, which might allow the Court to conduct an independent review to determine the prevailing rate. For example, in *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*,

---

[6] The Court notes that Ms. Eck's initial declaration omitted the $125 in paralegal fees. (Dkt. No. 331-2 (Eck. Decl.) ¶ 55.)

No. 06-cv-1848-H (POR), 2009 U.S. Dist. LEXIS 4005, 2009 WL 160235, at * 4 (S.D. Cal. Jan. 20, 2009), the court concluded that $90 to $210 per hour was reasonable for paralegal work. However, $90 to $210 per hour is a wide range depending on the education, skill and experience of the particular paralegal. Here, Makaeff offers no information or documentation justifying the rates for the staff attorneys and paralegals, such as a curriculum vitae, resume, or description of the individual's [*17] educational background or litigation experience. For instance, for the staff attorneys, there is no indication whether they are admitted to practice law in California, and if so when. In the absence of any evidence as to the background and experience of the staff attorneys and paralegals, the Court is unable to determine the prevailing rate.

Therefore, because Makaeff has failed to carry her burden to demonstrate that the staff attorney and paralegal hourly rates are reasonable, the Court **DENIES** Makaeff's request for staff attorney and paralegal fees. *See Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-cv-541-GPC (WVG), 2014 U.S. Dist. LEXIS 167563, 2014 WL 6851612, at *6 (S.D. Cal. Dec. 3, 2014) (denying paralegal fees because insufficient facts were presented as to the paralegal hourly rate); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-cv-419-GPC (WVG), 2014 U.S. Dist. LEXIS 151263, 2014 WL 5438532, at *5 (S.D. Cal. Oct. 24, 2014) (same); *J&J Sports Prods., Inc. v. Ortiz*, No. 12-cv-05766-LHK, 2014 U.S. Dist. LEXIS 39485, 2014 WL 1266267, at *3-4 (N.D. Cal. Mar. 24, 2014) (denying attorney's fees, including for "research attorney, "because plaintiff failed to provide evidence of prevailing market rates or attorneys' experience).

In sum, the Court concludes that Makaeff has shown that the hourly rates for associates and partners are reasonable, but has not shown that the staff attorney and paralegal hourly rates [*18] are reasonable. Accordingly, the Court **EXCLUDES** the staff attorney total fees of **$121,047.50** and the

paralegal total fees of **$90,542.50**. (Dkt. No. 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 2.)

**B. Reasonable Hours Expended**

The party seeking fees bears the "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 113 Cal. Rptr. 2d 625, 649 (Ct. App. 2001) (internal quotation marks and citation omitted). Although "it is not necessary to provide detailed billing time sheets to support an award of attorney fees under the lodestar method," *Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309, 168 Cal. Rptr. 3d 40, 53 (Ct. App. 2014), the" evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 81 Cal. Rptr. 3d 866, 870(Ct. App. 2008). To that end the Court may require a prevailing party to produce records sufficient to provide "a proper basis for determining how much time was spent on particular claims." *ComputerXpress, Inc.*, 113 Cal. Rptr. 2d at 649 (internal quotation marks and citation omitted). The Court should exclude hours "'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting*Hensley*, 461 U.S. at 434).

The Court previously determined that the declarations submitted by Makaeff failed to provide enough information [*19] to ascertain if the hours expended on this case were reasonable because Makaeff's attorneys provided only a summary chart showing the total amount of hours each individual spent on the anti-SLAPP litigation, and provided no showing of the specific tasks and the time spent on each task. (Dkt. No 331-1 (Jensen Decl.) ¶ 58; Dkt. No. 331-2 (Eck. Decl.). ¶ 55; Dkt. No. 358.) As such, the Court ordered Makaeff to submit "additional briefing detailing the amount of time

each attorney spent on each task." (Dkt. No. 358 at 6.)

In response, Makaeff has provided supplemental declarations for Ms. Jensen and Ms. Eck which divide the hours spent on the anti-SLAPP litigation into twenty-five procedural categories (e.g., initial anti-SLAPP motion before the district court, district court reply brief, etc.). (Dkt. No. 364-1 (Jensen Supp. Decl.); Dkt. No. 364-2 (Eck Supp. Decl.).) Trump University argues that these supplemental declarations still fail to provide sufficient information, and that the hours sought by Makaeff are unreasonable, and should be denied or substantially reduced, for three main reasons: (1) "lumped" descriptions of tasks; (2) duplicative hours; and (3) improper staffing. (Dkt. **[*20]** No. 367.) The Court considers each of Makaeff's twenty-five procedural categories, and Trump University's arguments, to determine whether the expended hours are reasonable.

## 1. Initial Anti-SLAPP Motion Before the District Court

Makaeff's counsel states that the following amount of time was spent on the initial anti-SLAPP motion by the various attorneys:[7]

Go to table1

Go to table2

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 4.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. **[*21]** Jensen "spent several hours on the phone with other practitioners and my co-counsel to formulate our strategy," "met with our team," and "reviewed the

research memoranda, read key cases, . . . made substantial revisions to the motion, including drafting, and then . . . reviewed and revised the supporting draft declarations." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5; see also Dkt. No. 331-1 (Jensen Decl.) ¶ 15.) Ms. Roach "provid[ed] a first draft of the opening motion and the declarations." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5; see also Dkt. No. 331-1 (Jensen Decl.) ¶ 15.) Ms. Eck's "firm's" tasks involved "reviewing Trump University's counter claim; conducting extensive legal research; conversations and emails with defense counsel . . . requesting (unsuccessfully) that Trump University provide copies of the letters it contended were defamatory; conducting factual research and having numerous conversations with Tarla Makaeff regarding ascertaining the allegedly defamatory documents; and assisting Tarla Makaeff in preparing a detailed declaration." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 4; see also Dkt. No. 331-2 (Eck Decl.) ¶¶ 18-22.)

Trump University argues that these hours should be reduced **[*22]** because the descriptions lump together the time spent on multiple tasks, preventing the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 11.) For example, there is no break down of how many hours Ms. Roach spent on providing a first draft of the motion versus the declarations. (Id.) Trump University also argues that the time is duplicative, with three partners, two associates, and one staff attorney working on the motion. (Id.)

The Court agrees with Trump University that Makaeff's lumping together of time, rather than breaking down time by tasks, makes it difficult to assess whether the time spent on each discrete task was reasonable. Overall, the time spent on the initial anti-SLAPP motion seems high. The lumping together of tasks makes it hard to evaluate whether all of the time spent was necessary. For example, it is impossible to determine how much time was spent on legal research, and as a result whether such amount of time was reasonable.

---

[7] Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 84.25 staff attorney hours and 21.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 5.)

Makaeff's lumping together of multiple tasks is similar to "block billing." *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) ("'Block billing' is 'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, [**23**] rather than itemizing the time expended on specific tasks.'" (citation omitted)). Although "block billing" is "not objectionable per se," its use may obscure "the nature of some of the work claimed." *Christian Research Inst.*, 81 Cal. Rptr. 3d at 873-74. As such, courts have discretion to reduce blocked billed hours because it "makes it more difficult to determine how much time was spent on particular activities." *Welch*, 480 F.3d at 948 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971, 359 U.S. App. D.C. 237 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); *see also Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 156 Cal. Rptr. 3d 26, 55 (Ct. App. 2013) ("Trial courts retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not."). When presented with block billing in a fee request, "the trial court should exercise its discretion in assigning a reasonable percentage to the entries or simply cast them aside." *Bell v. Vista Unified Sch. Dist.*, 82 Cal. App. 4th 672, 98 Cal. Rptr. 2d 263, 275 (Ct. App. 2000). However, an across-the-board reduction on hours should not be applied to all requested hours and should instead be specific to counsel's block billed hours, and the district court should "'explain how or why . . . the reduction . . . fairly balance[s]' those hours that were actually billed in block format." [**24**] *Welch*, 480 F.3d at 948 (citation omitted).

The Court determines that a 20 percent reduction is warranted for the hours spent on the initial anti-SLAPP motion because the lumping together of tasks makes it difficult to evaluate whether a reasonable amount of time was expended. In *Welch*, the Ninth Circuit approved of a 20 percent fee reduction for block billing because a California

State Bar Committee report concluded that block billing "may increase time by 10% to 30%" and 20 percent was in the "middle range." *Welch*, 480 F.3d at 948. Similarly here, the Court finds a 20 percent reduction warranted.[9]

The Court also excludes Ms. Zeldes's and Mr. Olsen's time because there is no clear indication what tasks they performed.

Accordingly, the Court **EXCLUDES $19,656.00** in fees for the initial anti-SLAPP motion.

## 2. District Court Reply Brief

Makaeff's counsel states that the following amount of time was spent on the district court reply brief by the various attorneys:[10]

Go to table3

Go to table4

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 5.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen "reviewed and edited Makaeff's supplemental declaration drafted by co-counsel." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6; *see also* [**26**] Dkt. No.

---

[9] The Court notes that Makaeff has offered to provide additional information to the Court, including the underlying time entries and records. (Dkt. No. 364 at 9 n.5; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 3; Dkt. No. 364-2 (Eck Supp. Decl. ¶ 35.) However, the Court has already generously provided Makaeff two opportunities to offer sufficient evidence. Moreover, the burden of culling sufficient information from contemporaneous records properly rests with the fee applicant, not the Court. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1327 (C.D. Cal. 1977) ("The burden is clearly on counsel to file adequately-documented applications for fees and those who fail to meet that burden do so at their own risk."). [**25**] As such, the Court will not entertain Makaeff's offer to provide additional information.

[10] Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 43.25 staff attorney hours and 16.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6.)

331-1 (Jensen Decl.) ¶ 17.) Ms. Roach "drafted the reply brief." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 6; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 17.) Ms. Eck's tasks involved "reviewing Trump University's Opposition to our Anti-SLAPP motion; conducting extensive legal research regarding the issues involved; numerous conversations with Makaeff regarding relevant facts; review of documents relating to the Bank of America letter and Better Business Bureau ('BBB') letter that Trump University produced for the first time, attached to their opposition; and assisting Makaeff in preparing a detailed supplemental declaration." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 5; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 23-24.)

Trump University argues that these hours should be reduced because Ms. Eck has provided a lumped description of her numerous tasks, making it difficult to determine whether the hours spent were reasonable. (Dkt. No. 367 at 12.) In addition, Trump University argues that there appears to be duplication of efforts because two partners worked on Makaeff's declaration, and Ms. Eck spent time "conducting extensive legal research" at the same time that a staff attorney was conducting legal research. (*Id.*)

The Court agrees with Trump University that Ms. Eck's hours should be reduced due to the lumping together of tasks, which makes it difficult for the Court to determine if the hours spent are reasonable. As such, for the reasons discussed above, the Court applies a 20 percent reduction to Ms. Eck's hours. *See Welch*, 480 F.3d at 948. However, the Court does not reduce Ms. Jensen's and Ms. Roach's hours.

Accordingly, the Court **EXCLUDES $3,726.00** in fees for the district court reply brief.

### 3. Opposition to Motion to Strike

Makaeff's counsel states that [*27] the following amount of time was spent on the opposition to Trump University's motion to strike by the various attorneys:[11]

⊞ Go to table5

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 7; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 6.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen states that her "firm took the lead in researching and drafting the opposition brief." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 7; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 18.) Ms. Eck states that "we were required to research, prepare, and file an Opposition to the motion to strike." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 6; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 25.)

Trump University argues that these hours should be reduced because the descriptions lump together the time spent on multiple tasks, preventing the Court from determining if the hours spent are **[*28]** reasonable. (Dkt. No. 367 at 12.) Trump University also argues that the time spent by two firms researching and drafting is duplicative. (*Id.*)

The Court agrees with Trump University that the hours should be reduced due to lumping together of tasks, which makes it difficult for the Court to determine if the hours spent are reasonable. For example, Ms. Jensen states that her counsel at her firm "took the lead," and yet Ms. Eck's firm spent over twice as much time on the opposition. Moreover, Ms. Eck vaguely describes tasks that "we" performed, even though she is the only individual from her firm who expended hours. As such, the Court applies a 20 percent reduction to the hours expended on the opposition to the motion to strike. *See Welch*, 480 F.3d at 948.

In addition, the Court excludes Ms. Roach's hours because there is no clear indication what tasks she

---

[11] Because it has already excluded all paralegal fees, the Court does not include the 4.25 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 7.)

Case 3:16-cv-01985-BEN-BGS Document 445-5 Filed 04/04/25 PageID.18495
Page 73 of 108
2015 U.S. Dist. LEXIS 46749, *28

Page 11 of 35

preformed.

Accordingly, the Court **EXCLUDES $2,533.50** in fees for the opposition to the motion to strike.

### 4. District Court Hearing and Preparation

Makaeff's counsel states that the following amount of time was spent on the district court hearing regarding the anti-SLAPP motion by the various attorneys:

Go to table6

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 8; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 7.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen's "firm assisted co-counsel with preparation for the hearing and reviewed Trump's sur-reply." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 8; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 19.) Ms. Eck, who "personally argued" the anti-SLAPP motion, "spent a substantial amount of time preparing for the hearing, which included: additional research regarding the issues involved; additional review and analysis of all cases cited in our briefs and Trump University's briefs; and further conversations with Makaeff." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 7; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 26.) Additional attorneys from both firms attended the hearing, but Makaeff is not seeking reimbursement for their time. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 8; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 7.)

Trump University argues that the hours should be reduced because the lumping together of tasks makes it **[*30]** impossible to assess the reasonableness of hours, and there appears to be duplication of efforts, with two attorneys preparing a third attorney for the hearing. (Dkt. No. 367 at 12-13.)

The Court agrees with Trump University that the

hours should be reduced due to lumping together of tasks, which makes it difficult for the Court to determine if the hours spent are reasonable. For example, Ms. Eck's declaration lumps together the time for additional research, review of cases, conversations with Makaeff, and the actual argument. As such, the Court applies a 20 percent reduction to the hours expended on the district court hearing and preparation. *See Welch*, 480 F.3d at 948.

In addition, the Court excludes Ms. Roach's hours because there is no clear indication what tasks she preformed.

Accordingly, the Court **EXCLUDES $3,768.00** in fees for the district court hearing and preparation.

### 5. Motion for Reconsideration

Makaeff's counsel states that the following amount of time was spent on the motion for reconsideration by the various attorneys:[12]

Go to table7

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 9; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 8.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Mr. Isaacson, Ms. Jensen, and Ms. Roach all helped revise the motion. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 9; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 20.) Ms. Eck "spent a considerable amount of time researching for the motion for reconsideration, including: reviewing treatises on defamation and Anti-SLAPP motions; reading a large number of cases; and speaking with numerous first amendment and Anti-SLAPP experts, professors, and consultants." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 8; see also Dkt. No. 331-2 (Eck Decl.) ¶¶

---

[12] Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 22.00 staff attorney hours and 17.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 9.)

27-28.) In addition, "[w]e then spent additional time preparing" the motion. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 8.)

Trump University argues that these hours should be reduced because the descriptions lump together time spent **[*32]** on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 13.) Trump University also argues that the hours are duplicative, because it took four partners, an associate, and a staff attorney to prepare a simple, and ultimately unsuccessful, motion for reconsideration. (*Id.*)

The Court excludes Ms. Zeldes's time because there is no indication what tasks she performed. In addition, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable. As such, the Court applies a 20 percent reduction to the other hours expended on the motion for reconsideration. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $13,933.50** in fees for the motion for reconsideration.

### 6. Motion for Reconsideration Reply Brief

Makaeff's counsel states that the following amount of time was spent on the motion for reconsideration reply brief by the various attorneys:[13]

[⊞ Go to table8](#)

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 10; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 9.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen declares that "[w]e . . . reviewed and revised the

reply brief drafted by co-counsel." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 10; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 21). Ms. Eck declares that "[p]reparation of the Reply in support of our Motion for Reconsideration involved: reviewing and analyzing Defendant's motion for reconsideration . . . , including all cases cited therein; additional legal research; additional consultation with Anti-SLAPP experts; and preparation of the Reply." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 9.)

Trump University argues the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 14.) Trump University also argues that Ms. Jensen's declaration vaguely states that "we" reviewed and revised the reply brief, which evidences duplicative efforts. **[*34]** (*Id.*)

The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable. As such, the Court applies a 20 percent reduction to the hours expended on the motion for reconsideration reply brief. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $4,191.00** in fees for the motion for reconsideration reply brief.

### 7. Appeal Opening Brief

Makaeffs counsel states that the following amount of time was spent on the appeal opening brief by the various attorneys:[14]

[⊞ Go to table9](#)

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 11; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 10.)

---

[13] Because it has already **[*33]** excluded all staff attorney and paralegal fees, the Court does not include the 24.00 staff attorney hours and 16.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 10.)

[14] Because it has already excluded all paralegal fees, the Court does not include the 77.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 11.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Mr. Isaacson "took the lead on [*35] researching and briefing the appeal," while Ms. Jensen "reviewed and revised the brief and request for judicial notice." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 11; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 22.) Mr. Isaacson declares that he read a variety of legal research, consulted with outside attorneys, and briefed the appeal. (Dkt. No. 331-3 (Isaacson Decl.) ¶¶ 14-15, 19, 22.) Ms. Eck declares that: "I and my firm assisted in research, preparation, and revision of the appellate brief, and in compiling Trump University and Donald Trump articles, letters, emails, advertisements, website snapshots, and other such documents for use on appeal." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 10; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 35-36.)

Trump University argues that these hours should be reduced for several reasons. (Dkt. No. 367 at 14.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, Trump University argues that there is duplication, with Ms. Jensen and Ms. Eck reviewing the work of Mr. Isaacson. (*Id.*) Third, Trump University argues that there was improper [*36] staffing, with Ms. Eck, a partner, working on relatively simple tasks. (*Id.*) Finally, Trump University argues that Mr. Isaacson spent excessive time on the opening brief, because it was unnecessary for him to consult with outside attorneys and read books on Trump University and Donald Trump. (Dkt. No. 367-2 at 79.)

The Court excludes Ms. Frame's and Ms. Zeldes's time because there is no indication what tasks they performed. The Court also excludes Ms. Eck's time because her tasks were either duplicative of other attorneys, or improper tasks for a high billing partner. For Mr. Isaacson and Ms. Jensen, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable, and as

such, applies a 20 percent reduction to their hours. *See* Welch, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $66,853.75** in fees for the appeal opening brief.

## 8. Opposition to Motion to Stay

Makaeffs counsel states that the following amount of time was spent on the opposition to Trump University's motion to stay the action pending appeal by the various attorneys:[15]

⊞ Go to table10

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 12; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 13.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Eck spoke with Trump University's counsel regarding withdrawing the motion, and then "research[ed] and draft[ed] [the] opposition." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 12; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 32-34.) Ms. Jensen and Mr. Isaacson "reviewed and edited the opposition brief prepared by co-counsel." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 12; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 23.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 15.) Trump University also argues that the time is duplicative, with two partners reviewing the work of a third partner. (*Id.*)

The Court agrees with Trump University [*38] that some of the hours are duplicative, and it was unnecessary for the opposition drafted by one partner to be reviewed by two other partners. As

---

[15] Because it has already excluded all paralegal fees, the Court does not include the 13.75 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 12.)

such, the Court excludes Ms. Jensen's hours. For Ms. Eck and Mr. Isaacson, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable, and therefore applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $10,518.75** in fees for the opposition to the motion to stay.

### 9. Ninth Circuit Settlement Conference

Makaeffs counsel states that the following amount of time was spent on the Ninth Circuit Settlement Conference by the various attorneys:

[⊞ Go to table11](#)

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 13; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 14.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Mr. Isaacson and Ms. Jensen prepared for and participated in the telephonic settlement conference. (Dkt. No. 364-1 (Jensen Supp. **[*39]** Decl.) ¶ 13.) Ms. Eck attended the conference, and "had conversations with Makaeff both before and after the" conference, "in order to prepare a settlement offer and to relay the results." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 14; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 31.) Ms. Eck notes that she did not charge two of the hours she spent preparing for and attending the conference. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 14.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 15.) Trump University also argues that the time is duplicative, with three partners participating in the telephonic conference. (*Id.*)

The Court agrees with Trump University that it was excessive to have three partners participating in the settlement conference, and therefore excludes Ms. Jensen's hours. The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable, and as such, applies a 20 percent reduction to the other hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES [*40] $1,947.00** in fees for the Ninth Circuit Settlement Conference.

### 10. Work with Amicus on Appeal

Makaeffs counsel states that the following amount of time was spent soliciting public support and coordinating amici and amicus briefs by the various attorneys:

[⊞ Go to table12](#)

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 14; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 16.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Mr. Isaacson, Mr. Green, and Ms. Jensen "consulted with lawyers for the American Civil Liberties Union ('ACLU') and Consumer Attorneys of California concerning issues relevant to the opening appeal brief and reply appeal brief, as well as providing feedback on amicus briefs they submitted to the Ninth Circuit and keeping amici informed of developments." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 14; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 25; Dkt. No. 331-3 (Isaacson Decl.) ¶¶ 16-18.) Ms. Eck spoke **[*41]** with attorneys for the Consumer Attorneys of California and the BBB regarding-submitting amicus briefs, reviewed amicus briefs filed by the ACLU and Consumer Attorneys of California, and communicated with amici and Makaeff regarding the briefs. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶¶ 15-16; *see also* Dkt. No. 331-2 (Eck Decl.) ¶¶ 37-38.)

Case 3:16-cv-01985-BEN-BLM    Document 405-15    Filed 04/04/25    PageID.18499
Page 77 of 108
2015 U.S. Dist. LEXIS 46749, *41

Page 15 of 35

Trump University argues that the hours should be denied entirely as unnecessary, duplicative, and excessive. (Dkt. No. 367 at 16.) Trump University questions why it took four partners to consult with amici. (*Id.*) Further, the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*)

The Court agrees with Trump University that much of the time appears duplicative, which is exacerbated by the failure to differentiate how much time was spent on different tasks by different attorneys. For example, it is unclear whether all four partners consulted with the Consumer Attorneys of California. Therefore, the Court excludes the hours of Mr. Green and Ms. Jensen as duplicative. The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court **[*42]** to evaluate whether the hours of Mr. Isaacson and Ms. Eck are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $10,821.75** in fees for working with amicus on appeal.

### 11. Request for Judicial Notice Reply Brief

Makaeff's counsel states that the following amount of time was spent on the request for judicial notice reply brief by the various attorneys:[16]

⊞Go to table13

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 15.)

Ms. Jensen's supplemental declaration provides the following additional-descriptions of the tasks performed. Mr. Isaacson "took the lead on researching and drafting the request for judicial notice reply brief." (Dkt. No. 364-1 (Jensen Supp.

Decl.) ¶ 15; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 26.) Mr. Merrick and Ms. Jensen reviewed the brief. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 15.)

Trump University argues that these hours **[*43]** should be reduced for several reasons. (Dkt. No. 367 at 16.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, Trump University argues that there was improper staffing, with an $825 per hour partner researching and drafting a simple request for judicial notice reply brief. (*Id.*) Third, Trump University argues that the time is duplicative in having two partners review the work of a third partner. (*Id.*)

The Court agrees with Trump University that Mr. Merrick's and Ms. Jensen's time appears duplicative, and therefore excludes their time. The Court also agrees with Trump University that Mr. Isaacson's hours seem excessive and improperly staffed for a request for judicial notice reply brief. As such, the Court reduces Mr. Isaacson's time by 50 percent, which would make his hourly rate more in line with that of an associate.

Accordingly, the Court **EXCLUDES $11,610.00** in fees related to the request for judicial notice reply brief.

### 12. Appeal Reply Brief

Makaeff's counsel states that the following amount of time was spent on the appeal reply brief by the various **[*44]** attorneys:[17]

⊞Go to table14

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 16; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 17.)

Ms. Jensen's and Ms. Eck's supplemental

---

[16] Because it has already excluded all paralegal fees, the Court does not include the 8.00 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 15.)

[17] Because it has already excluded all paralegal fees, the Court does not include the 33.00 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 16.)

declarations provide the following additional descriptions of the tasks performed. Mr. Isaacson "took the lead in researching and preparing the reply brief, with research assistance from Ms. Frame." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 16; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 27.) Mr. Merrick "also assisted with reviewing and revising the brief." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 16.) Ms. Eck's time reflects reviewing and revising both the appeal reply brief and the supplemental request for judicial notice. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 17; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 39.)

Trump University argues that these hours should be reduced for several reasons. (Dkt. No. 367 at 16-17.) [*45] First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, Trump University argues that there was improper staffing, with a $685 per hour partner reviewing the work of an $825 per hour partner. (*Id.* at 17.) Third, Trump University argues that the time is duplicative because two partners reviewed the work of a third partner, and because Ms. Frame and Mr. Isaacson both conducted research. (*Id.*)

The Court agrees with Trump University that Mr. Merrick's and Ms. Eck's hours, reviewing and revising Mr. Isaacson's work, reflect improper staffing and duplication of effort. As such, the Court excludes their hours. The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Mr. Isaacson and Ms. Frame are reasonable, and therefore, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $19,751.00** in fees related to the appeal reply brief.

### 13. Supplemental Request for Judicial Notice

Makaeff's counsel states that the following amount

of time was spent on the supplemental [*46] request for judicial notice by the various attorneys:[18]

⊞ Go to table15

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 17.)

Ms. Jensen's supplemental declaration provides the following additional descriptions of the tasks performed. Mr. Isaacson "researched and prepared Makaeff's supplemental request for judicial notice and reply." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 17; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 28.) There is no mention of Mr. Merrick's tasks.

Trump University argues that these hours should be reduced for several reasons. (Dkt. No. 367 at 17.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, Trump University argues that there was improper staffing, with an $825 per hour partner researching and drafting a supplemental request for judicial notice. (*Id.*) Third, Trump University argues [*47] that there is no explanation for why Mr. Merrick needed to spend any time on the supplemental request. (*Id.*)

The Court agrees with Trump University that Mr. Merrick's time should be excluded because there is no indication what tasks he performed. The Court also agrees with Trump University that Mr. Isaacson's hours seem excessive and improperly staffed for a supplemental request for judicial notice. As such, the Court reduces Mr. Isaacson's time by 50 percent, which would make his hourly rate more in line with that of an associate.

Accordingly, the Court **EXCLUDES $6,082.50** in fees related to the supplemental request for judicial notice.

---

[18] Because it has already excluded all paralegal fees, the Court does not include the 7.25 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 17.)

## 14. Ninth Circuit Appeal Strategy

Makaeff's counsel states that the following amount of time was spent by the various attorneys on strategy for the Ninth Circuit appeal:

⊞ Go to table16

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 18.)

Ms. Jensen's supplemental declaration provides the following additional descriptions of the tasks performed. Mr. Isaacson and Ms. Jensen spent a total of two hours "strategizing and thinking about our approach to the anti-SLAPP [*48] litigation that does not easily fit into another category" such "as 'exploring potential avenues to bring to the Court's attention misrepresentations made by Trump's counsel." (*Id.*)

Trump University argues that these two hours should be denied entirely because the descriptions lump time together and the time is duplicative. (Dkt. No. 367 at 17.)

The Court disagrees with Trump University, and determines that these two hours were reasonably expended.

Accordingly, the Court does not exclude any fees for the Ninth Circuit Appeal strategy.

## 15. Ninth Circuit Hearing

Makaeff's counsel states that the following amount of time was spent on the Ninth Circuit hearing by the various attorneys:[19]

⊞ Go to table17

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 19.)

Ms. Jensen's and Ms. Eck's supplemental [*49]

declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. According to Ms. Jensen, Mr. Isaacson "spent a substantial amount of time over the course of weeks prepar[ing] for the oral argument, including holding a mock argument in which two attorneys from [her] firm participated."[20] (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 29.) Mr. Isaacson declares that he "devot[ed] many hours to" "preparing for oral argument" and "personally argued the appeal." (Dkt. No. 331-3 (Isaacson Decl.) ¶ 19.) Ms. Eck's "firm spent a total of one hour talking and e-mailing with Makaeff over the course of three separate days in preparation for the hearing, and one hour assisting in preparation for the Ninth Circuit hearing." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 18; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 35.) Makaeff only seeks to recoup Mr. Isaacson's time and expenses for attending the hearing itself, even though additional attorneys also attended the hearing. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 19; see also Dkt. No. 331-1 (Jensen Decl.) ¶ 30.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 18.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) For example, there is no indication how much of Mr. Isaacson's time was spent on the actual argument, the mock argument, and other preparation. (*Id.*) Second, Trump University argues that Mr. Isaacson's time appears excessive, and that it should not have taken him several weeks to prepare. (*Id.*) Third, Trump University contends that a mock argument was unnecessary for an experienced attorney like Mr. Isaacson, and that participation in the mock argument should not be billed as it is educational.[21]

---

[19] Because it has already excluded all paralegal fees, the Court does not include the 3.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 19.)

---

[20] Ms. Eck and Ms. Labrencis also participated [*50] in the mock argument, but have not charged for this time. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 19.)

[21] Makaeff counters that it is precisely because of Mr. Isaacson's

(*Id.; see also* Dkt. No. 335 at 18.) Finally, Trump University argues that Ms. Labrencis's time is duplicative. (*Id.*)

The Court agrees **[*51]** with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable. As such, the Court applies a 20 percent reduction to the hours expended on the Ninth Circuit hearing. *See Welch*, 480 F.3d at 948. The Court disagrees with Trump University that a mock argument was unnecessary to prepare for the hearing.

Accordingly, the Court **EXCLUDES $13,705.00** in fees related to the Ninth Circuit hearing.

### 16. Research Regarding Possible 28(j) Letter

Makaeff's counsel states that the following amount of time was spent on researching submitting a letter under Federal Rule of Appellate Procedure 28(j):

⊞ Go to table18

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 20.)

Ms. Jensen's supplemental declaration provides the following additional descriptions of the tasks performed: "My firm considered submitting a Rule 28(j) letter to the Ninth Circuit with supplemental authorities that had come to our attention. We also considered sending a letter to the Ninth Circuit correcting misrepresentations made to the Court. However, we ultimately decided against submitting such a letter. . . . Mr. Isaacson spent [time] reviewing the record and researching a **[*52]** possible Rule 28(j) letter to submit to the Ninth Circuit." (*Id.*)

Trump University argues that these hours should be denied entirely because the descriptions lump time together and the time appears excessive and unnecessary. (Dkt. No. 367 at 18.)

The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours are reasonable. The Court also agrees that these hours appear excessive and unnecessary. In addition, these hours appear duplicative because the Ninth Circuit appeal strategy category already included "exploring potential avenues to bring to the Court's attention misrepresentations made by Trump's counsel." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 18.) As such, the Court excludes Mr. Isaacson's hours.

Accordingly, the Court **EXCLUDES $6,187.50** in fees related to the Ninth Circuit hearing.

### 17. Opposition to Petition for Rehearing *En Banc*

Makaeff's counsel states that the following amount of time was spent on the opposition to Trump University's petition for rehearing *en banc* by the various attorneys:[22]

⊞ Go to table19

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 21; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 20.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Ms. Jensen declares that Mr. "Isaacson, with the assistance of Ms. Frame and [a staff attorney], drafted an opposition that was reviewed and revised by additional attorneys at my firm, including myself." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 21; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 32.) Mr. Isaacson declares that: "[The fact that] separate concurring opinions both urged *en banc* rehearing meant that I would have to devote considerable time to review the law of federal courts and federal jurisdiction, and **[*54]** as well as

---

experience that he knew that a mock argument is the best way to prepare for a Ninth Circuit oral argument. (Dkt. No. 364 at 17.)

22 Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 84.55 staff attorney hours and 11.00 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 21.)

the collateral-order doctrine — none of which had previously been at issue in the litigation." (Dkt. No. 331-3 (Isaacson Decl.) ¶ 21.) "Because the concurring opinions and Trump University's petition for en banc rehearing focused on questions of constitutional law and federal jurisdiction that had never been at issue in the litigation, I could not rely on my previous work in the case, but instead had to review and digest a further vast body of law in order to effectively oppose en banc rehearing." (*Id.*) Ms. Eck "communicated with Makaeff on several occasions regarding the Appeal and the en banc petition" and her "firm assisted in researching and preparing the opposition to the en banc petition." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 20; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 41.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 18-19.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, there appears to be duplication of efforts, with several attorneys researching and drafting the opposition. (*Id.* at 19.) [*55] Third, Trump University argues that there is no description of what was done by Mr. Green and Mr. Merrick. (*Id.*)

The Court excludes the time for Mr. Green, Mr. Merrick, Ms. Zeldes, and Ms. Labrencis because there is no clear indication what tasks they performed. The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the other hours are reasonable. As such, the Court applies a 20 percent reduction to the hours expended by Mr. Isaacson, Ms. Jensen, Ms. Frame, and Ms. Eck. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $41,529.10** in fees for the opposition to the petition for rehearing *en banc*.

## 18. Work with Amicus on *En Banc* Opposition

Makaeff's counsel states that the following amount of time was spent working with amicus on the opposition to Trump University's petition for rehearing *en banc* by the various attorneys:

⊞ Go to table20

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 22; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 21.)

Ms. Jensen's and Ms. Eck's [*56] supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Ms. Jensen declares that: [m]y partners also met with lawyers from the ACLU and Consumer Attorneys of California and with a number of anti-SLAPP practitioners concerning strategy, soliciting public support, and considering the submission of additional briefs in support of our opposition to the en banc petition." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 22; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 32.) Mr. Isaacson declares that he "again consulted extensively with lawyers from the ACLU and the Consumer Attorneys of California, and also with experienced practitioners specializing in Anti-SLAPP litigation," and that "[o]nce again, the Consumer Attorneys of California submitted an amicus curiae brief supporting Makaeff, this time opposing the petition for *en banc* rehearing." (Dkt. No. 331-3 (Isaacson Decl.) ¶¶ 22-23.) Ms. Eck "personally spoke with attorneys for the Consumer Attorneys and the BBB, and participated in various communications with them" regarding submitting amicus curiae briefs. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 21.)

Trump University argues that these [*57] hours should be denied entirely for several reasons. (Dkt. No. 267 at 19.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) Second, there appears to be duplication of efforts, with four partners soliciting support from amici. (*Id.*) Third, Trump University argues that there is improper staffing, with high billing partners doing the task of an associate. (*Id.*)

The Court agrees with Trump University that much of the time appears duplicative, which is exacerbated by the failure to differentiate how much time was spent on different tasks by different attorneys. For example, it is unclear whether all four partners consulted with the Consumer Attorneys of California. Therefore, the Court excludes the hours of Mr. Green and Mr. Merrick as duplicative. The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Mr. Isaacson and Ms. Eck are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $5,802.25** in fees for working with [*58] amicus on the *en banc* opposition.

### 19. Strategy Regarding the Remand and the Motion to Transfer Fee Motion to District Court

Makaeff's counsel states that the following amount of time was spent on strategizing about the remand and researching the best vehicle for addressing attorney's fees by the various attorneys:[23]

⊞Go to table21

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 22.)

Ms. Jensen's and Ms. Eck's supplemental declarations, as well as Mr. Isaacson's declaration, provide the following additional descriptions of the tasks performed. Mr. Isaacson "researched, drafted, and filed a motion asking the Ninth Circuit to transfer jurisdiction over the award of those fees to this Court." (Dkt. No. 331-3 (Isaacson Decl.) ¶ 25; *see also* Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23; [*59] Dkt. No. 331-1 (Jensen Decl.) ¶ 35.) Mr. Green reviewed the motion "after reading some

relevant opinions." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23.) Ms. Jensen "spoke to Mr. Isaacson and reviewed the applicable rules and commented on the strategy and the draft as well." (*Id.*) Ms. Eck "researched the logistics for submitting a motion for fees and transferring the issue of the fee motion to the District Court." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 22.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 19-20.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.* at 19.) Second, there appears to be duplication of efforts. (*Id.* at 20.) For example, Ms. Eck was conducting research at the same time as Mr. Isaacson and a staff attorney. (*Id.*) Third, Trump University argues that there was improper staffing because the drafting by Mr. Isaacson could have been done by a lower rate biller. (*Id.*)

The Court agrees that the hours by the four partners appear duplicative. As such, the Court excludes the hours of Mr. Green, Ms. Jensen, and Ms. Eck. The [*60] Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Mr. Isaacson are reasonable, and as such, applies a 20 percent reduction to his hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $9,867.00** in fees for the strategy regarding remand and motion to transfer fee motion to district court.

### 20. Makaeff Deposition Preparation and Document Production

Makaeff's counsel states that the following amount of time was spent preparing Makaeff for an additional deposition and further discovery by the various attorneys:[24]

---

[23] Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 30.80 staff attorney hours and 3.75 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 23.)

[24] Because it has already excluded all staff attorney and paralegal

⊞ Go to table22

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 24; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 26.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional [*61] descriptions of the tasks performed. Ms. Jensen declares that she and Mr. Forge performed the following tasks "in connection with the negotiation of the Makaeff deposition terms and conditions, strategizing, traveling back and forth to Los Angeles, preparing Ms. Makaeff for her deposition, reviewing her anti-SLAPP documents and producing them to Trump's counsel":

> My colleague Jason Forge and I had calls with Ms. Makaeff to discuss sitting for deposition again, had calls with our co-counsel Ms. Eck about the same, calls and emails with Trump's counsel at first objecting to Ms. Makaeff sitting for another deposition session, calling Judge Gallo's chambers, and then spending hours negotiating the terms and conditions of the deposition. Thereafter, I spent time strategizing about the deposition and helping Ms. Makaeff draft a supplemental declaration. After we finished a draft, Mr. Forge reviewed the draft declaration and provided comments. Then, my partner Jason Forge and I both spent separate days traveling to Los Angeles and meeting with Ms. Makaeff to prepare and defend her for the deposition. In the course of those meetings, Ms. Makaeff provided documents that were relevant to the [*62] SLAPP proceedings (which were previously stayed before the matter was remanded to this Court). I spent a day reviewing all the potentially responsive documents before they were produced, and finalized Makaeff's supplemental declaration.

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 24; see also Dkt. No. 331-1 (Jensen Decl.) ¶ 37.) Ms. Eck declares that "the Court . . . permitted additional

discovery on the issue of actual malice" and "[w]e spent a substantial amount of time conferring with Makaeff and compiling, reviewing, and producing all potentially responsive documents, including hundreds of pages of e-mails and other documents that she discovered upon further review of her files." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 23; see also Dkt. No. 331-2 (Eck Decl.) ¶ 46.) In addition, "we spent numerous hours over the course of a week to prepare Makaeff for her deposition."[25] (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 25; see also Dkt. No. 331-2 (Eck Decl.) ¶ 45.)

Trump University argues that the hours should be reduced [*63] for several reasons. (Dkt. No. 367 at 20.) First, Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Id.) For example, there is no break down of how much time was spent on negotiations, deposition preparation of Makaeff, travel time, etc. (Id.) Second, there appears to be duplication of efforts. (Id.) Third, Trump University argues that the hours were excessive because the deposition was limited to two hours and the issue of "actual malice," and Makaeff was familiar with the deposition process having already sat for three depositions. (Id.)

The Court agrees with Trump University that much of the time appears duplicative and excessive, which is exacerbated by the failure to differentiate how much time was spent on different tasks by different attorneys. For example, it is unclear why it was necessary for at least three attorneys, two of which had to travel to Los Angeles, to prepare Makaeff for her two-hour deposition. Therefore, the Court excludes the time of Mr. Forge. The Court also excludes the time of Mr. Olsen and Ms. Labrencis because it is unclear what tasks they [*64] preformed. In addition, the Court agrees with Trump University that the lumping together of

---

fees, the Court does not include the 27.25 staff attorney hours and 24.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 24.)

[25] Ms. Eck notes that she has not charged for her time in preparing for the deposition of Makaeff's former boyfriend, which was later taken off-calendar. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 26.)

tasks makes it difficult for the Court to evaluate whether the hours of Ms. Jensen and Ms. Eck are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $30,346.00** in fees for Makaeff deposition preparation and document production.

### 21. Supplemental Brief Regarding Actual Malice

Makaeff's counsel states that the following amount of time was spent on this Court's request for supplemental briefing on the issue of actual malice by the various attorneys:[26]

[⊞] Go to table23

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 25; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 27.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks **[*65]** performed. Ms. Jensen personally drafted the supplemental brief, and Mr. Forge and Mr. Isaacson reviewed it. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 25; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 38; Dkt. No. 331-3 (Isaacson Decl.) ¶ 27.) Ms. Eck "spent a considerable amount of time preparing the supplemental brief and supplemental declaration of Makaeff, including legal research, factual research and review of relevant documents, and communications with Anti-SLAPP and actual malice experts." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 27; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 43.) In addition, Ms. Eck "had numerous conversations with Makaeff throughout the briefing process." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 27.)

Trump University argues that the hours should be reduced for several reasons. (Dkt. No. 367 at 20-

21.) Trump University argues that the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (*Id.*) In addition, Trump University argues that there is duplicative, excessive, and overstaffed time, with two partners reviewing Ms. Jensen's brief, and Ms. Eck also working on the supplemental brief. (*Id.*)

The Court **[*66]** agrees with Trump University that Mr. Isaacson's and Mr. Forge's time is duplicative with that of Ms. Jensen and Ms. Eck, and therefore excludes their time. The Court also agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Eck are reasonable, and as such, applies a 20 percent reduction to her hours. *See Welch*, 480 F.3d at 948. The Court does not reduce the hours of Ms. Jensen because all of her time was spent on the single task of drafting.

Accordingly, the Court **EXCLUDES $13,551.50** in fees for the supplemental brief regarding actual malice.

### 22. Supplemental Reply Brief Regarding Actual Malice

Makaeff's counsel states that the following amount of time was spent on the supplemental reply brief regarding actual malice by the various attorneys:[27]

[⊞] Go to table24

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 26; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 28.)

Ms. Jensen's and Ms. Eck's supplemental declarations provide the following additional descriptions of the tasks performed. Ms. Jensen researched and prepared the supplemental reply brief, and Mr. Isaacson reviewed it and commented

---

[26] Because it has already excluded all staff attorney and paralegal fees, the Court does not include the 29.75 staff attorney hours and 23.75 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 25.)

[27] Because it has already excluded all paralegal fees, the Court does not include the 12.25 paralegal hours. **[*67]** (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 26; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 28.)

on it. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 26; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 39; Dkt. No. 331-3 (Isaacson Decl.) ¶ 27.) Ms. Eck's "firm" also "researched for and prepared a Reply." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 28; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 48.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 21.) For example, there is no breakdown of how much time was spent on research versus drafting. (*Id.*) In addition, Trump University argues that Ms. Eck's time appears duplicative of Ms. Jensen's firm. (*Id.*)

The Court agrees with Trump University that Ms. Eck's time appears duplicative, which is exacerbated by the failure to differentiate how much time was spent on different tasks. Therefore, **[*68]** the Court excludes Ms. Eck's hours. The Court also excludes Mr. Olsen's hours because it is not clear what tasks he performed. The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Jensen and Mr. Isaacson are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $16,560.25** in fees for the supplemental reply brief regarding actual malice.

## 23. Hearing on Actual Malice

Makaeff's counsel states that the following amount of time was spent on the hearing regarding actual malice by the various attorneys:[28]

⊞Go to table25

---

[28] Because it has already excluded all paralegal fees, the Court does not include the 2.50 paralegal hours. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27.)

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 30.)

Ms. Jensen's and Ms. Eck's supplemental declarations **[*69]** provide the following additional descriptions of the tasks performed. Ms. Jensen prepared for oral argument, before it was rescheduled and Ms. Eck ultimately appeared at the oral argument (because Ms. Jensen was then out on maternity leave.) (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶¶ 40-41.) Mr. Isaacson and Mr. Forge assisted Ms. Eck with her preparation for the hearing. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; Dkt. No. 331-3 (Isaacson Decl.) ¶ 27.) Ms. Jensen notes that additional attorneys also attended the hearing, but they are not seeking that time. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 27; *see also* Dkt. No. 331-1 (Jensen Decl.) ¶ 41.)

Ms. Eck "spent a considerable amount of time preparing for this hearing, reviewing all of the Anti-SLAPP motions and Orders to date, a voluminous amount of case law, the four volumes of Makaeff's deposition testimony, Makaeff's several declarations, and voluminous documents and exhibits submitted by both parties." (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 29; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 49.) Ms. Eck notes that she is not seeking seven hours of her preparation time for the hearing. (Dkt. No. 364-2 (Eck **[*70]** Supp. Decl.) ¶ 29.) Ms. Zeldes and Mr. Olsen assisted in Ms. Eck's preparation for the hearing. (*Id.*) Ms. Eck argued at the hearing before this Court. (Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 30; *see also* Dkt. No. 331-2 (Eck Decl.) ¶ 50.)

Trump University argues that the hours should be reduced because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 21.) For example, there is no breakdown of how much time Ms. Eck spent preparing for the hearing, reviewing documents, and arguing at the hearing itself. (*Id.*) In addition, Trump University argues that there is a

duplication of efforts, with three partners and one associate preparing another partner arguing the motion. (*Id.*)

The Court disagrees with Trump University that the time is duplicative. However, the Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Eck are reasonable, and as such, applies a 20 percent reduction to her hours. *See Welch*, 480 F.3d at 948.

Accordingly, the Court **EXCLUDES $3,691.50** in fees for the hearing on actual malice.

### 24. Time Spent on Multiple Tasks [*71]

Makaeff's counsel states that the following amount of time was spent on "multiple tasks" by the various attorneys:

[::]Go to table26

(Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 28.)

Ms. Jensen's supplemental declaration states that these 14.25 hours pertain to multiple tasks related to the anti-SLAPP proceedings, but cannot be definitely assigned to the above procedural categories. (*Id.*) For example, Mr. Isaacson "spent time researching the potential for a Rule 28(j) letter and also preparing for 9th Circuit oral argument (which were occurring contemporaneously)." (*Id.*) Makaeff notes that she is willing to reduce her requested fees by these 14.25 hours. (Dkt. No. 364 at 11 n.6.)

Trump University argues that the hours should be denied entirely because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 21-22.) For example, there is not breakdown between how much time Mr. Isaacson spent researching versus preparing. (*Id.* at 22.) In addition, Trump University notes that the time appears duplicative of [*72] category 16 above, concerning research of

a possible 28(j) letter. (*Id.*)

The Court agrees with Trump University that these hours should be denied entirely. The vague description of "multiple tasks" related to the anti-SLAPP litigation prevents the Court from determining if these hours were reasonable. Moreover, Makaeff has stated that she is willing to omit these hours.

Accordingly, the Court **EXCLUDES $10,807.50** in fees for work on multiple tasks.

### 25. Bill of Fees and Costs

Makaeff's counsel states that the following amount of time was spent on the preparation of the Bill of Fees and Costs by the various attorneys:

[::]Go to table27

(Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 31.)

Ms. Eck states that "we spent considerable time researching and preparing the

motion, compiling all of our time records and expenses related to the Anti-SLAPP issues over the past four years, and preparing a detailed declaration setting forth our work performed in the case, time, lodestar, and expenses." (*Id.*) She states that her firm does not seek fees for additional time spent on the brief after June 27, 2014, [*73] or for time spent preparing the supplemental brief or declarations. (*Id.*) Ms. Jensen states that her firm also spent a "substantial amount of time" on the Bill of Fees and Costs, but is not claiming this time to "demonstrate the reasonableness of the requested fees." (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 28.)

Trump University argues the hours should be denied entirely because the descriptions lump together time spent on multiple tasks, which prevents the Court from determining if the hours spent are reasonable. (Dkt. No. 367 at 22.) Trump University also argues that this Court's supplemental briefing order did not explicitly invite

Makaeff to include these fees. (*Id.*)

The Court agrees with Trump University that the lumping together of tasks makes it difficult for the Court to evaluate whether the hours of Ms. Eck and Mr. Olsen are reasonable, and as such, applies a 20 percent reduction to their hours. *See Welch*, 480 F.3d at 948. The Court appreciates that Ms. Jensen's firm does not seek time for preparation of the Bill of Fees and Costs.

Accordingly, the Court **EXCLUDES $3,890.50** in fees for the preparation of Bill of Fees and Costs.

### C. Upward Multiplier

Makaeff argues that any reduction in fees should be offset **[\*74]** by an upward multiplier because this is a contingency fee case. (Dkt. No. 331 at 17-18; Dkt. No. 364 at 8, 20.) Trump University counters that no upward multiplier is justified here because, among other reasons, Makaeff's counsel are not sole practitioners, but rather a large team of high billing attorneys. (Dkt. No. 335 at 21-25; Dkt. No. 367 at 23-25.)

The California Supreme Court has held that a court may adjust the lodestar figure based on various factors, including the contingent nature of the fee award. *Ketchum*, 17 P.3d at 741. "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Id.* at 742. A contingency enhancement "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Id.* at 746.

The Court declines to apply an upward multiplier here due to the contingency fee nature of this case. The Court notes that Makaeff **[\*75]** already argued that its higher than average hourly rates were also

justified because this is a contingency case. (Dkt. No. 331 at 15.) As such, an upward multiplier would be duplicative. Moreover, the basic lodestar figure adequately compensates Makaeff's counsel, and Makaeff has not met her burden that a contingency fee enhancement is appropriate here. *See Ketchum*, 17 P.3d at 746 ("Of course, the trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof.").

### D. Conclusion

In sum, Makaeff has sought $1,333,004.25[29] in fees, and the Court has excluded a total of $542,920.85 in fees as follows:

⊞ Go to table28

Accordingly, the Court **AWARDS** Makaeff **$790,083.40** in fees.

### III. Reasonable Costs

In addition to attorney's fees, a prevailing defendant on an anti-SLAPP motion is entitled to recover reasonable costs. Cal. Civ. Proc. Code § 425.16(c)(1). Here, Makaeff seeks $9,209.27 in costs for successfully litigating the anti-SLAPP motion.[30] (Dkt. No. 331 at 18; Dkt. No. 364 at 19

---

[29] The Court notes that the breakdown of fees in Ms. Jensen's and Ms. Eck's supplemental declarations actually totals $1,333,659.50, which is a difference of $655.25. (Dkt. No. 364-1 (Jensen Supp. Decl.); Dkt. No. 364-2 (Eck Supp. Decl.).) However, since neither party raised this difference, and using the lower figure benefits Trump **[\*77]** University, the Court uses $1,333,004.25. (Dkt. No. 331 at 18; Dkt. No. 331 (Jensen Decl.) ¶ 58; Dkt. No. 331-2 (Eck Decl.) ¶ 55; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 2; Dkt. No. 364-2 (Eck Supp. Decl.) ¶ 2.)

[30] Makaeff originally sought $9,812.11 in costs, but is no longer seeking approximately $603 for the costs of postage, telephone, and photocopying charges, in light of Trump University's observation

n.11.) Specifically, Makaeff seeks the following costs:

🔳Go to table29

(Dkt. No. 331-1 (Jensen Decl.) ¶ 59); (Dkt. No. 331-2 (Eck Decl.) ¶ 57.)

The Court ordered Makaeff to "submit additional information substantiating the costs requested." (Dkt. No. 358 at 6.) The supplemental declarations of Ms. Jensen and Ms. Eck provide additional details regarding costs. (Dkt. No. 364-1 (Jensen Supp. Decl.) ¶¶ 31-32; Dkt. No. 364-2 (Eck Supp. Decl.) ¶¶ 33-34.) Trump University argues that the Court should deny the costs entirely for various reasons. (Dkt. No. 367 at 26-27.)

The Court agrees with Trump University that the charge of $225.05 for lunch after the Ninth Circuit hearing is not compensable since it was for the "team" and Makaeff admits that not all who attended the hearing were necessary. (*Id.*) The Court also excludes Mr. Forge's $288.41 in expenses for meals and hotel accommodations for preparing Makaeff for her deposition since the Court has already determined that his time was duplicative. (*Id.*) Otherwise, the Court determines that Makaeff's costs are reasonable. For example, Trump University argues that the Court should not allow Mr. Isaacson's online research costs because **[*79]** he has a high hourly rate. (*Id.* at 26.) However, the fact that Mr. Isaacson is a more experienced attorney would likely reduce his research costs.

Therefore, the Court excludes $513.46 in costs. Accordingly, the Court **AWARDS** Makaeff **$8,695.81** in costs.

## CONCLUSION AND ORDER

For the reasons set forth above, **IT IS HEREBY**

**ORDERED**:

(1) the Court **GRANTS IN PART AND DENIES IN PART** Makaeff's request for fees and costs (Dkt. No. 331);

(2) the Court **AWARDS** Makaeff **$790,083.40** in fees;

(3) the Court **AWARDS** Makaeff **$8,695.81** in costs;

(4) the Court **GRANTS** Makaeff's *ex parte* application to file a limited response (Dkt. No. 368).

**IT IS SO ORDERED**.

DATED: April 9, 2015

/s/ Gonzalo P. Curiel

HON. GONZALO P. CURIEL

United        States        District        Judge

---

that California Code of Civil Procedure § 1033.5(b) applies. (Dkt. No. 335 at 26; Dkt. **[*78]** No. 364 at 19 n.11; Dkt. No. 364-1 (Jensen Supp. Decl.) ¶ 31 n.1; Dkt. No. 367 at 26.)

**Table1** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate |
|---|---|---|---|
| Rachel Jensen | RGRD[8] | Partner | $660 |
| Paula Roach | RGRD | Associate | $360 |
| Amber Eck | ZHE | Partner | $690 |
| Helen Zeldes | ZHE | Partner | $600 |
| Aaron Olsen | ZHE | Associate | $410 |

**Table1** ([Return to related document text](#))

**Table2** ([Return to related document text](#))

| Name | Hours Expended | Amount |
|---|---|---|
| Rachel Jensen | 39.75 | $26,235.00 |
| Paula Roach | 43.75 | $15,750.00 |
| Amber Eck | 30.50 | $21,045.00 |
| Helen Zeldes | 2.50 | $1,500.00 |
| Aaron Olsen | 9.25 | $5,550.00 |

**Table2** ([Return to related document text](#))

**Table3** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate |
|---|---|---|---|
| Rachel Jensen | RGRD | Partner | $660 |
| Paula Roach | RGRD | Associate | $360 |
| Amber Eck | ZHE | Partner | $690 |

**Table3** ([Return to related document text](#))

**Table4** ([Return to related document text](#))

| Name | Hours Expended | Amount |
|---|---|---|
| Rachel Jensen | 6.00 | $3,960.00 |
| Paula Roach | 20.75 | $7,470.00 |
| Amber Eck | 27.00 | $18,630.00 |

**Table4** ([Return to related document text](#))

**Table5** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|---|---|---|---|---|---|
| Rachel Jensen | RGRD | Partner | $660 | 1.50 | $990.00 |

[8] "RGRD" refers to Ms. Jensen's firm, Robbins Geller Rudman & Dowd LLP. "ZHE" refers to Ms. Eck's firm, Zeldes Haeggquist & Eck, LLP.

2015 U.S. Dist. LEXIS 46749, *78

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Paula Roach | RGRD | Associate | $360 | 2.75 | $990.00 |
| Amber Eck | ZHE | Partner | $690 | 9.75 | $6,727.50 |

**Table5** ([Return to related document text](#))

---

**Table6** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen [*29] | RGRD | Partner | $660 | 1.25 | $825.00 |
| Paula Roach | RGRD | Associate | $360 | 1.00 | $360.00 |
| Amber Eck | ZHE | Partner | $690 | 23.5 | $16,215.00 |

**Table6** ([Return to related document text](#))

---

**Table7** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 1.50 | $1,237.50 |
| Rachel Jensen | RGRD | Partner | $660 | 9.50 | $6,270.00 |
| Paula Roach | RGRD | Associate | $360 | 4.50 | $1,620.00 |
| Amber Eck [*31] | ZHE | Partner | $690 | 66.00 | $45,540.00 |
| Helen Zeldes | ZHE | Partner | $600 | 5.00 | $3,000.00 |

**Table7** ([Return to related document text](#))

---

**Table8** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD | Partner | $660 | 3.00 | $1,980.00 |
| Amber Eck | ZHE | Partner | $690 | 27.50 | $18,975.00 |

**Table8** ([Return to related document text](#))

---

**Table9** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 221.75 | $182,943.75 |

2015 U.S. Dist. LEXIS 46749, *31

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD | Partner | $660 | 10.00 | $6,600.00 |
| Amanda Frame | RGRD | Associate | $440 | 45.50 | $20,020.00 |
| Amber Eck | ZHE | Partner | $690 | 12.50 | $8,625.00 |
| Helen Zeldes | ZHE | Partner | $600 | 0.50 | $300.00 |

**Table9** ([Return to related document text](#))

---

**Table10** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 4.75 | $3,918.75 |
| **[*37]** Rachel Jensen | RGRD | Partner | $660 | 9.00 | $5,940.00 |
| Amber Eck | ZHE | Partner | $690 | 27.50 | $18,975.00 |

**Table10** ([Return to related document text](#))

---

**Table11** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 4.50 | $3,712.50 |
| Rachel Jensen | RGRD | Partner | $660 | 1.25 | $825.00 |
| Amber Eck | ZHE | Partner | $690 | 2.75 | $1,897.50 |

**Table11** ([Return to related document text](#))

---

**Table12** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 12.75 | $10,518.75 |
| Kevin Green | RGRD | Partner | $720 | 7.75 | $5,580.00 |
| Rachel Jensen | RGRD | Partner | $660 | 3.50 | $2,310.00 |
| Amber Eck | ZHE | Partner | $690 | 6.00 | $4,140.00 |

**Table12** ([Return to related document text](#))

---

**Table13** ([Return to related document text](#))

| Name | Law | Position | Hourly | Hours | Amount |
|------|-----|----------|--------|-------|--------|

2015 U.S. Dist. LEXIS 46749, *37

| | Firm | | Rate | Expended | |
|---|---|---|---|---|---|
| Eric Isaacson | RGRD | Partner | $825 | 26.50 | $21,862.50 |
| Thomas Merrick | RGRD | Partner | $685 | 0.75 | $513.75 |
| Rachel Jensen | RGRD | Partner | $660 | 0.25 | $165.00 |

**Table13** ([Return to related document text](#))

---

**Table14** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|---|---|---|---|---|---|
| Eric Isaacson | RGRD | Partner | $825 | 88.00 | $72,600.00 |
| Thomas Merrick | RGRD | Partner | $685 | 2.50 | $1,712.00 |
| Amanda Frame | RGRD | Associate | $440 | 14.50 | $6,380.00 |
| Amber Eck | ZHE | Partner | $690 | 3.25 | $2,242.50 |

**Table14** ([Return to related document text](#))

---

**Table15** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|---|---|---|---|---|---|
| Eric Isaacson | RGRD | Partner | $825 | 13.50 | $11,137.50 |
| Thomas Merrick | RGRD | Partner | $685 | 0.75 | $513.75 |

**Table15** ([Return to related document text](#))

---

**Table16** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|---|---|---|---|---|---|
| Eric Isaacson | RGRD | Partner | $825 | 1.75 | $1,443.75 |
| Rachel Jensen | RGRD | Partner | $660 | 0.25 | $165.00 |

**Table16** ([Return to related document text](#))

---

**Table17** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|---|---|---|---|---|---|
| Eric Isaacson | RGRD | Partner | $825 | 69.50 | $57,337.50 |

2015 U.S. Dist. LEXIS 46749, *37

| Name | Law Firm ID | Position | Hourly Rate | Hours Expended | Amount |
|------|-------------|----------|-------------|----------------|--------|
| Thomas Merrick | RGRD | Partner | $685 | 9.50 | $6,507.50 |
| Amanda Frame | RGRD | Associate | $440 | 8.50 | $3,740.00 |
| Amber Eck | ZHE | Partner | $690 | 1.00 | $690.00 |
| Jessica Labrencis | ZHE | Associate | $250 | 1.00 | $250.00 |

**Table17** ([Return to related document text](#))

---

**Table18** ([Return to related document text](#))

| Name | Law Firm ID | Position | Hourly Rate | Hours Expended | Amount |
|------|-------------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 7.50 | $6,187.50 |

**Table18** ([Return to related document text](#))

---

**Table19** ([Return to related document text](#))

| Name | Law Firm ID | Position | Hourly Rate | Hours Expended | Amount |
|------|-------------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 183.75 | $151,593.75 |
| Kevin Green | RGRD | Partner | $720 | 0.50 | $360.00 [*53] |
| Thomas Merrick | RGRD | Partner | $685 | 9.25 | $6,336.25 |
| Rachel Jensen | RGRD | Partner | $660 | 10.50 | $6,930.00 |
| Amanda Frame | RGRD | Associate | $440 | 8.20 | $3,608.00 |
| Amber Eck | ZHE | Partner | $690 | 13.00 | $8,970.00 |
| Helen Zeldes | ZHE | Partner | $600 | 0.50 | $300.00 |
| Jessica Labrencis | ZHE | Associate | $250 | 1.25 | $312.50 |

**Table19** ([Return to related document text](#))

---

**Table20** ([Return to related document text](#))

| Name | Law Firm ID | Position | Hourly Rate | Hours Expended | Amount |
|------|-------------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 12.25 | $10,106.25 |
| Kevin Green | RGRD | Partner | $720 | 2.25 | $1,620.00 |
| Thomas Merrick | RGRD | Partner | $685 | 2.50 | $1,712.50 |
| Amber Eck | ZHE | Partner | $690 | 3.25 | $2,242.50 |

2015 U.S. Dist. LEXIS 46749, *53

**Table20** ([Return to related document text](#))

---

**Table21** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 18.30 | $15,097.50 |
| Kevin Green | RGRD | Partner | $720 | 1.00 | $720.00 |
| Rachel Jensen | RGRD | Partner | $660 | 2.75 | $1,815.00 |
| Amber Eck | ZHE | Partner | $690 | 6.25 | $4,312.50 |

**Table21** ([Return to related document text](#))

---

**Table22** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Jason Forge | RGRD | Partner | $740 | 22.00 | $16,280.00 |
| Rachel Jensen | RGRD | Partner | $660 | 43.50 | $28,710.00 |
| Amber Eck | ZHE | Partner | $690 | 55.50 | $38,295.00 |
| Aaron Olsen | ZHE | Associate | $410 | 0.25 | $102.50 |
| Jessica Labrencis | ZHE | Associate | $250 | 2.25 | $562.50 |

**Table22** ([Return to related document text](#))

---

**Table23** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 4.00 | $3,300.00 |
| Jason Forge | RGRD | Partner | $740 | 7.00 | $5,180.00 |
| Rachel Jensen | RGRD | Partner | $660 | 39.75 | $26,235.00 |
| Amber Eck | ZHE | Partner | $690 | 36.75 | $25,357.50 |

**Table23** ([Return to related document text](#))

---

**Table24** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 3.25 | $2,681.25 |

2015 U.S. Dist. LEXIS 46749, *53

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Rachel Jensen | RGRD | Partner | $660 | 25.75 | $16,995.00 |
| Amber Eck | ZHE | Partner | $690 | 18.00 | $12,420.00 |
| Aaron Olsen | ZHE | Associate | $410 | 0.50 | $205.00 |

**Table24** ([Return to related document text](#))

**Table25** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | 0.25 | $206.50 |
| Jason Forge | RGRD | Partner | $740 | 0.75 | $555.00 |
| Rachel Jensen | RGRD | Partner | $660 | 1.50 | $990.00 |
| Amber Eck | ZHE | Partner | $690 | 26.75 | $18,457.50 |
| Helen Zeldes | ZHE | Partner | $600 | 5.00 | $3,000.00 |
| Aaron Olsen | ZHE | Associate | $410 | 3.50 | $1,435.00 |

**Table25** ([Return to related document text](#))

**Table26** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Eric Isaacson | RGRD | Partner | $825 | $825 | $7,012.50 |
| Rachel Jensen | RGRD | Partner | $660 | $660 | $3,795.00 |

**Table26** ([Return to related document text](#))

**Table27** ([Return to related document text](#))

| Name | Law Firm | Position | Hourly Rate | Hours Expended | Amount |
|------|----------|----------|-------------|----------------|--------|
| Amber Eck | ZHE | Partner | $690 | 22.25 | $15,352.50 |
| Aaron Olsen | ZHE | Associate | $410 | 10.00 | $4,100.00 |

**Table27** ([Return to related document text](#))

**Table28** ([Return to related document text](#))

| Category | Fees Excluded |
|----------|---------------|
| Staff Attorney Fees | $121,047.50 |
| Paralegal Fees | $90,542.50 |
| 1. Initial Anti-SLAPP Motion | $19,656.00 |

| Category | Fees Excluded |
|---|---|
| 2. District Court Reply Brief | $3,726.00 |
| 3. Opposition to Motion to Strike | $2,533.50 |
| 4. District Court Hearing and Preparation | $3,768.00 |
| 5. Motion for Reconsideration | $13,933.50 |
| 6. Motion for Reconsideration Reply Brief | $4,191.00 |
| 7. Appeal Opening Brief | $66,853.75 |
| 8. Opposition to Motion to Stay | $10,518.75 |
| [*76] 9. Ninth Circuit Settlement Conference | $1,947.00 |
| 10. Work with Amicus on Appeal | $10,821.75 |
| 11. Request for Judicial Notice | $11,610.00 |
| 12. Appeal Reply Brief | $19,751.00 |
| 13. Supplemental Request for Judicial Notice | $6,082.50 |
| 14. Ninth Circuit Appeal Strategy | $0.00 |
| 15. Ninth Circuit Hearing | $13,705.00 |
| 16. Research Regarding Possible 28(j) Letter | $6,187.50 |
| 17. Opposition to Petition for Rehearing *En Banc* | $41,529.10 |
| 18. Work with Amicus on *En Banc* Opposition | $5,802.25 |
| 19. Strategy Regarding Remand and Motion to Transfer Fee Motion to District Court | $9,867.00 |
| 20. Makaeff Deposition Preparation and Document Production | $30,346.00 |
| 21. Supplemental Brief Regarding Actual Malice | $13,551.50 |
| 22. Supplemental Reply Brief Regarding Actual Malice | $16,560.25 |
| 23. Hearing on Actual Malice | $3,691.50 |
| 24. Work on Multiple Tasks | $10,807.50 |
| 25. Preparation of Bill of Fees and Costs | $3,890.50 |
| **TOTAL FEES EXCLUDED** | **$542,920.85** |

**Table28** ([Return to related document text](#))

---

**Table29** ([Return to related document text](#))

| Category | RGRD Costs | ZHE Costs | Total |
|---|---|---|---|
| Meals, Hotel & Transportation | $836.49 | $280.88 | $1,117.37 |
| Messenger, Overnight Delivery | $57.85 | | $57.85 |
| Video Deposition of Makaeff | $290.00 | | $290.00 |
| Lexis, Westlaw, Online Library Research | $4,931.21 | $2,057.80 | $6,989.01 |
| Publications | $299.79 | | $299.79 |
| Miscellaneous Deposition Costs | $455.25 | | $455.25 |
| **TOTAL COSTS** | $6,870.59 | $2,338.68 | **$9,209.27** |

**Table29** ([Return to related document text](#))

**End of Document**



EXHIBIT 5

# Zest IP Holdings, LLC v. Implant Direct MFG., LLC

United States District Court for the Southern District of California

December 3, 2014, Decided; December 3, 2014, Filed

CASE NO. 10-CV-0541-GPC (WVG)

**Reporter**

2014 U.S. Dist. LEXIS 167563 *; 2014 WL 6851612

ZEST IP HOLDINGS, LLC, et al., Plaintiffs, v. IMPLANT DIRECT MFG., LLC, et al., Defendants,

**Subsequent History:** Certificate of appealability denied Zest IP Holdings, LLC v. Implant Direct Mfg., LLC, 2015 U.S. Dist. LEXIS 2080 (S.D. Cal., Jan. 7, 2015)

**Prior History:** Zest IP Holdings, LLC v. Implant Direct Mfg. LLC, 2014 U.S. Dist. LEXIS 156003 (S.D. Cal., Nov. 4, 2014)

**Counsel:** [*1] For Zest IP Holdings, LLC, A Delaware limited liability company, Plaintiff: Andrew Z Edelstein, LEAD ATTORNEY, John Nadolenco, Mayer Brown LLP, Los Angeles, CA; Brian W. Nolan, Lisa M. Ferri, Manuel J. Velez, LEAD ATTORNEYS, PRO HAC VICE, Mayer Brown LLP, New York, NY; Elizabeth S. Weiswasser, PRO HAC VICE, Weil, Gotshal & Manges LLP, New York, NY.

For Zest Anchors, LLC, A Delaware limited liability company, Plaintiff: Brian W. Nolan, Lisa M. Ferri, Manuel J. Velez, LEAD ATTORNEYS, PRO HAC VICE, Mayer Brown LLP, New York, NY; Andrew Z Edelstein, LEAD ATTORNEY, John Nadolenco, Mayer Brown LLP, Los Angeles, CA.

For Implant Direct MFG. LLC, A Nevada limited liability company, Implant Direct LLC, A Nevada limited liability company, Implant Direct INT'L, A Nevada corporation, Defendants: Christopher J. Dugger, Michael Hurey, LEAD ATTORNEYS, Kleinberg & Lerner, LLP, Los Angeles, CA; Patrick F. Bright, Wagner, Anderson & Bright, LLP, Glendale, CA.

For Implant Direct Sybron International, Implant Direct Sybron Manufacturing LLC, Defendants, Counter Claimants: A James Isbester, Byron R. Chin, LEAD ATTORNEYS, Kilpatrick Townsend & Stockton LLP, San Francisco, CA; Megan M. Chung, LEAD ATTORNEY, Kilpatrick [*2] Townsend & Stockton LLP, San Diego, CA; Christopher B. Mead, Stuart A. Berman, PRO HAC VICE, London and Mead, Washington, DC; Christopher J. Dugger, LEAD ATTORNEY, Kleinberg & Lerner, LLP, Los Angeles, CA.

For Zest Anchors, LLC, A Delaware limited liability company, Counter Defendant: Brian W. Nolan, Lisa M. Ferri, Manuel J. Velez, LEAD ATTORNEYS, PRO HAC VICE, Mayer Brown LLP, New York, NY; John Nadolenco, Mayer Brown LLP, Los Angeles, CA.

For Zest IP Holdings, LLC, A Delaware limited liability company, Counter Defendant: Brian W. Nolan, Lisa M. Ferri, Manuel J. Velez, LEAD ATTORNEYS, PRO HAC VICE, Mayer Brown LLP, New York, NY; Andrew Z Edelstein, LEAD ATTORNEY, John Nadolenco, Mayer Brown LLP, Los Angeles, CA.

**Judges:** HON. GONZALO P. CURIEL, United States District Judge.

**Opinion by:** GONZALO P. CURIEL

## Opinion

**ORDER SETTING FORTH AMOUNT OF**

## MONETARY SANCTIONS TO BE AWARDED TO PLAINTIFFS

Zest IP Holdings, LLC, et. al. ("Plaintiffs") filed a motion for spoliation and discovery abuse sanctions ("Motion") against Implant Direct MFG., LLC, et al. ("Defendants"). (Dkt. No. 121.) The Magistrate Judge issued an Order & Recommendation ("O&R") granting in part and denying in part Plaintiffs' Motion. (Dkt. No. 312.) This Court [*3] adopted in part the Magistrate Judge's O&R, granted Plaintiffs' Motion, and took under submission the issue of a reasonable amount of sanctions to be awarded to Plaintiffs due to Defendants' discovery abuses. (Dkt. No. 440.) Based on the parties' briefs, supporting documentation, and the applicable law, the Court determines that a reasonable amount of sanctions to be awarded to Plaintiffs is **$122,486.95**.

## Background

As set forth in prior orders in this case, this is a patent and trademark infringement action involving dental attachment products. (See Dkt. No. 1.) In the First Amended Complaint, Plaintiffs allege that the marketing and sale of the GoDirect and GPS products by Defendants infringes Plaintiffs' patent and trademark rights. (Dkt. No. 13, "FAC," at 12-13.) The patents at issue are U.S. Patent No. 6,030,219 ("the '219 Patent") and U.S. Patent No. 6,299,447 ("the '447 Patent"). (Id.) Plaintiffs also allege Defendants infringed Plaintiffs' registered marks "ZEST" and "LOCATOR" without Plaintiffs' authorization, resulting in trademark infringement. (Id. at 13.) Plaintiffs allege several additional federal and state law claims, including false designation of origin, false advertising, unfair business practices, and unfair competition. (Id. at 13-17.)

On August 27, 2012, Plaintiffs filed a [*4] motion for spoliation and discovery abuses sanctions ("Motion") against Defendants. (Dkt. No. 121.) On October 5, 2012, Defendants filed an opposition to the Motion, (Dkt. No. 127), and Plaintiffs filed a

reply in support of the Motion on October 12, 2012. (Dkt. No. 131.) Plaintiffs and Defendants each submitted supplemental briefs (Dkt. Nos. 192, 197), as well as supplemental declarations and joint statements (Dkt. Nos. 129, 151, 152, 160.) On October 19, 2012 and May 29, 2013, United States District Court Magistrate Judge Gallo ("Magistrate Judge") heard oral arguments on the Motion. (Dkt. Nos. 145, 228.)

On November 25, 2013, the Magistrate Judge issued an O&R, recommending that Plaintiffs' Motion be granted to the extent that Plaintiffs seek an adverse jury instruction, granting Plaintiffs' Motion to the extent that Plaintiffs seek monetary sanctions, and denying Plaintiffs' Motion to the extent that Plaintiffs seek a default judgment. (Dkt. No. 312 at 24.) The Magistrate Judge also ordered Plaintiffs to "file with the Court substantiation of the reasonable attorneys' fees and costs associated with (1) the time spent by Plaintiffs in bringing Defendants' spoliation of evidence to [*5] the Court's attention, (2) bringing the current Motion, and (3) obtaining destroyed documents from third parties." (Id.)

On December 31, 2013, pursuant to the O&R, Plaintiffs filed a statement of costs and fees ("Statement of Costs") associated with their Motion for sanctions against Defendants. (Dkt. No. 325.) On January 14, 2014, Defendants filed a reply, objecting to the Statement of Costs. (Dkt. No. 334.)

On June 16, 2014, this Court issued an order adopting in part the Magistrate Judge's recommendation for monetary sanctions and granting Plaintiffs' Motion for monetary sanctions due to Defendants' discovery abuses.[1] (Dkt. No. 440 at 30.) Pursuant to that order, this Court took under submission the issue of a reasonable amount of monetary sanctions to be awarded to Plaintiffs consistent with the Court's findings, stating that a

---

[1] The Court declined to award monetary sanctions for Defendants' spoliation of evidence. (Dkt. No. 440 at 27.) The Court noted that it was granting monetary sanctions on a different ground than the Magistrate Judge. (Id. at 30 n.8.)

written order would be issued setting forth that amount. (Id.)

**Discussion**

In the Statement of Costs, Plaintiffs seek reimbursement of $213,983.25 [*6] in fees and $10,728.43 in costs, or a total amount of $224,711.68. (Dkt. No. 325 at 7-8.) In particular, Plaintiffs seek fees of $213,983.25 in connection with: (1) investigating Defendants' spoliation through failure to preserve documents and destruction of documents; (2) researching, writing, and filing papers associated with the instant Motion; (3) reviewing documents produced by Defendants after Plaintiffs filed the instant Motion; (4) preparing for and traveling to hearings on the instant Motion held on October 19, 2012 and May 29, 2013; and (5) obtaining spoliated documents from third parties. (Id. at 7.) Plaintiffs also seek reimbursement of costs of $10,728.43 for filing fees, travel expenses to attend hearings, legal research, and document reproduction. (Id. at 8.)

In support of their requests, Plaintiffs provide billing records indicating a general description of the work performed, the dates on which the work was performed, the amount of time spent on each date, and which attorney performed the work. (Dkt. No. 325, Ferri Decl., Exs. 1-2.) Plaintiffs discount the hours by 20%"in those entries where multiple tasks are described at least one of which is unrelated" to Plaintiffs' instant Motion. [*7] (Id. at 3-4.) Plaintiffs argue that the hours they seek reimbursement for are reasonable, particularly because "[t]he fact that a sophisticated entity like [Plaintiffs] has paid the fees incurred, including long before any sanctions order was entered, is powerful evidence that the number of hours are reasonable." (Id. at 4.) In assessing the prevailing market rates in the relevant community, Plaintiffs present statistical evidence of all patent infringement actions filed in this District between January 2013 and November 2013, including who served as lead counsel in those actions. (Id. at 4-5.)

Plaintiffs conclude that "multi-state/national law firms that practice patent litigation in this District" constitute the relevant community, and that Mayer Brown's hourly rates are consistent with the hourly rates among the relevant community. (Id. at 5-6.)

In objecting to the Statement of Costs, Defendants argue that: (1) the award of fees by the Magistrate Judge was improper because Defendants did not act in bad faith; (2) Plaintiffs' fee requests are unreasonable and should be reduced; and(3) Plaintiffs' requests for out-of-pocket expenses are unreasonable. (Dkt. No. 334.) As to the unreasonableness of the requested fees, Defendants [*8] argue that Plaintiffs request fees for time that is not authorized by the Recommendation: $26,515.00 for preparing the Statement of Costs, and $33,755.00 for other unauthorized activities. (Id.) Next, Defendants argue that this Court should deny excessive and duplicate attorney time sought by Plaintiffs by reducing the award by $5,805.00, the amount spent by attorney Manuel Velez in preparing for and attending the oral hearings, as well as reducing the award based on Plaintiffs' quarter-hour billing practice. (Id.) Finally, Defendants contend that this Court should not grant fees for time that was block-billed by Plaintiffs' attorneys and should instead deny the total $43,885.75 of block-billed fees or, alternatively, reduce the block-billed entries by 50%. (Id.)

As for the requested costs, Defendants argue that seeking to recover travel expenses for two attorneys is generally considered duplicative and unreasonable, and request that this Court either deny the total $6,697.50 of travel-related expenses or award travel expenses only for one attorney's attendance at the October 19, 2012 hearing: $1,735.82. (Id.)

Overall, Defendants seek to reduce the amount of attorney's fees awarded to [*9] Plaintiffs by at least $116,658.25, representing a reduction of: $26,515.00 for preparing the fee petition; $33,755.00 for other activities not authorized by the

Recommendation; $43,885.75 for block-billed entries; $5,805.00 for excessive or duplicate time; and $6,697.50 for unreasonable travel expenses. (Id.) Defendants also contend that a further reduction of 20% is warranted on the basis of Plaintiffs' quarter-hour billing practice. (Id.)

## A. Bad Faith

In objecting to the Statement of Costs, Defendants first argue that the Magistrate Judge improperly awarded fees because Defendants did not act in bad faith. (Dkt. No. 334 at 2-3.) According to Defendants, the Ninth Circuit requires a finding of bad faith for an award of monetary damages pursuant to the court's inherent authority, and the Magistrate Judge did not specifically find that Defendants acted in bad faith. (Id. at 2.) However, this Court, by order issued June 16, 2014, explicitly found that Defendants "acted in bad faith to impede and delay the discovery process." (Dkt. No. 440 at 30.) Because this Court found that Defendants acted in bad faith, Defendants' first argument fails.

## B. Reasonableness of Fees Requested by Plaintiffs

Plaintiffs [*10] seek attorneys' fees in the amount of $213,983.25. (Dkt. No. 325 at 7.) Defendants argue that the requested fees are unreasonable and excessive.

In the Ninth Circuit, courts calculate an award of attorneys' fees using the lodestar method, multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008) (internal quotation marks omitted). The burden is on the fee applicant to demonstrate that the number of hours spent were "reasonably expended" and that counsel made "a good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76

L. Ed. 2d 40 (1983). Further, the fee applicant bears the burden to "submit evidence supporting the hours worked and rates claimed[.]" Id. at 433. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates v. Deukmejian, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (citing Blum v. Stenson, 465 U.S. 886, 892 n.5, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984); Toussaint v. McCarthy, 826 F.2d 901, 904 (9th Cir. 1987)).

The district [*11] court has wide discretion in determining the reasonableness of attorney's fees. Gates, 987 F.2d at 1398. "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). Once the lodestar figure is determined, it may be adjusted to account for reasonableness of the time expended based on a weighing of the following factors:"(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5)the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006) (quoting McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995)); see also Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

2014 U.S. Dist. LEXIS 167563, *11

In subsequent case law, the Ninth Circuit has held that the issue of whether the fee [*12] is fixed or contingent is no longer a valid factor to consider in determining reasonable attorney's fees. In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 n.7 (9th Cir. 2011).

Nonetheless, once calculated, the lodestar amount is presumptively the reasonable fee amount. Van Gerwen v. Guarantee Mut. Life Ins., 214 F.3d 1041,1045 (9th Cir. 2000). A multiplier may then be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. Id. (citations omitted).

## 1. Reasonably Hourly Rate

Plaintiffs seek an hourly rate of between $170 per hour and $895 per hour depending on the particular attorney or paralegal. Specifically, Plaintiffs seek an hourly rate of $850-$895 for their lead counsel, Lisa Ferri; $725 per hour for attorneys John Molenda and Brian Nolan; $590-$695 for attorney Manual Velez;$565 per hour for attorney Neil DuChez; $360-$420 per hour for attorney Megan Levine; $240 per hour for paralegal David West; and $170 per hour for paralegal Benedict Moshier. (Dkt. No. 325 at 7.) Defendants do not challenge the reasonableness of Plaintiffs' hourly rates. (Dkt. No. 334.)

To determine the appropriate lodestar amount, the reasonableness [*13] of the hourly billing rate must be assessed. Blum v. Stenson, 465 U.S. 886, 896 n.1(1984, 104 S. Ct. 1541, 79 L. Ed. 2d 891). Courts look to the prevailing market rates in the relevant community for similar work by attorneys of comparable skill, experience, and reputation. Camacho, 523 F.3d at 979. Generally, the relevant community is the "forum in which the district sits." Id. The moving party has the burden to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line

with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). Affidavits by the plaintiff's counsel and other counsel concerning the prevailing fees in the community, and rate determination in other cases, are satisfactory evidence of the prevailing market rate. United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

With respect to the attorneys' rates, Plaintiffs present evidence of the reasonableness of the rates charged in their Statement of Costs and affidavit of their lead counsel, Lisa Ferri. (Dkt. Nos. 325, 325-1, Ferri Decl.) To determine the relevant community, Plaintiffs searched on Pacer for all patent infringement actions filed in this District between January 2013 and November 2013, including who served as lead counsel for the parties in those [*14] actions. (Dkt. No. 325 at 4-5.) Based on the finding that at least one party was represented by a multi-state/national law firm in 31 of 39, or 80%, of all patent infringement actions filed, Plaintiffs conclude that the relevant community consists of multi-state/national law firms that practice patent litigation in this District. (Id. at 5.) Plaintiffs note that Mayer Brown, the firm that represents them, is a multi-state/national law firm that practices patent litigation in this District and has represented defendants in two of the actions filed in this District over the past year. (Id.) Plaintiffs further note that, due to Mayer Brown's outstanding reputation in patent litigation, Lisa Ferri was retained as counsel in lawsuits both in this District and in the Central District of California. (Id.) According to Plaintiffs, Lisa Ferri billed using a similar scale of hourly rates in one of the other lawsuits in this District. (Id. at 5-6.)

Plaintiffs present sufficient evidence to show that Mayer Brown's hourly rates are consistent with the hourly rates charged by other multi-state/national law firms practicing patent litigation in this District. (Dkt. No. 325 at 6.) In particular, the 2013 National Law [*15] Journal Billing Survey ("NLJ Survey")

includes billing data for 21 law firms that Plaintiffs identified as lead counsel of parties in actions filed in this District from January 2013 to November 2013. (Id.) Plaintiffs note that Mayer Brown's rates fall within the ranges reported for those firms; for instance, Mayer Brown's $775 average billing rate for partners is consistent with the average range of $515-$900 for partners among the 21 listed firms, and Mayer Brown's $543 average associate billing rate is consistent with the average range of $256-$622 for associates among the 21 listed firms. (Id.) Based on the above, the Court finds that the attorney rates charged by Plaintiffs are reasonable.

As to the paralegal rates, Plaintiffs state that Mayer Brown billed $240 per hour for Mr. West and $170 per hour for Mr. Moshier. (Id. at 7.) The affidavit of Lisa Ferri indicates that those rates were "the usual and customary billing rate[s] for Mayer Brown's national practice, which includes regular practice in this District and throughout California." (Dkt. No. 325-1, Ferri Decl., at 5-6.) However, Plaintiffs have not presented any evidence to support that the paralegal rates sought represent the prevailing [*16] rates in the Southern District of California. With the absence of any evidence as to the background and experience of the paralegal, the Court is unable to determine the prevailing rate. See J&J Sports Prods., Inc. v. Diaz, 12cv1106-W(WMC), 2014 U.S. Dist. LEXIS 55858, 2014 WL 1600335, at *3 (S.D. Cal. Apr. 18, 2014). In Brighton Collectibles, Inc. v. Coldwater Creek Inc., 06cv1848-H(POR), 2009 U.S. Dist. LEXIS 4005, 2009 WL 160235, at *4 (S.D. Cal. Jan. 20, 2009), the court concluded that $90 to $210 per hour was reasonable for paralegal work. However, $90 to $210 per hour is a wide range depending on the education, skill and experience of the particular paralegal. Therefore, because insufficient facts were presented as to the paralegal hourly rate, the Court DENIES Plaintiffs' request for reimbursement of paralegal fees.

In sum, the Court concludes that Plaintiffs' hourly rates for attorneys are reasonable, but the paralegal hourly rate is not. Accordingly, the Court

EXCLUDES the paralegal total amount of **$2,008.00**.

## 2. Hours Reasonably Expended

The moving party bears the burden of documenting the appropriate hours spent in the litigation and submitting evidence in support of the hours worked. Hensley, 461 U.S. at 433. Counsel should exclude hours that are "excessive, redundant or otherwise unnecessary." Id. at 434. The Court should decrease the hours that were not "reasonably expended." [*17] Id. The opposing party must provide "submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." Gates, 987 F.2d at 1397-98 (citing Blum, 465 U.S. at 892 n.5); McGrath, 67 F.3d at 255 (citations omitted) (there must be evidence to challenge the accuracy and reasonableness of the hours charged). The party opposing fees must specifically identify defects or deficiencies in the hours requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in fees. Cancio v. Fin. Credit Network, Inc., No. C04-03755 THE, 2005 U.S. Dist. LEXIS 13626, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005).

Even if the opposing party has not objected to the time billed, the district court "may not uncritically accept a fee request," but is obligated to review the time billed and assess whether it is reasonable in light of the work performed and the context of the case. Common Cause v. Jones, 235 F. Supp. 2d 1076, 1079 (C.D.Cal. 2002) (citing Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984)); see also McGrath, 67 F.3d at 254 n.5 (noting that court may not adopt prevailing party's representations without conducting an independent review of the fee application). When the district court makes its award, it must provide a "concise but clear" explanation of its reasons. Hensley, 461 U.S. at 437. While the court is not required [*18] to rule on each of the defendants' specific

objections, it is required to provide some indication of how it arrived at the amount of fees in order to enable meaningful appellate review. Gates, 987 F.2d at 1398, 1400.

Defendants argue that Plaintiffs' requested fees are excessive for three reasons: (1) Plaintiffs seek reimbursement of fees for activities not authorized by the Magistrate Judge's O&R; (2) Plaintiffs seek reimbursement for excessive and duplicate attorney time on account of two attorneys' preparation for and attendance at hearings on this Motion, as well as Plaintiffs' quarter-hour billing practice; and (3) Plaintiffs seek reimbursement for block-billed time. (Dkt. No. 334.)

### a. Time Not Authorized by the Recommendation

First, Defendants argue that Plaintiffs include in their fee request time that is not authorized by the Recommendation: $26,515.00 for fees spent by Plaintiffs in preparing their Statement of Costs, and $33,755.00 for fees spent on other activities. (Dkt. No. 334 at 3-4.) The Magistrate Judge's O&R states: "Defendants shall reimburse Plaintiff[s] the reasonable attorneys' fees and costs associated with(1) the time spent by Plaintiffs in bringing Defendants' misconduct to the Court's attention, (2) **[*19]** bringing the instant Motion, and (3) obtaining destroyed documents from third parties. Plaintiffs shall submit a request for a specific amount of fees and costs, with evidentiary support, for the Court's consideration." (Dkt. No. 312 at 23.)

The Court agrees with Defendants that the $26,515.00 spent by Plaintiffs in preparing the Statement of Costs is not explicitly authorized by the Magistrate Judge's O&R. The Court therefore GRANTS Defendants' objection to the **$26,515.00** incurred in preparing the Statement of Costs.

As for the fees incurred by Plaintiffs in connection with other activities, (Dkt. No. 334-2, Taheri Decl., Ex. 1), Defendants claim that the total amount of fees not authorized by the Recommendation is $33,755.00. (Id.) Defendants dispute seventeen

billing entries related to: searching for and compiling public documents and materials; reviewing and analyzing deposition transcripts; searching and reviewing certain online sources; drafting a letter to Defendants regarding missing documents; and reviewing and analyzing documents produced by Defendants after Plaintiffs brought the Motion for Sanctions pursuant to the January 24, 2013 order. (Id.) Defendants object to these **[*20]** entries on the ground that, based on the Magistrate Judge's O&R, Plaintiffs are not authorized to recover fees for those activities, including, for example, reviewing documents and deposition transcripts. (Dkt. No. 334 at 4.) The Court concludes that Plaintiffs have not met their burden of showing that the disputed activities fall within the scope of authorization. See Hensley, 461 U.S. at 434. The Court therefore GRANTS Defendants' request for a reduction of fees in the amount of **$33,755.00**.

### b. Excessive and Duplicate Attorney Time

Second, Defendants argue that this Court should deny excessive and duplicate attorney time sought by Plaintiffs. (Dkt. No. 334 at 5.) Specifically, Defendants contend that the Court should reduce the award by $5,805.00, the amount spent for attorney Manuel Velez's preparation for and attendance at the oral hearings on October 19, 2012 and May 29, 2013. (Id.) Defendants claim that both Lisa Ferri and Manuel Velez attended every hearing on the present matter and that, while Lisa Ferri conducted the vast majority of the oral argument, Manuel Velez's participation was minimal. (Id.)

"Counsel for the prevailing party should make a good faith effort to exclude from a fee **[*21]** request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley, 461 U.S. at 434. However, "necessary duplication—based on the vicissitudes of the litigation process—cannot be a

legitimate basis for a fee reduction. It is only where the lawyer does unnecessarily duplicative work that the court may legitimately cut the hours." Moreno v. City of Sacramento, 534 F.3d 1106, 1113 (9th Cir. 2008). Here, Plaintiffs have not met their burden to establish that Manuel Velez's preparation for and attendance at the hearings was necessary. Therefore, the Court GRANTS Defendants' request for a reduction of fees in the amount of **$5,805.00** for duplicate attorney time.

Defendants also request an overall award reduction based on Plaintiffs' quarter-hour billing practice. (Dkt. No. 334 at 5.) Defendants claim that Plaintiffs' practice of billing in quarter-hour increments artificially inflates their hours, and that courts in the Ninth Circuit have criticized that practice for its tendency to cause excessive billing. (Id.) For instance, Defendants cite Welch v. Metro. Life Ins. Co., 480 F.3d 942, 949 (9th Cir. 2007), where the Ninth Circuit upheld the district court's 20% across-the-board reduction on requested hours billed in quarter-hour **[*22]** increments. The Ninth Circuit in Welch recognized that the district court expressly correlated its reduction to the opposing party's actual over-billing. "Having reviewed the firm's summary time sheet, the court found the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time. Our own review of the time sheet confirms that it is replete with quarter-hour or half-hour charges for the drafting of letters, telephone calls and intra-office conferences." Id. Defendants also cite World Triathalon Corp. v. Dunbar, 539 F. Supp. 2d 1270, 1286 (D. Haw. 2008),where the district court applied a 10% reduction for quarter-hour billing. In Dunbar, "[t]he billing statements [were] replete with quarter-hour and half-hour entries for phone calls, communications with the Court, conferences, and communications with co-counsel, which likely took a fraction of the time billed." The district court in Dunbar further justified its reduction on the ground that the billing practice "likely resulted in requests for excessive hours with respect to the other billings because of the large fractional

increments." Id.

Here, the Court finds that Plaintiffs' quarter-hour billing practice, in general, likely **[*23]** resulted in some requests for excessive hours. For instance, Plaintiffs seek reimbursement for discussions and meetings with co-counsel, drafting an email to co-counsel, participating in conference calls with co-counsel, and attending a client conference. (Dkt. No. 334-1, Taheri Decl., Ex. 1). These activities are analogous to those in the cases cited above and likely took only a fraction of the time billed. The Court therefore GRANTS Defendants' request and REDUCES Plaintiffs' total fee award by **20%**.

### c. Fees for Block-Billed Time

Third, Defendants contend that this Court should not grant fees for time block-billed by Plaintiffs' attorneys and thus should either deny the total $43,885.75 of block-billed fees or reduce the block-billed entries by 50%. (Dkt. No. 334 at 6-8.) Defendants cite several cases for the proposition that block billing "makes it difficult to apportion fees between tasks that are allowed for recovery (e.g., those related to the Motion for Sanctions) and tasks that are not" and "makes it more difficult to determine whether the amount of time spent on a particular task was reasonable." (Id. at 6.) Here, Plaintiffs discounted their hours by 20% "where multiple tasks are described **[*24]** at least one of which is unrelated to [Plaintiffs'] Motion for Sanctions." (Dkt. No. 325 at 3-4.) In support, Plaintiffs cite Antoninetti v. Chipotle Mexican Grill, Inc., 2012 U.S. Dist. LEXIS 99821, 2012 WL 2923310, at *3 (S.D. Cal. July 17, 2012),where the Court reduced the number of block-billed hours by 20%. (Id. at 4.)

Defendants object on the grounds that Plaintiffs apply a 20% discount to counter the problems involving correct apportionment of block billed time, but Antoninetti reduced block-billed fees by 20% because the practice of block billing "may increase time by 10% to 30%." (Dkt. No. 334 at 7) (citing Antoninetti, 2012 U.S. Dist. LEXIS 99821,

Case 3:16-cv-01985-BEN-BLM   Document 445-15   Filed 04/04/25   PageID.18529
Page 107 of 108

Case 3:16-cv-01985-BEN-BLM   Document 445-15   Filed 04/04/25   PageID.18529   Page 9 of 10
2014 U.S. Dist. LEXIS 167563, *24

2012 WL 2923310, at *3) (quoting Welch, 480 F.3d at 949). Therefore, according to Defendants, "*Antoninetti* reduced the number of hours expended by a percentage to account for the difficulty of ascertaining the *reasonableness* of the time expended, not the *apportionment*." (Dkt. No. 334 at 7.) Further, Defendants cite several cases to show that courts have used their discretion to strike block-billed time entirely or reduce such time by 50% where block-billed entries make it impossible to determine which hours were spent on activities for which recovery was authorized. (Id.)

In the instant case, the Court finds that Plaintiffs' own 20% reduction of block-billed hours is appropriate, and a further reduction is unwarranted. **[*25]** In Welch, 480 F.3d at 948, the district court applied an across-the-board reduction of 20% on the requested hours because the party had block-billed some of its hours. The Ninth Circuit noted that the district court arrived at that percentage as a "middle ground" based on a report by the California State Bar's Committee on Mandatory Fee Arbitration, which determined that block billing may increase time by 10% to 30%. Id. The Ninth Circuit acknowledged that the district court had the authority to reduce block-billed hours, but held that it erred in applying an across-the-board reduction because not all of the hours were block-billed in that case. Id. Here, Plaintiffs have already discounted their block-billed hours by 20%, which is reasonable in light of the range of 10% to 30% set forth in the California State Bar's report. Moreover, Plaintiffs have not applied a reduction to all requested hours; rather, they have properly limited the reduction to hours that were actually block-billed. Defendants' argument that Plaintiffs confuse the remedy for two distinct problems caused by block billing (i.e., reasonableness and apportionment) is unavailing. In both Antoninetti, 2012 U.S. Dist. LEXIS 99821, 2012 WL 2923310, at *3, and Welch, 480 F.3d at 949, a 20% reduction on block-billed hours was warranted, **[*26]** and that is precisely the method that Plaintiffs have applied in the instant case. Thus, the Court DENIES Defendants' request to strike block-billed

entries in their entirety or, in the alternative, to reduce block-billed entries by 50%.

## C. Reasonableness of Costs Requested by Plaintiffs

As to costs, Defendants argue that Plaintiffs have failed to explain why it was necessary for two attorneys to travel to California to attend every hearing, and that seeking to recover travel expenses for two attorneys is generally considered duplicative and unreasonable. (Dkt. No. 334 at 8-9.) Defendants cite case law for the proposition that "[c]ourts are especially reluctant to award fees for traveling to a hearing where an insufficient showing has been made that local counsel alone could not have attended and/or the out-of-state counsel could not have attending telephonically." (Id. at 9.) Defendants request that this Court either deny entirely $6,697.50 of travel-related expenses or award travel expenses for only one attorney to attend the October 19, 2012 hearing, amounting to $1,735.82. (Dkt. No. 334 at 8-9.)

With respect to long-distance travel for out-of-state attorneys, courts generally do not allow fees for **[*27]** such time absent a showing that recovering for travel time is customary in the particular facts of the case. See Comcast of Ill. X, LLC v. Jung Kwak, 2010 U.S. Dist. LEXIS 105809, 2010 WL 3781768, at *6-7 (D. Nev. Sept. 17, 2010); see also Jankey v. Beach Hut, 2006 U.S. Dist. LEXIS 96365, 2006 WL 4569361, at *4-5 (C.D. Cal. Dec. 19, 2006). Courts are especially reluctant to award fees for traveling to a hearing where an insufficient showing has been made that local counsel alone could not have attended and/or the out-of-state counsel could not have attended telephonically. See, e.g., Comcast, 2010 U.S. Dist. LEXIS 105809, 2010 WL 3781768, at *7; Stanford v. Ocwen Fed. Bank, FSB, 2012 U.S. Dist. LEXIS 1878, 2012 WL 37383, at *2 (E.D. Cal. Jan. 26, 2012) (reducing fees for travel time where telephonic appearance was possible). That reluctance reflects the Court's need to guard against

Case 3:16-cv-01985-BEN-BLM    Document 245-15    Filed 04/04/25    PageID.18530
Page 108 of 108
2014 U.S. Dist. LEXIS 167563, *27

Page 10 of 10

awarding "self-imposed and avoidable" fees. Comcast, 2010 U.S. Dist. LEXIS 105809, 2010 WL 3781768, at *5. Here, Plaintiffs have not established that recovery for attorney travel time is customary under the particular facts of the case. However, the Court does not find that Plaintiffs, by sending one attorney to attend the hearing, incurred fees that were "self-imposed" or "avoidable." See id. The recovery of travel expenses for both attorneys here is more questionable. Therefore, the Court GRANTS Defendants' request to reduce travel expenses to **$1,735.82**, the amount spent to send one attorney to attend the October 19, 2012 hearing.

Based on the above, the following amounts have been excluded from the total of $224,711.68 sought: (1) $2,008.00 **[*28]** for paralegal fees; (2) $26,515.00 for preparing Statement of Costs; (3) $33,755.00 for other non-recoverable activities;(4) $5,805.00 for duplicate attorney time; (5) $29,180.05[2] for quarter-hour billing; and (6) $4,961.68[3] for travel expenses. Therefore, the amount of fees and costs totals **$122,486.95**.

### D. Lodestar Adjustment

Neither party has raised the issue that the lodestar should be adjusted upward or downward based on the Kerr factors. The Court concludes that this is not a rare and exceptional case supporting an adjustment and declines to adjust based on the Kerr factors. See Van Gerwen, 214 F.3d at 1045.

### CONCLUSION

Based on the above, the Court awards Plaintiffs monetary **[*29]** sanctions in the amount of **$122,486.95**.

**IT IS SO ORDERED**.

DATED: December 3, 2014

/s/ Gonzalo P. Curiel

HON. GONZALO P. CURIEL

United States District Judge

_____

**End of Document**

---

[2] The Court calculated $29,180.05 as follows. The Court awarded a 20% overall reduction in fees based on quarter-hour billing. The total fees were $145,900.25 after excluding the following from the $213,983.25 in fees sought: (1) $2,008.00 for paralegal fees; (2) $26,515.00 for preparing Statement of Costs; (3) $33,755.00 for other non-recoverable activities; and (4) $5,805.00 for duplicate attorney time. Twenty percent of $145,900.25 is $29,180.05.

[3] The Court calculated $4,961.68 by subtracting $1,735.82 from total travel expenses of $6,697.50.